UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DONNA SCHULTZ

                              Plaintiff,

            -against-

COUNTY OF SUFFOLK, JUSTIN S. MEYERS IN          **Docket No.:**
HIS OFFICIAL AND PERSONAL CAPACITY,             19-cv-00925-JMA-ARL
DENNIS COHEN IN HIS OFFICIAL AND
PERSONAL CAPACITY, AND STUART
CAMERON IN HIS OFFICIAL AND PERSONAL
CAPACITY,

                              Defendants.
------------------------------------------------------------------------X




# **DEFENDANT STUART CAMERON'S MEMORANDUM OF LAW**
# **IN SUPPORT OF MOTION TO DISMISS**

## PRELIMINARY STATEMENT

Plaintiff Donna Schultz ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendants County of Suffolk (the "County"), Justin S. Meyers ("Meyers"), Dennis Cohen ("Cohen"), and Stuart Cameron ("Cameron") (collectively "Defendants"), with the individual defendants sued in their official and personal capacities, for First Amendment retaliation, gender discrimination in violation of the 14th Amendment, and violations of state whistleblower laws. The Memorandum of Law is submitted on behold of Stuart Cameron.

On March 15, 2018, Plaintiff was terminated from her provisional position at the SCPD as Special Projects Coordinator after she failed to pass a mandatory background check. Am. Compl. ¶¶ 64, 66. Plaintiff had also admitted to using SCPD computers for personal reasons in violation of SCPD computer policy, another basis for termination. *See* Exhibit B. Yet despite these legitimate grounds for termination, Plaintiff maintains that she was fired from her provisional position at the SCPD in retaliation for reporting alleged misconduct by her former supervisor, Meyers.

On its face, Plaintiff's First Amendment retaliation claim again Cameron must fail as a matter of law because it arose in the context of Schultz' employment, and thus does not meet the threshold requirement of being constitutionally protected speech made as a private citizen.

Plaintiff's gender discrimination claim is similarly without merit as Plaintiff has failed to identify similarly situated men who received more favorable treatment. Plaintiff cites seven male SCPD employees as alleged comparators, yet none have circumstances that support Plaintiff's claim. *See* Am. Compl. ¶¶ 76-83. As Plaintiff admits, four of the comparators, police officers John E. Fenelius ("Fenelius"), Scott P. Guido ("Guido"), John Jeheber ("Jeheber"), and Jonelle Jones ("Jones"), were never charged with a misdemeanor. Am. Compl. ¶¶ 81-83. Thus, their

cases are not comparable to Plaintiff, who was not only charged with, but pleaded guilty to, a misdemeanor. Am. Compl. ¶ 22. As to police officer Bruce Blanco ("Blanco"), highway patrol sergeant Phillip Branigan ("Brannigan"), and police office Robert Dito ("Dito"), who allegedly did have misdemeanor convictions, Plaintiff fails to allege that any of them received more favorable treatment in that they continued to work for the SCPD after their convictions. Am. Compl. ¶¶ 77-79. On the contrary, Plaintiff acknowledges that each of these officers retired. *Id.* Moreover, as discussed in Section V, *infra*, it is a matter of public record that these retirements came shortly after charges were filed and well before any convictions. Thus, there is no basis to claim that male SCPD employees received more favorable treatment than Plaintiff.

Plaintiff also cannot plead her Third, Fourth, or Fifth causes of action against Cameron personally as a matter of law. As explained below, Plaintiff's conspiracy claim is barred as the alleged conspirators were all employees of the same municipal entity. Similarly, Plaintiff's Fourth and Fifth causes of action against Cameron must fail as they are only applicable to a plaintiff's employer, and not individual defendants.

For these and the other reasons set forth herein, Cameron submits this memorandum of law in support of his motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

This statement of facts is based upon the allegations in the Amended Complaint, the Declaration of Brian J. Davis, and the exhibits annexed thereto.

In 2008, Plaintiff pleaded guilty to a criminal misdemeanor after she improperly accepted unemployment benefits. Am. Compl. ¶¶ 22. Approximately eight years later, Plaintiff was contacted by Meyers about taking a position at the SCPD as Director of Communications. Am.

Compl. ¶ 17.  On or about June 20, 2016, Plaintiff was hired to work in the Suffolk County Executive's Office ("SCEO") as a County Executive Assistant V.[1]  Davis Decl., Exhibit C (henceforth "Compl."), ¶¶ 28-29.  She was then loaned to the SCPD to serve as its Director of Communications, despite remaining a SCEO employee, with Meyers serving as Plaintiff's direct supervisor.  *Id.*; Am. Compl. ¶ 27.  However, as a SCEO employee, Plaintiff ultimately reported to Cohen, who was and remains the Chief Deputy County Executive.  Compl. ¶ 14.

Both before and after being hired to work at the SCEO and being loaned to the SCPD, Plaintiff spoke with County officials about her prior misdemeanor conviction, including Meyers, Cohen, and then-SCPD Commissioner (and now Suffolk County District Attorney) Timothy Sini ("Sini").  Am. Compl. ¶¶ 22-23, 28, 30-36.

On or about November 2017, Sini was elected as the Suffolk County District Attorney.  Am. Compl. ¶ 37.  On January 10, 2018, Plaintiff left her job at the SCEO and accepted a position with the SCPD as "Provisional Special Projects Coordinator," effective January 1, 2018.  Am. Compl. ¶ 88; Compl. ¶ 83.  Plaintiff alleges that "the only condition precedent contained in the

---

[1] Plaintiff's original Complaint makes clear that Plaintiff was not an SCPD employee between June 2016 and January 2018 but was instead hired as an SCEO employee on June 20, 2016.  Compl. ¶¶ 28-29.  During her time as a SCEO employee, Plaintiff was placed "on loan" to the SCPD to fill in as Director of Communications.  Compl. ¶ 29.  This lasted until January 2018, when Plaintiff left the SCEO office and was hired by the SCPD as Provisional Special Projects Coordinator.  Compl. ¶ 83.  It was from this position that Plaintiff was terminated.  Compl. ¶ 64.

In her Amended Complaint, Plaintiff removes all reference to Plaintiff being a SCEO employee and falsely claims that she had held the "identical position" for the prior two years.  In so doing, Plaintiff seeks to circumvent the adverse impact of her prior admissions on her claim that her termination for failing to pass a background check was pretextual.  *See* Am. Compl. ¶ 3.  However, the fact remains that Plaintiff's failure to pass a background check occurred only two months after she became a provisional SCPD employee.  *See* Am. Compl. ¶ 88.

As the Second Circuit has made clear, "the amendment of a pleading does not make it any less an admission of the party," and a party may not "erase" admissions in a pleading by omitting them from a subsequent pleading.  *Austin v. Ford Models, Inc.*, 149 F.3d 148 (2d Cir. 1998) (abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  This reflects the principle that a party "cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version…" *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).  Thus, Plaintiff respectfully requests that the Court disregard these allegations and rely upon these admissions in Plaintiff's original Complaint.

notice of appointment was that plaintiff 'take the Civil Service exam when it is given.'" but acknowledges that there is a background check requirement generally. Am. Compl. ¶¶ 88-89.

On or about January 1, 2018, Meyers left the SCPD to serve as Sini's Chief of Staff. Am. Compl. ¶ 43. However, in the following months, Meyers continued to direct SCPD employees, including Plaintiff. Am. Compl. ¶¶ 44-46. This led to an incident between Plaintiff and Meyers on February 22, 2018 during which Meyers sent Plaintiff allegedly threatening and profane text messages. Am. Compl. ¶¶ 47-51. In one of his text messages, Meyers indicated that Plaintiff would receive "an extremely uncomfortable phone call" from Acting SCPD Commissioner Cameron if she did not do as instructed. Am. Compl. ¶ 51.

On or about March 6, 2018, Plaintiff met with two senior SCPD officers to discuss Meyers' conduct and receive "guidance on who she should be taking orders from."[2] Compl. ¶ 59. Plaintiff alleges that she also reported Meyer's inappropriate conduct, including alleged "campaigning for… Sini on SCPD time, using SCPD employees to run errands for him, and… fraud related to Meyer's time keeping records while employed by the SCPD." Am. Compl. ¶ 54. Plaintiff also claims, solely upon information and belief, that the substance of this conversation was relayed to Cameron, who in turn informed Meyers and Cohen. Am. Compl. ¶¶ 59-60.

On March 15, 2018, Plaintiff was told to report to Hauppauge to meet with Cohen. Am. Compl. ¶ 64. Cohen asked Plaintiff to resign from her position at the SCPD because she failed to

---

[2] Plaintiff's reasons for meeting with two senior SCPD officers are another instance in which she seeks to use the Amended Complaint to "erase" problematic admissions in her Complaint and adopt a more favorable version of the facts. In the Complaint, Plaintiff explicitly alleged that the purpose of her meeting with the senior SCPD officers was to receive "guidance on who she should be taking orders from." Compl. ¶ 59. This is also consistent with Plaintiff's Notice of Claim, which states "[s]eeking direction, Claimant spoke to several senior SCPD employees to explain that Mr. Meyers was continuing to give her orders notwithstanding the fact that he now worked at the District Attorney's Office." Cuthbertson Decl., Exhibit B. However, faced with the case law in Cohen's pre-motion letter that this admission mandates dismissal of her claim as unprotected speech in the context of her employment, Plaintiff's Amended Complaint omits any reference to her initial version of the facts, i.e. that the meeting was to clarify "who she should be taking orders from." *See* Compl. ¶ 59. Thus, for the reasons discussed in the Footnote 1, *supra*, the Court should disregard these allegations and rely upon the admissions in Plaintiff's original Complaint.

pass her background check. Am. Compl. ¶ 66. Cohen also indicated that Plaintiff's admission that she misused SCPD computers for personal reasons was another reason that she was being asked to resign. Davis Decl., Exhibit B. After being given time to consider her options, Plaintiff met with Cohen again and indicated that she would not resign. Am. Compl. ¶¶ 67-68. Cohen then gave Plaintiff a letter signed by Cameron terminating her employment. Am. Compl. ¶ 111.

## ALLEGATIONS AS TO CAMERON PERSONALLY

Plaintiff alleges that Chief Cameron was acting Suffolk County Police Commissioner after Sini was took over as District Attorney and is alleged to be "one of the individuals who conspired to deny the plaintiff employment." Am. Compl. ¶ 12.

Plaintiff alleges, upon information and belief, that after meeting with the two high-level SCPD members who interviewed her about her complaints, they spoke to Cameron about her complaints. Am. Compl. ¶ 59. Cameron was alleged to have then spoken to Meyers and Cohen concerning her complaints. Am. Compl. ¶ 60.

Plaintiff also alleges upon information and belief that "a joint decision between Meyers, Cohen, and Cameron was made to terminate Schultz's employment under the pretext that she had failed a background check," based on their conspiratorial purpose "to cover up illegal activities," but that they would first offer Plaintiff the opportunity to resign. Am. Compl. ¶¶ 62-65. Notably, Plaintiff does not give any factual basis for any of the assertions being made other than upon information and belief. The allegations in ¶¶ 106-108 are all assumptions and conclusions.

Plaintiff alleges upon information and belief that Cohen then informed Meyers and Cameron that she would not resign, and, as a result, Cohen handed her a letter signed by Cameron, which terminated her. Am. Compl. ¶ 111. These are the extent of the allegations against Cameron personally.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). While this need not include detailed factual allegations, it "requires more than labels and conclusions," and "threadbare recitals of the elements of a cause of action, supported by merely conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## ARGUMENTS

### I.    Plaintiff's Official Capacity Claims Against Cameron Are Duplicative

Plaintiff's claims against Cameron in his official capacity must be dismissed as a matter of law where Plaintiff has also named Cohen's municipal employer, i.e. the County, as a party.

It is well-established that official capacity suits against municipal officials are essentially claims against the municipality itself. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003) ("the real party in interest in an official capacity suit is the government entity"). As such, "courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Castanza v. Town of Brookhaven*, 700 F.Supp.2d 277, 284 (E.D.N.Y. 2010).

Here, Plaintiff concedes that Cameron was the Acting Police Commissioner and is the Chief of Police, a department of the County. Am. Compl. ¶¶ 12. As such, the official capacity claims against Cameron are properly understood as claims against the County and should therefore be dismissed as duplicative where the County is also named as a defendant herein.

### II.    Cameron Is Entitled To Qualified Immunity

As detailed explained below, Plaintiff has failed to plausibly allege that Cameron took any actions that would have resulted in the deprivation of Plaintiff's constitutional rights. However, assuming arguendo that Cameron did take such action, he would nonetheless be entitled to qualified immunity in that he was performing discretionary functions and it was objectively reasonable for him to believe that his actions did not violate clearly established law.

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition, because qualified immunity seeks to "protect state actors not only from liability, but from having to defend against protected claims, it is the obligation of the court to consider its availability at the earliest point" that it can do so. *Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Determining whether a defendant is entitled to qualified immunity is a two-step process, though the Supreme Court has clarified that courts have discretion as to the order in which they consider each prong of the analysis. *See Pearson,* 555 U.S. at 236 (holding that while the order set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001) is "often appropriate, it should no longer be regarded as mandatory"). First, courts usually address whether the facts that the plaintiff has alleged "make out a violation of a constitutional right." *Id.* at 232 (citing the standard set forth in FRCP 12(b)(6) and 12(c)). If so, courts then inquire "whether the right was clearly established" at the time the defendant acted. *Saucier*, 533 U.S. at 201. The dispositive question for qualified immunity is whether it was "objectively legally reasonable" for the government official to have believed that his actions were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

In the instant case, both prongs clearly demonstrate that Cameron is entitled to qualified immunity. First, as set forth below, Plaintiff has failed to plausibly allege the deprivation of a constitutional right. This includes, with respect to Plaintiff's First Amendment retaliation claim, failing to plausibly allege that her speech was constitutionally protected where it was made in the course of her employment, and as to her Equal Protection claim, failing to identify any similarly situated male SCPD employees who received more favorable treatment.

As to the second prong, there can also be no dispute that it was objectively reasonable for Cameron to believe that his actions were lawful. In the Amended Complaint, the only substantive allegations against Cameron are conclusory in that he is alleged, "on information and belief", to have conspired with Cohen and Meyers. Am. Compl. ¶ 66; Davis Decl., Exhibit B. However, there is no authority that either of these actions fall within the ambit of an "adverse employment action" when the Amended Complaint explicitly states that Plaintiff was terminated when Cohen handed her the letter signed by Acting SCPD Commissioner Cameron. *See* Am. Compl. ¶ 111.

The remaining allegations against Cameron, i.e. that he conspired with Cohen and Meyers to terminate Plaintiff, are all made upon information and belief, and lack any detailed factual support that could render them plausible. *See* Am. Compl. ¶¶ 60-65. However, even if Cameron was involved in the decision to terminate Plaintiff, his actions would still be objectively reasonable as there were legitimate grounds for Plaintiff's termination, namely that Plaintiff failed to pass the background check for the SCPD position that she assumed roughly two months earlier and admitted to improperly using SCPD computers for personal reasons. Am. Compl. ¶ 88; Davis Decl., Exhibit B. As such, assuming arguendo that Cameron was involved in the decision to terminate Plaintiff, that decision would nonetheless have been objectively reasonable.

In sum, Cameron is entitled to qualified immunity as Plaintiff has failed to allege the deprivation of a constitutional right actions and because his actions were objectively reasonable.

### III.    Plaintiff Has Failed To State A First Amendment Retaliation Claim

Plaintiff has failed to plausibly allege that she was terminated in retaliation for reporting misconduct by Meyers. To state a viable claim of First Amendment retaliation, a plaintiff must plausibly allege that "(1) he engaged in constitutionally protected speech by speaking as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *See Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486 (E.D.N.Y. 2011). Here, Plaintiff has failed to plausibly allege any of the elements of a First Amendment retaliation claim.

As detailed below, the Amended Complaint fails to allege that Plaintiff engaged in constitutionally protected speech where her speech was made in the context of her employment. In addition, while the Amended Complaint does plead an adverse employment action, i.e. termination, it only alleged that Cohen handed her a letter signed by Cameron. The only allegations against Cameron as to Plaintiff's termination, other than the conclusory allegations that he conspired with Meyers and Cohen, was that he did the purely ministerial act of signing the termination letter, which Cohen handed to the Plaintiff.

### A. Plaintiff's Speech Was Not Constitutionally Protected As A Matter of Law

As a threshold matter, Plaintiff's First Amendment retaliation claim must fail as a matter of law where she has failed to allege that she engaged in constitutionally protected speech.

In *Garcetti v. Ceballos*, 547 U. S. 410 (2006), the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for

First Amendment purposes." The Constitution does not insulate their communications from employer discipline.

In *Garcetti id.,* the Court established a two-step inquiry into whether a public employee's speech is entitled to protection:

> "The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." 547 U. S., at 418 (citations omitted).

In Garcetti, the Court found that an internal memorandum prepared by a prosecutor in the course of his ordinary job responsibilities constituted unprotected employee speech. Id., at 424. The statement made by Schultz is no different and, therefore, she should have no expectation that her complaint should protect her from adverse employee action.

Any claim by the Plaintiff that her speech was protected due to her report of Meyers "wrongdoing" for working on the D.A.'s campaign is also thwarted by the Court's holding in Garcetti, which stated:

> "Exposing governmental inefficiency and misconduct is a matter of considerable significance. As the Court noted in *Connick*, public employers should, "as a matter of good judgment," be "receptive to constructive criticism offered by their employees." 461 U. S., at 149. The dictates of sound judgment are reinforced by the powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing. See, *e.g.*, 5 U. S. C. §2302(b)(8); Cal. Govt. Code Ann. §8547.8 (West 2005); Cal. Lab. Code Ann. §1102.5 (West Supp. 2006)."

The conclusion is that Plaintiff made a complaint concerning the threatening tone of Meyers' email and apparently added the allegations that he misused his time. She made this

complaint/inquiry in the employment context and she does not receive constitutional First Amendment protection for it.

The Second Circuit has held that "[w]hether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). Specifically, courts look at whether "the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Id.*

The application of these principles in a context similar to the instant case is set forth in *Huth v. Haslun*, in which the plaintiff alleged that she was terminated in retaliation for "passing along" a subordinate's concerns about the behavior of the subordinate's co-workers to their division head. 598 F.3d 70, 74 (2d Cir. 2010). The lower court found for the plaintiff, but the Second Circuit reversed, holding that the plaintiff's speech was not made "as a citizen," but rather pursuant to her "official duties as a Thruway Authority employee and supervisor." *Id.* As such, the Court concluded that the plaintiff's speech "did not qualify as speech protected from retaliation by the First Amendment." *Id.*

The Second Circuit also explained the distinction between speech to redress personal grievances and speech with a broader public purpose when it rejected the plaintiff's alternative claim that her lawsuit against the defendants had itself led to further retaliation in violation of the First Amendment. *See id* at 74-75. Finding that the plaintiff's lawsuit was "personal in nature and generally related to her own situation," the Court explained that:

> Significantly, there is no suggestion in this record that she "wanted to debate issues of ... discrimination, that her suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention.

*Id.* at 74-75. The Second Circuit therefore concluded that the plaintiff's lawsuit was also not speech protected by the First Amendment. *Id.* at 75.

Here, Plaintiff's discussion with two senior SCPD officials on or about March 6, 2018, was similarly not constitutionally protected speech. In the Amended Complaint, Plaintiff alleges that "a week after Meyers's threatening text message, Schultz met with two senior-level SCPD police officers to discuss Meyers's conduct." Am. Compl. ¶ 52. Specifically, Plaintiff alleges that she "reported that Meyers was campaigning for… Sini on SCPD time, using SCPD employees to run errands for him, and… fraud related to Meyer's time keeping records while employed by the SCPD." Am. Compl. ¶ 54. However, this speech was not constitutionally protected, as it was clearly made in the context of Plaintiff's employment. Furthermore, many of the allegations relating to Plaintiff's First Amendment retaliation claim were little more than a recitation of the elements of the cause of action, and cannot support a viable claim. *See Iqbal*, 556 U.S. at 678; Am. Compl. ¶¶ 53 ("During this meeting Schulz reported on a matter of public concern"), 55 ("Schultz's reporting was constitutionally protected speech"); 56 ("Schultz's reporting… was not ordinarily within the scope of her job duties"); 57 ("Schultz spoke as a citizen on a matter of public concern").

As discussed above, the Second Circuit concluded in *Huth* that relaying complaints to management about the inappropriate conduct of co-workers was not constitutionally protected speech under the First Amendment.[3] *See* 598 F.3d at 74. Yet here, Plaintiff's alleged speech relates <u>solely</u> to Meyers' alleged misconduct in the workplace, such as his text messages, alleged misuse of SCPD staff for personal matters, and allegedly fraudulent timekeeping. Am. Compl. ¶¶

---

[3] This is not to suggest that reporting the allegedly inappropriate workplace conduct of a co-worker may not be protected by other provisions of law, such as Title VII. *See* e.g., 42 U.S.C. § 2000e-3(a) (prohibiting retaliation against employees under certain circumstances). However, Plaintiff's claim in the instant matter is limited to retaliation under the First Amendment, by which such speech is clearly not protected. *See Huth*, 598 F.3d at 74.

51-52, 54. Thus, under *Huth*, Plaintiff's allegations cannot be the basis for a viable First Amendment retaliation claim.

Moreover, the allegations in the Amended Complaint also show that Plaintiff's claims relate to her personal grievances against Meyers rather than any "broader public purpose." *See Huth,* 598 F.3d at 74. In *Huth*, the Second Circuit described several categories of protected speech, such as speech meant to address systematic or pervasive wrongdoing by a municipality or its officials or to raise public awareness of allegedly unlawful practices. *Id.* In contrast, Plaintiff's speech was based upon her history of personal conflicts with Meyers, some of which is detailed at length in the Amended Complaint. *See* Am. Compl. ¶¶ 45-51.

The personal nature of Plaintiff's speech can also be seen through the relief sought in the Amended Complaint, including reinstatement, compensatory damages, and injunctive relief, which is almost entirely personal to Plaintiff. *Cf. Ruotolo*, 514 F.3d at 190 (finding speech was personal in nature based upon nature of relief sought, such as reinstatement and compensatory damages). Like *Ruotolo*, Plaintiff's allegations make clear that when she spoke to the two senior-level SCPD officers, she "was not on a mission to protect the public welfare. Rather her primary aim was to protect her own reputation and individual development…." *See id.* As such, Plaintiff's speech was clearly tied to her personal grievances, and not matters of public concern entitled to constitutional protection.

Finally, as discussed in Footnote 2, *supra*, Plaintiff has admitted in both her Notice of Claim and original Complaint that the central reason that Plaintiff met with the two senior-level SCPD officers was to discuss Meyers's conduct because "she needed guidance on who she should be taking orders from." Compl. ¶ 59; Davis Decl., Exhibit B. This stated desire for clarification about the chain of command and who could give her directions in her capacity as an SCPD

employee clearly shows that Plaintiff's speech owed its existence to her professional responsibilities and was not made as a private citizen. Plaintiff's efforts to erase this admission by omitting it from the Amended Complaint further demonstrates her claim's lack of merit.

In sum, Plaintiff's speech was not constitutionally protected as a matter of law, and she has thus failed to state a First Amendment retaliation claim against Cameron.

### B. Plaintiff Has Not Alleged That Cameron Took Adverse Action Against Her That Was Motivated By Her Allegedly Protected Speech

Plaintiff's claim for First Amendment retaliation against Cameron is also defective because while Plaintiff does allege an adverse employment action, i.e. termination, Plaintiff has failed to plausibly allege that such action was motivated by her allegedly protected speech. In the Amended Complaint, Plaintiff alleges a temporal link between her conversation with the two senior-level SCPD officers and her termination approximately nine days later. Am. Compl. ¶ 87. However, even if this temporal link is sufficient to infer causation with respect to the decision to terminate Plaintiff generally, Cameron was not present when Cohen handed her the termination letter and was not privy to the conversation. There are no allegations that Cohen mentioned Meyers when offering to let Plaintiff to resign, and the allegations that Cohen was even aware of Plaintiff's allegations are all made upon information and belief. *See* Am. Compl. ¶¶ 59-62.

In sum, Plaintiff has failed to plausibly allege that Cameron's actions were in any way motivated by her allegedly protected speech. As such, this cause of action must be dismissed against Cameron for failure to state a claim.

### IV. Plaintiff Has Failed To State An Equal Protection Claim

Plaintiff has failed to plead any facts that render her allegations of gender discrimination plausible under the pleading standards of *Iqbal* and *Twombly*. Despite citing seven male SCPD employees as alleged comparators, it is apparent from the face of the Amended Complaint that

none of these individuals were similarly situated to Plaintiff. Am. Compl. ¶¶ 76-83. As such, Plaintiff's claim is based on nothing more than conclusory assertions, and fails to state a claim.

The Second Circuit addressed the pleading standard for employment discrimination cases in *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015). To state a claim under § 1983, the Court held that a plaintiff must allege: "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Id*. at 87–88. With respect to the first prong, the Court held that "a plaintiff's 'equal protection claim parallels his Title VII claim, except that a § 1983 claim… can be brought against an individual.'" *Id.* Thus, the Court concluded that:

> Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor….

*Id.* at 86.

However, to establish individual liability, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Specifically, a plaintiff "must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic…." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). As discussed below, Plaintiff has failed to allege that Camron had such motivations.

### A. Plaintiff Fails To Plausibly Allege That Her Gender Was A Motivating Factor

Accepting that the conclusory allegations that by signing the letter delivered by Cohen, Cameron can be said to have taken an adverse employment action, Plaintiff's claim would nonetheless fail because Plaintiff has failed to plausibly allege that her gender was a motivating factor behind Cameron's actions.

To plead the second element of an employment discrimination claim, a plaintiff must allege that the plaintiff's inclusion in a protected class was "a 'substantial' or 'motivating' factor contributing to the employer's decision to take the [adverse employment] action." *Vega*, 801 F.3d at 85. Thus, a plaintiff must allege "acts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 86. For example, an employee can infer discrimination through an employer's "more favorable treatment of employees not in the protected group." *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 425 (E.D.N.Y. 2017). However, this requires that a plaintiff be "similarly situated in all material respects" to the employees who allegedly received more favorable treatment. *Id.* This high degree of similarity is necessary for "at least a minimal inference that the difference of treatment may be attributable to discrimination," and not some other distinguishing difference between the plaintiff and comparators. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001). Characteristics that support finding employees similarly situated include "similarities in education, seniority, performance, and specific work duties, and similar requirements for skill, effort and responsibility for jobs performed under similar working conditions." *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 580 (S.D.N.Y. 2013).

Here, Plaintiff seeks to create an inference of discrimination through disparate treatment by alleging that unlike Plaintiff, "[m]ale SCPD employees who were convicted of misdemeanor crimes did not lose their jobs with the SCPD despite their criminal convictions." Am. Compl. ¶ 76. In support of this claim, Plaintiff identifies seven alleged comparators, in two groups, that she claims were given more favorable treatment. Am. Compl. ¶¶ 77-83. The first group, police officer Blanco, highway patrol sergeant Branigan, and police officer Dito, are individuals who were allegedly convicted or pleaded guilty to misdemeanor criminal offenses and did not lose

their jobs with the SCPD. Am. Compl. ¶¶ 76-79. The second group, police officers Fenelius, Guido, Jeheber, and Jones, are individuals who Plaintiff alleges "have committed acts that fit squarely within the description of crimes under the New York Peal Code ye the SCPD chose not to charge them or arrest them." Am. Compl. ¶¶ 80-83. However, it is apparent from the face of the Amended Complaint that none of these individuals were similarly situated to Plaintiff.

As a preliminary matter, none of the alleged comparators are similar to Plaintiff under the criteria laid out in *Potash*. *See* 972 F. Supp. 2d at 580. As the Amended Complaint makes clear, Plaintiff's background and work for the SCPD involved public relations, communications, and social media, an administrative role within the SCPD. Am. Compl. ¶¶ 19-20, 26. In contrast, all of Plaintiff's alleged comparators were law enforcement officers. Am. Compl. ¶¶ 77-83. The Amended Complaint lacks any allegations about the education, seniority, performance or job responsibilities of Plaintiff or her alleged comparators that would allow a comparison to be made. On this basis alone, Plaintiff's alleged comparators are not similarly situated to Plaintiff.

Furthermore, Plaintiff admits that neither Fenelius, Guido, Jeheber, nor Jones were ever charged with a misdemeanor offense. Am. Compl. ¶¶ 80-83. As such, they cannot be similarly situated to Plaintiff, who was both charged and pleaded guilty to a misdemeanor. Am. Compl. ¶ 22. Moreover, the SCPD allegedly declining to arrest or charge these officers for conduct that Plaintiff believes criminal is incomparable to Plaintiff, who had a criminal record that prevented her from passing the SCPD background check. *See* Am. Compl. ¶¶ 66, 80.

Finally, Plaintiff's claim that Blanco, Branigan, and Dito are valid comparators is not only flawed, but intentionally misleading. By omitting the dates of their respective convictions and retirements, Plaintiff implies that these individuals were permitted to continue working at the SCPD despite their misdemeanor convictions. *See* Am. Compl. ¶¶ 77-79. Yet it is a matter of

public record that each of these individuals opted to retire almost immediately after they were charged and suspended without pay.[4]  As such, their employment with the SCPD ended before they were even convicted of a crime, making Plaintiff's claim that they "did not lose their jobs with the SCPD despite their criminal convictions" completely misleading.  *See* Am. Compl. ¶ 76.

In sum, absent plausible factual allegations about a similarly situated male employee who was more favorably treated, Plaintiff's allegations of gender discrimination are without merit.

## V.   Plaintiff's § 1985 Conspiracy Claim Is Barred By The Intra-Corporate Conspiracy Doctrine

Plaintiff's § 1985(3) conspiracy claim is barred as a matter of law by the intra-corporate conspiracy doctrine, in that each of the alleged conspirators is an employee of the County.[5]

Under the intra-corporate conspiracy doctrine, "employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Hanley v. Nassau Health Care Corp.,* 2013 WL 3364375, at *8 (E.D.N.Y. July 3, 2013) (quoting *Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010)); *see also, Rini v. Zwirn*, 886 F.Supp. 270, 292 (E.D.N.Y.1995) (noting "intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.").  Thus, where all defendants are employees of a single municipal entity, the intra-corporate conspiracy doctrine prevents a finding of liability for participation in a conspiracy to deny a plaintiff his or her constitutional rights. *See Varricchio*, 702 F. Supp. 2d at 62.

---

[4] Blanco, Branigan, and Dito were among more than 50 case studies in a well-publicized investigation by Newsday of police misconduct, and summaries of their cases, the disciplinary action taken against them, and related court documents are publicly available at https://data.newsday.com/long-island/crime/cases/.

[5] Though the Amended Complaint does not specify which subsection of § 1985 is being invoked, § 1985(3) appears to be the only applicable subsection.  In addition, the Amended Complaints adopts the language of that provision as part of Plaintiff's allegations. *See* Am. Compl. ¶ 108; *cf.* 42 U.S.C. § 1985(3).

Here, the Amended Complaint explicitly identifies defendants Meyers, Cameron, and Cohen as employees of the County and its departments. Am. Compl. ¶¶ 10-12. As such, the intra-corporate conspiracy doctrine bars Plaintiff's § 1985 conspiracy claim as a matter of law.

## VI.   Plaintiff Has Failed To State A § 1985 Conspiracy Claim

Plaintiff's §1985(3) claim that Defendants conspired to deprive her of her civil rights must also fail as a matter of law where Plaintiff has failed to allege (1) the violation of a constitutional right under § 1983 or (2) that the conspiracy was motivated by class-based discriminatory animus.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must "plausibly allege the existence of a conspiracy to deprive [a plaintiff] of [his] constitutional rights." *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 Fed. Appx. 183, 189 (2d Cir. 2012). Specifically, a plaintiff must establish four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 208 (E.D.N.Y. 2010). The plaintiff must also plead that the conspiracy was "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Lucas v. New York City*, 842 F. Supp. 101, 104 (S.D.N.Y. 1994)). Absent allegations of such discriminatory animus, a § 1985(3) claim must be dismissed. *See Young*, 705 F.Supp. at 208; *Lucas*, 842 F.Supp. at 104.

Similarly, a claim under § 1985(3) must be dismissed where the plaintiff has failed to allege the violation of any constitutional right, as such conspiracy claims are contingent on the viability of an underlying § 1983 claim. *Nasca v. Cnty. of Suffolk*, 2008 WL 53247, at *8 n. 8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also fail because there is no underlying Section 1983 violation.").

Here, the Amended Complaint lacks any plausible allegations that Defendants conspired to terminate Plaintiff, as nearly all of Plaintiff's allegations about this conspiracy are stated upon information and belief. *See* Am. Compl. ¶¶ 59-65, 68-71. Similarly, the Amended Complaint provides only conclusory allegations that Defendants, including Cameron specifically, were driven by discriminatory animus rooted in Plaintiff's gender. *See* Am. Compl. ¶¶ 10-12, 97, 100. Finally, as set forth above, Plaintiff has failed to allege the violation of a constitutional right. As such, this cause of action should be dismissed for failure to state a claim.

**VII.    Plaintiff Has Failed To State A Claim Under New York Civil Service Law § 75-b**

Plaintiff cannot state a claim against Cohen under New York Civil Service Law ("CSL") § 75-b as a matter of law, as the statute only creates a cause of action against "public employers."

CSL § 75-b is a state whistleblower statute that prohibits retaliatory action against public employees under certain circumstances. *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 216 (E.D.N.Y. 2013). However, the New York courts, both state and federal, have long held that on its face, this law only creates a cause of action against public employers, and does not permit a plaintiff to maintain an action against individual defendants, such as Cameron, in their personal capacities. *See e.g., Kirwin v. New York State Office of Mental Health,* 665 F. Supp. 1034, 1038 (E.D.N.Y. 1987) (dismissing for failure to state a claim as "a public employee in his individual capacity may not be sued under § 75–b"); *Rusk v. New York State Thruway Auth.*, 37 F. Supp. 3d 578, 586 (W.D.N.Y. 2014) (dismissing CSL 75-b claim as such claims "may only be brought against the public employer and not the individual employees in their individual capacities"); *Zielonka v. Town of Sardinia*, 120 A.D.3d 925, 926 (4th Dep't 2014) (dismissing the complaint against the individual defendants as "the statute applies only to governmental entities that actually employ the plaintiff").

As such, Plaintiff is incapable of stating a claim against Cameron pursuant to CSL § 75-b.

## VIII.   Plaintiff Has Failed To State A Claim Under New York Labor Law § 740

Plaintiff also cannot state a claim against Cameron under New York Labor Law ("NYLL") § 740, as this statute only applies to non-public employers, and not individual defendants.

NYLL § 740 is state whistleblower statute and the equivalent provision of CSL § 75-b for non-public employers. *Dibiase v. Barber*, 2008 WL 4455601, at *5 (E.D.N.Y. Sept. 30, 2008). This law bears many similarities to CSL § 75-b, the most important of which is that, like CSL § 75-b, NYLL § 740 only creates a cause of action against a plaintiff's employer, and not against individual defendants except in limited circumstances that do not apply here (e.g. a shareholder who owns 100% of a company's shares and is thus equivalent to the employer). S*ee Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 684 (E.D.N.Y. 2012).

Moreover, Plaintiff cannot maintain an action under NYLL § 740 because "[a]ny public employee... who has rights under section 75 of the Civil Service Law may rely only on § 75-b for redress." *See Dibiase*, 2008 WL 4455601, at *5 (citing *Balduzzi v. City of Syracuse*, 1997 WL 52434, at *3-4 (N.D.N.Y. Feb. 4. 1997)). As such, Plaintiff cannot state a claim against Cameron.

## IX.   Plaintiff Has Failed To State A Claim For Prima Facie Tort

Plaintiff has failed to state a cause of action for prima facie tort under New York State law by pleading only conclusory allegations and a bare recitation of the elements of the cause of action. *See Iqbal*, 556 U.S. at 678. Moreover, prima facie tort is a "highly disfavored" cause of action, and "any claim covered by a traditional tort claim cannot be the basis for a prima facie tort." *Nevin v. Citibank, N.A.,* 107 F.Supp.2d 333, 347 (S.D.N.Y. 2000).

To state a claim for prima facie tort, a plaintiff must allege "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Katz v. Travelers*, 241 F.Supp.3d 397, 405 (E.D.N.Y. 2017). The first element requires that "defendant's conduct was not only harmful, but done with the sole intent to harm." *Id.* (quoting *Hall v. City of White Plains*, 185 F.Supp.2d 293, 304 (S.D.N.Y. 2002)). As such, "motives other than disinterested malevolence, such as profit, self-interest, or business advantage, will defeat a prima facie tort claim." *Id.* (quoting *Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 571 (2d Cir. 1990)). As to the second element, a plaintiff must "fully and accurately state their damages, with sufficient particularity to both identity of those damages and to relate the actual loss to the allegedly tortious acts," a pleading requirement that cannot be met with "non-specific, conclusory allegations." *Bruce Bzura, LLC v. Moss*, 2018 WL 7858772, at *6 (S.D.N.Y. 2018).

Here, the Amended Complaint provides only a bare recitation of the elements, alleging prima facie tort in four paragraphs that simply parrot the four elements of the cause of action. *See* Am. Compl. ¶¶ 130-133. Moreover, the only factual allegations therein, i.e. that defendants conspired to force plaintiff's resignation and that plaintiff suffered special damages in excess of $119,000, are both conclusory, and cannot state a cause of action. See Am. Compl. ¶¶ 130-131.

Furthermore, Plaintiff has failed to meet the pleading requirements for the first and second elements of prima facie tort. With respect to the first element, Plaintiff was required to plead that Cameron's sole motivation was to harm Plaintiff. *Katz*, 241 F.Supp.3d at 405. He was no more than the signer, not the deliverer, of the termination letter.

In addition, Plaintiff was required to specifically identify all special damages allegedly suffered and state how those damages relate to Cameron's allegedly tortious actions. *See Bruce*

*Bzura, LLC*, 2018 WL 7858772, at *6. However, Plaintiff has stated only that she has suffered "special damages in the amount not less than a loss of $119,000 in annual salary and benefits," a conclusory allegation that is neither itemized nor details a causal link against Cameron. *See* Am. Compl. ¶ 131. As such, this is a second basis upon which Plaintiff's claim must fail.

## **CONCLUSION**

For these reasons, Cameron respectfully requests that the Court grant his motion, dismiss the Amended Complaint in its entirety, and grant such other relief as this Court deems just.

Dated: Garden City, New York
      August 12, 2019

                              BRIAN J. DAVIS, PC

                              By: _____/s/_____

                                  Brian J. Davis (BJD 5694
                                  Attorneys for Defendant Stuart Cameron
                                  400 Garden City Plaza
                                  Suite 430
                                  Garden City, NY 11530
                                  P: (516) 542-0249
                                  F: (516) 542-0259
                                  brianjdavisesq@aol.com