# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
DONNA J. SCHULTZ,                                    :
                                                     :     CIVIL CASE NO.   19-CV-00925
                    Plaintiff,                       :
                                                     :
        -against-                                    :     VERIFIED COMPLAINT
                                                     :
COUNTY OF SUFFOLK, SUFFOLK COUNTY                    :     PLAINTIFF DEMANDS A
EXECUTIVE'S OFFICE, SUFFOLK COUNTY                   :     TRIAL BY JURY
POLICE DEPARTMENT, JUSTIN S. MEYERS IN              :
HIS OFFICIAL AND PERSONAL CAPACITY,                 :
DENNIS COHEN IN HIS OFFICIAL AND                    :
PERSONAL CAPACITY, AND STUART                       :
CAMERON IN HIS OFFICIAL AND PERSONAL               :
CAPACITY,                                           :
                                                     :
                    Defendants.                      :
------------------------------------------------------------------- X

       Plaintiff, Donna J. Schultz, by her attorney, Brendan Chao, for her Complaint alleges as

follows:

## THE NATURE OF THE ACTION

       1.      This is a civil action brought pursuant to 42 U.S.C. §§1983, 1985, and 1988 for

deprivation of plaintiff's federal constitutional rights, namely retaliation against plaintiff for her

assertion of protected First Amendment speech, and/or, alternatively, for denial of equal

protection guaranteed by the Fourteenth Amendment; for damages and remedies against

defendants County of Suffolk, Suffolk County Executive's Office, Suffolk County Police

Department, Justin S. Meyers, Dennis Cohen, and Stuart Cameron in their official and personal

capacity. Additionally, and/or alternatively, for damages and remedies available under New

York State's Civil Service and Labor Law for retaliation and the wrongful termination of her

employment.

2. The protected speech engaged in by plaintiff was her report that defendant Meyers was improperly electioneering and campaigning for Timothy Sini in Sini's bid to become Suffolk County District Attorney while Meyers was working on Suffolk County time.

3. The defendants retaliated against plaintiff several days after her reporting, and terminated her employment on the pretext that she failed a background check. That is, she had a prior misdemeanor conviction that precluded employment with the SCPD despite the fact that she had already been working in the identical position for approximately two years.

4. In addition, the stated reason by defendants for plaintiff's termination of employment was made despite the fact that, upon information and belief, male employees of the SCPD were convicted of misdemeanors both before employment with the SCPD, and while working for the SCPD, and did not lose their jobs.

5. In this action, plaintiff seeks declaratory and injunctive relief, and damages arising from the intentional actions of the defendants.

6. Defendants' policy or practice of denying the rights, privileges and benefits of employment to women who have prior misdemeanor conviction(s), including plaintiff without regard or consideration to the factors contained in Correctional Law§753(a-h), was financially devastating, embarrassing, and prohibited by law.

7. Plaintiff alleges that defendants intentionally and knowingly sought to and did wrongfully deprive plaintiff of, inter alia:[1] her rights secured under 42 U.S.C. §1983, [2] retaliated and conspired against her when she asserted her First Amendment protected speech in reporting defendant Meyers's electioneering on County time for Candidate Sini, [3] her right to

2

equal treatment, and [4] her rights to be free from employment discrimination based upon her gender.

8.    Defendants' acts were done knowingly with the consent and condonation of the municipal defendants, and all individual defendants with the express purpose of harming plaintiff, infringing upon her rights, and denying her employment in violation of the Human Rights law §296(15). Such denial was in violation of the New York Correction Law 23-A; generally violating her rights as protected by the United States and federal and state statues, rules and regulations.

## THE PARTIES

9.    Donna J. Schultz ("plaintiff" or "Schultz") was and is a natural person and citizen of the United States, a domiciliary in the State of New York and County of Suffolk. Schultz resides in Suffolk County, New York.

10.    Upon information and belief, defendant Suffolk County (the "County") is a duly constituted municipal corporation of the State of New York. Upon information and belief, the County formed and has direct authority over several individual departments including the Suffolk County Executive's Office and Suffolk County Police Department. The aforementioned department and/or employees, agents or representatives of said department are directly involved in the violations that are at issue in this Complaint.

11.    Upon information and belief, defendant Suffolk County Executive's Office ("SCEO") is a department of the County, this is a local entity created to be an autonomous agency. SCEO maintains offices in Hauppauge, County of Suffolk, State of New York. Said entity is empowered to, among other things, propose Suffolk County's annual budget, and execute it once the County Legislature approves it.

3

12. Upon information and belief, defendant Suffolk County Police Department ("SCPD") is a department of the County, this is a local entity created to be an autonomous agency. SCPD maintains offices in Yaphank, County of Suffolk, State of New York. Said entity is empowered to, among other things, enforce the penal laws of New York.

13. Upon information and belief, Justin S. Meyers ("Meyers"), in his individual and official capacity, was Assistant Deputy Police Commissioner at the time of Schultz's hiring and was subsequently promoted to Assistant Commissioner for Strategic Communications until he resigned to be Timothy Sini's ("Sini") Chief of Staff at the Suffolk County District Attorney's Office following Sini's election as District Attorney. Meyers was, in part, responsible for the hiring process of individuals seeking employment through the SCPD, and Meyers was part of the decision making unit that denied Schultz employment based upon her reporting defendant Meyers's misconduct. Alternatively, and upon information and belief, he was part of the decision making unit that denied Schultz employment because of her gender and misdemeanor conviction.

14. Upon information and belief, Dennis Cohen ("Cohen"), in his individual and official capacity, was Chief Deputy County Executive for the SCEO. Cohen was, in part, responsible for the hiring process of individuals seeking employment through the SCPD, and Cohen was part of the decision making unit that denied Schultz employment based upon her reporting Meyers's misconduct. Alternatively, and upon information and belief, he was part of the decision making unit that denied Schultz employment because of her gender and misdemeanor conviction.

15. Upon information and belief, Stuart Cameron ("Cameron"), in his individual and official capacity, was Acting Commissioner for SCPD following Sini's election to become

4

Suffolk County District Attorney. Cameron was, in part, responsible for the hiring process of individuals seeking employment though SCPD, and Cameron was part of the decision making unit that denied Schultz employment based upon her reporting Meyers's misconduct. Alternatively, and upon information and belief, he was part of the decision making unit that denied Schultz employment because of her gender and misdemeanor conviction.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, and principles of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

17.     Prior to the commencement of this action, and on or about May 30, 2018, Plaintiff duly filed with defendants County and SCEO a written verified Notice of Claim setting forth the time when, and the place where the incident occurred, which is the subject of the lawsuit, the nature and extent of the injuries and damages sustained, and the amount claimed.

18.     More than thirty days have elapsed since the presentation of said claim, and defendants have not adjusted the same, and have failed and neglected to make payment, and or remedy such claim and cause of action.

19.     Venue is proper in this district under 28 U.S.C. §1391(b) because a substantial part of the events that give rise to plaintiff's claims occurred within the Eastern District of New York.

## FACTS

20.     In or about January 2016, Meyers began recruiting Schultz to work for the SCPD as its Director of Communications.

21.     At that time, Meyers was Assistant Deputy Commissioner to then SCPD Commissioner Sini.

5

22.     At that time, Schultz was employed by Zimmerman/Edelson Inc. ("Z/E Inc."),
and had worked there for approximately five years. Z/E Inc. is one of the leading public
relations, marketing, and social media communications firms in the region. The company
represents private and public sector clients.

23.     Schultz was hired by Z/E Inc. as an Account Manager in its Public Relations
Division, and within two years was promoted to be Z/E's first ever female director of Public
Relations. In this role she managed the entire Public Relations Division.

24.     Schultz knew Meyers during this time from several projects they worked on
together.

25.     During the recruiting process Schultz advised Meyers that she had pleaded guilty
to a misdemeanor eight years earlier for improperly accepting unemployment benefits.

26.     Meyers asked numerous questions about the misdemeanor, and several days later
called to tell her the misdemeanor was not a problem with employment at the SCPD.

27.     Meyers arranged for Schultz to meet with SCPD Commissioner Sini. They met at
a local Suffolk County diner to discuss her qualifications for the position, and several hours after
the meeting Sini called Schultz to offer her the job of SCPD's Director of Communications.

28.     On or about June 20, 2016, Schultz began working as the SCPD's Director of
Communications.

29.     For administrative and bookkeeping purposes, Schultz was considered a SCEO
employee, and was "on loan" to the SCPD; her County title was County Executive Assistant V at
Grade 31, Step 11.

30.     While working for the SCPD Meyers was Schultz's direct supervisor.

6

31. A few weeks into her new job, Schultz met with defendant Cohen to further discuss her misdemeanor conviction.

32. Upon information and belief, Cohen's duties and responsibilities included, but were not limited to, authorizing all personnel decisions concerning the entire Suffolk County staff.

33. Cohen asked Schultz to provide additional documentation concerning her criminal conviction, i.e. a Certificate of Disposition, which she did.

34. Cohen asked Schultz numerous questions about the arrest and conviction, which she answered truthfully. Cohen wanted to confirm that Schultz was not a convicted felon, which she was not; Schultz provided the documentation to prove the conviction was for a misdemeanor.

35. Cohen went on to say that the misdemeanor was not an issue of concern, and the nature of the conviction did not pose a conflict to her duties and responsibilities as Director of Communications for the SCPD.

36. After her meeting with Cohen, Schultz met in Sini's office with Meyers and Sini to further discuss her misdemeanor conviction. Sini asked about the arrest and conviction, which Schultz explained from the point of her arrest through to the final disposition of the case. Schultz further explained that she thought the entire episode was her mistake in applying to the Department of Labor ("DOL") for unemployment benefits.

37. Sini asked why she would plead guilty to something if it was a mistake, and Schultz explained that the arresting detectives told her they would jail her and take custody of her children if she did not sign a statement stating that she intentionally defrauded the DOL. Sini asked if she had ever been in trouble with the law on any other occasion and she said "No."

7

38.     Sini said he was going to check and he gave her a piece of paper to write her name, and any other names she was known by, which she did. Sini went to his computer to look her up on a SCPD database. After several minutes he walked back over to her and said, "There's nothing else. That's good. There is no issue. It's almost ten years old, and no one is going to care anyway. Just keep doing the great work you're doing."

39.     The meeting ended with Sini telling Schultz that he was happy to have her on board.

40.     In October 2017, questions were raised in the media about whether Schultz had undergone a background check.

41.     Meyers told Schultz about the inquiries being made in the media; Schultz offered to go on the record to discuss the misdemeanor conviction.

42.     Meyers told her not to speak to anyone about the issue. Meyers stated that these inquiries were being made to undermine Sini's election bid to become the Suffolk County District Attorney.

43.     Upon information and belief, Meyers did speak to the media off the record about Schultz, and he acknowledged that the SCPD knew of her misdemeanor conviction before she was hired, and he described her as an exemplary employee.

44.     A few days later Sini spoke privately with Schultz in her office, and he told her not to listen to any of the "nonsense" being raised about her conviction. Sini told her to keep doing the great job she was doing.

45.     In or about November 2017, Sini was elected Suffolk County District Attorney.

46.     During Sini's District Attorney election campaign, Schultz had intimate knowledge of Meyer's whereabouts during his SCPD workday.

8

47.     The intimate knowledge included knowing of Meyers's campaigning for Sini during his workday when he was supposed to be working on SCPD business.

48.     During Schultz's time working for Meyers she also became aware of his use of SCPD employees to run personal errands for him on County time.

49.     On or about January 1, 2018, Meyers resigned from the SCPD to work as Sini's Chief of Staff at the Suffolk County District Attorney's Office ("SCDAO").

50.     Throughout January and February 2018, Meyers continued to call into the SCPD to direct its employees to do work for him, including calls to Schultz.

51.     For example, Meyers gave explicit instructions to Schultz not to hold any press conferences regarding arrests made by SCPD because he wanted those announcements to come out of the SCDAO's communication's office not the SCPD's communication's office.

52.     **In another instance, Meyers gave explicit instructions to Schultz and other SCPD staff not to provide details of an alleged theft of District Attorney Sini's wallet from his county car.**

53.     At this time Meyers had absolutely no authority to give these instructions to Schultz, or any other SCPD employee.

54.     On or about February 22, 2018, the SCDAO's office held a press conference concerning an arrest warrant executed by the SCPD.

55.     Meyers wanted Schultz to have the SCPD's social media platforms address this arrest warrant.

56.     This day, however, fell on a day when the SCPD was honoring one of its fallen police officers. The standing tradition was that all SCPD social media would focus on the fallen police officer for the entire day.

9

57.    Meyers began sending threatening and profane text messages to Schultz's cell phone.

58.    Included in these threats was this threat from Meyers to Schultz "...it's not going to go very well for you. If you do not call me in the next 60 seconds you're going to get an extremely uncomfortable phone call from the commissioner [Cameron]."

59.    A week later, Schultz met with two senior-level SCPD officers to discuss Meyers's conduct; she needed guidance on who she should be taking orders from.

60.    During his meeting Schultz discussed Meyer's abusive leadership, and his campaigning for the former SCPD Commissioner, Sini, on SCPD time.

61.    The two senior-level SCPD officers told Schultz they would look into it further.

62.    Nine days later, on March 15, 2018, Schultz was called to a meeting with Cohen and the County Executive's Chief of Staff, Lisa Black ("Black").

63.    Cohen and Black told Schultz that she should resign her position with SCPD because she failed a background check, which they said was specifically caused by the misdemeanor conviction she previously told Cohen about.

64.    Schultz refused to resign, and was fired that afternoon by defendant Cameron, who also memorialized the termination of employment via letter dated March 15, 2018.

65.    Upon information and belief, male SCPD employees who were convicted of misdemeanor crimes either before they were hired by the SCPD, or during their employment with the SCPD, received offers of employment, or did not lose their jobs with the SCPD despite their criminal convictions.

10

66.     Upon information and belief, defendants terminated Schultz's employment in retaliation for her reporting Meyers's misuse of SCPD work time to campaign for Sini's District Attorney election campaign.

67.     Alternatively, and upon information and belief, defendants terminated Schultz's employment because she was a woman with a misdemeanor conviction.

68.     Schultz was, and still is, a highly-qualified individual for the position of Director of Communications with the SCPD.

69.     Schultz's application for the position with the SCPD contained all of the necessary information to allow the SCPD to fairly and fully consider her for the position.

70.     Upon information and belief, Schultz's application was reviewed by the defendants.

71.     The information submitted by Schultz in her application included information about her prior conviction.

72.     Schultz was convicted of a non-violent crime in New York State for actions that allegedly took place between April 2005 and September 2005.

73.     Schultz pleaded guilty to misdemeanor.

74.     Section 753 of the New York Correction Law states in part:

> 1. In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall consider the following factors:
>
> a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> c) The bearing, if any, the criminal offense or offenses for

11

> which the person was previously convicted will have on his
> fitness or ability to perform one or more such duties or
> responsibilities.
>
> d) The time which has elapsed since the occurrence of the
> criminal offense or offenses.
>
> e) The age of the person at the time of occurrence of the
> criminal offense or offenses.
>
> f) The seriousness of the offense or offenses.
>
> g) Any information produced by the person, or produced on
> his behalf, in regard to his rehabilitation and good conduct.
>
> h) The legitimate interest of the public agency or private
> employer in protecting property, and the safety and welfare of
> specific individuals or the general public.

75. Schultz provided information relevant to the above stated factors to the SCPD that would allow them to make a full and fair consideration of the weight her prior conviction should be given while evaluating her for the position.

76. The defendants ignored the factors necessary to properly consider Schultz's prior conviction, and terminated her employment.

77. The SCPD failed to explain how her prior conviction has a bearing on the duties and responsibilities of being a Special Projects Coordinator, or if it does at all.

78. None of the job requirements of the position she was hired to do for the SCPD is of a nature that would cause Schultz's conviction of approximately 11 years ago to disqualify her, especially considering that she was fully performing the duties and responsibilities related to the job for almost two years.

79. The discriminatory practices leveled against her on the basis of her gender were allowed to continue and happen with the defendants' permission.

12

## FIRST CAUSE OF ACTION
(42 U.S.C. §1983 Violation -
First Amendment Retaliation)

80. Plaintiff repeats, reiterates, and realleges each allegation contained in paragraphs 1 through 79 of this Complaint with the same force and effect as though fully set forth herein.

81. Plaintiff's verbal complaint to two senior-level SCPD officers was concerning a matter of public concern, i.e. fraud and other misconduct by a senior SCPD employee, and was constitutionally protected.

82. Approximately nine days after her verbal complaint, plaintiff's employment was terminated. There exists a temporal and causal connection between the complaint and the adverse employment action, and the speech was a substantial motivating factor in the decision to terminate her employment.

83. On or about January 10, 2018, the SCPD appointed plaintiff as a "Provisional Special Projects Coordinator" effective January 1, 2018. The only condition precedent contained in the notice of appointment was that plaintiff "take the Civil Service exam when it is given and be reachable to become permanent in this position."

84. Upon information and belief, at the time of her appointment the SCPD had completed its background check of plaintiff, and no other impediment to her employment existed -- other than her taking the Civil Service exam.

85. Defendants' stated reason for plaintiff's termination of employment, a failed background check because of a prior misdemeanor conviction, was a pretext for retaliation.

86. Defendants were fully aware of plaintiff's conviction during the almost two-year period she worked without issue as the SCPD's Director of Communications.

13

87.     Plaintiff was under no employment obligation to report defendant Meyers's misconduct to defendants, or any other County employees.

88.     Plaintiff's speech was ordinarily not within the scope of her duties, and she spoke out about defendant Meyer's misconduct as a private citizen and not as a public employee.

## SECOND CAUSE OF ACTION
(42 U.S.C. §1983 Violation -
14th Amendment Gender Discrimination)

89.     Plaintiff repeats, reiterates, and realleges each allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90.     The defendants, while acting under the color of law, subjected plaintiff to the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States. Specifically, the Equal Protection guarantees of the Fourteenth Amendment of the Constitution.

91.     Schultz was treated unfairly, unequally, and in a discriminatory manner based upon her gender by the all defendants, including the individual defendants Meyers, Cohen, and Cameron, in their official and individual capacities.

92.     Upon information and belief, there exist male SCPD employees who were convicted of misdemeanors either before their employment with the SCPD, or while employed by the SCPD. In both instances, the SCPD did not rescind an offer of employment, or terminate the employment of those male SCPD employees despite their misdemeanor convictions.

14

93.     Defendants discriminated against plaintiff by subjecting her to disparate

treatment because of her gender.

94.     The actions of defendants, in depriving plaintiff of her constitutional and civil

rights were both willful and malicious.

## THIRD CAUSE OF ACTION
(42 U.S.C. §1983 Violation –
Municipal Liability)

95.     Plaintiff repeats, reiterates, and realleges each allegation contained in

paragraph 1 through 94 of this Complaint with the same force and effect though fully set forth

herein.

96.     The County, SCEO, and the SCPD were directly involved in the violations of

plaintiff's rights herein.

97.     Defendants Meyers, Cohen, and Cameron were policymakers, and were directly

involved in the violation of plaintiff's rights herein.. Defendant Cameron was the ultimate

controller of the SCPD in his position as Acting Commissioner of the SCPD, and knew or

should have known the impropriety of the conduct engaged in by the defendants in regard to

denying employment to plaintiff.

98.     Unlawful discriminatory acts by d efendants caused the wrongful denial of

employment to plaintiff such wrongful acts were part of the policy or custom of the

defendants, and were reviewed by and adopted by the municipal defendants.

15

99.     This is evidenced by defendant Meyers initiating the process to terminate plaintiff's employment; defendant Cohen of the SCEO encouraging plaintiff to resign because of her misdemeanor conviction; and defendant Cameron of the SCPD terminating her employment because of 1) plaintiff's protected speech, or 2) plaintiff's gender.

100.    By their actions, defendants intentionally deprived plaintiff of valuable rights based on unlawful and unconstitutional motives of denial of equal protection, retaliation for engaging in protected First Amendment speech, and refusal to adhere to federal and state Law.

101.    Upon information and belief, the improper municipal policy or custom perpetrated by defendants was the termination of plaintiff's employment based upon her protected speech and/or gender.

102.    All of collective defendants' actions were taken under color of State law.

103.    In addition, by actively inflicting and failing to prevent the above stated abuse incurred by plaintiff, the municipal defendants acted unreasonably, recklessly, and negligently in failing to exercise the amount of due care to secure and protect plaintiff's civil and constitutional rights.

104.    The municipal defendants have permitted, tolerated and encouraged the unjustified, unreasonable denial of employment to plaintiff who sought employment and was ultimately denied on the basis of either her protected speech or gender.

105. Although such conduct was improper, said incidents were supported by the County, its agents, employees and servants, including, but not limited to the SCEO, SCPD, and the individual defendants herein.

106. As a consequence of the defendant County's practices, pattern, and custom of intentionally promoting and supporting the SCPD's violations of 42 U.S.C. §§1983 and 1985 plaintiff suffered and continues to suffer loss of benefits, loss privileges, loss/deprivation of constitutional rights, distress, humiliation, expense, and embarrassment.

## FOURTH CAUSE OF ACTION
(42 U.S.C. §1985 Violation –
Conspiracy to Interfere with Civil Rights)

107. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 106 as if separately set forth herein.

108. Upon information and belief, defendants Meyers, Cohen, Cameron, and others, conspired for the purpose of depriving, either directly or indirectly, plaintiff and/or other similarly situated individuals, of the equal protection of the laws, or of equal privileges and immunities under the laws.

109. On the day defendant Cameron formally terminated plaintiff's employment with the SCPD, plaintiff was told by Cameron to report to the SCEO to meet with defendant Cohen.

17

110.    Upon arriving, defendant Cohen told plaintiff she should resign because she failed the SCPD's background check, specifically, that her misdemeanor conviction prevented her from further employment with the SCPD.

111.    Plaintiff refused to resign, and defendant Cohen told her to reconsider and meet with him again in the afternoon.

112.    Later that afternoon, plaintiff met again with Cohen and told him she did not want to resign. Cohen then gave her a letter from defendant Cameron informing her that her employment with the SCPD was terminated effective "1400 hours on March 15, 2018."

113.    These events all transpired several weeks after defendant Meyers threatened plaintiff with disciplinary action via text message from defendant Cameron if she did not immediately comply with his improper commands.

## FIFTH CAUSE OF ACTION
(Violation of New York Civil
Service Law Section 75-b)

114.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 113 as if separately set forth herein.

115.    The SCPD, a public employer, dismissed plaintiff, a public employee, from her employment because she disclosed to a governmental body information which she reasonably believed to be true and reasonably believed constituted improper governmental action.

18

116.     Plaintiff reported to several senior-level SCPD officers that defendant Meyers, a Suffolk County officer and/or employee, was engaged in electioneering on behalf of then candidate Sini in his campaign run for Suffolk County District Attorney.

117.     That electioneering took place while defendant Meyers was supposed to be working on SCPD projects.

118.     Plaintiff also observed defendant Meyers at his home in the middle of a Suffolk County work day working on Sini's election campaign with several other individuals.

119.     In addition, plaintiff reported the misrepresentation by defendant Meyers of his time spent working for the County, i.e. submission of inaccurate timesheets.

120.     As a result of defendants' actions, plaintiff has suffered substantial damages, including, but not limited to, mental distress and lost wages and benefits in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
(Violation of New York
Labor Law Section 740)

121.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 120 as if separately set forth herein.

122.     The defendants took retaliatory personnel action against plaintiff when they terminated her employment.

123.     This action was taken after plaintiff provided information to senior-level SCPD officers who were conducting an investigation, hearing, or inquiry into a violation of a law,

19

rule or regulation by defendant Meyers, specifically, defendant Meyers's electioneering on County time on behalf of candidate Sini in his election campaign to become Suffolk County District Attorney, and misreporting his (Meyers) time sheets to the County.

124.    Alternatively, this action was taken after plaintiff objected to, or refused to participate in any further activity, policy or practice that was in violation of a law, rule or regulation, specifically, aiding defendant Meyers' misreporting of his time sheets to the County.

125.    As a result of defendants' actions, plaintiff has suffered substantial damages, including, but not limited to, mental distress and lost wages and benefits, in an amount to be determined at trial.

**WHEREFORE,** plaintiff demands judgment against defendants as follows:

a) First Count: reinstatement, lost wages and benefits, compensatory damages, including emotional distress damages, as well as punitive damages, costs and attorney's fees;

b) Second Count: reinstatement, lost wages and benefits, compensatory damages, including emotional distress damages, as well as punitive damages, costs and attorney's fees;

c) Third Count: reinstatement, lost wages and benefits, compensatory damages, including emotional distress damages, as well as punitive damages, costs and attorney's fees;

d) Fourth Count: reinstatement, lost wages and benefits, compensatory damages, including emotional distress damages, as well as punitive damages, costs and attorney's fees;

e) Fifth Count: reinstatement, lost wages and benefits as well as compensatory damage, costs and attorney's fees;

f) Sixth Count: reinstatement, lost wages and benefits as well as compensatory damage, costs and attorney's fees;

g) Award attorney's fees and costs of this action to the plaintiff pursuant to 42 U.S.C. §1988;

h) Declaratory Judgment that defendants willfully violated plaintiff's rights secured by federal and state law as alleged herein;

i) Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

j) An Order declaring that defendants grant plaintiff employment for the position of Special Projects Coordinator;

k) Award such other and further relief as this Court may deem appropriate.

Dated: February 15, 2019
       Rockville Centre, N.Y.

BRENDAN CHAO
Attorney & Counsellor at Law

By:

Brendan Chao (BC 8811)
Attorney for Plaintiff
50 Merrick Road, Suite 200
Rockville Centre, New York 11570
(516) 466-2033

21

# DECLARATION

I, DONNA J. SCHULTZ, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury the allegations made in the foregoing Complaint are true and correct to the best of my Knowledge.

DONNA J. SCHULTZ