UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

DONNA SCHULTZ,

                            Plaintiff,

           -against-

COUNTY OF SUFFOLK, JUSTIN S.
MEYERS IN HIS OFFICIAL AND
PERSONAL CAPACITY, DENNIS COHEN
IN HIS OFFICIAL AND PERSONAL
CAPACITY, AND STUART CAMERON IN
HIS OFFICIAL AND PERSONAL
CAPACITY,

                         Defendants.

-------------------------------------------------------------x

Case No: 19-cv-00925-JMA-ARL

## DEFENDANT JUSTIN S. MEYERS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S  AMENDED COMPLAINT

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
*JUSTIN S. MEYERS*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorneys of Record:
    Marc S. Wenger, Esq.
    Fatima M. Guillen-Walsh, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ....................................................................................................................... 6

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR GENDER
DISCRIMINATION IN VIOLATION OF THE FOURTEENTH
AMENDMENT UNDER SECTION 1983 ................................................................ 6

     A.    Plaintiff Fails to Allege Facts Sufficient to Raise an Inference of
Gender Discrimination on the Part of Meyers ...................................... 7

     B.    Plaintiff Fails to Assert that Meyers Treated Male Employees
More Favorably Than He Treated Plaintiff ........................................... 8

II.    PLAINTIFF FAILS TO STATE A FIRST AMENDMENT
RETALIATION CLAIM UNDER SECTION 1983 ................................................ 9

     A.    Plaintiff Fails to Plead Plausible Facts Sufficient to Conclude that
Meyers Took an Adverse Employment Action Against Plaintiff ......... 9

     B.    Plaintiff's Amendment to Add Conclusory Allegations that Her
Report "Was Not Ordinarily Within the Scope of Her Job Duties"
Does Not Meet the Criteria for a First Amendment Retaliation
Claim ...................................................................................................... 11

III.   PLAINTIFF FAILS TO STATE A CONSPIRACY CLAIM UNDER
SECTION 1985 ...................................................................................................... 15

     A.    Plaintiff's Amended Complaint Lacks a Plausible Overt Act .............. 15

     B.    Plaintiff's Section 1985 Claim Is Precluded by the Intra-Corporate
Conspiracy Doctrine ............................................................................. 17

IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER STATE
WHISTLEBLOWER LAWS ................................................................................. 18

     A.    Plaintiff Waived Her Civil Service Law Section 75-b Claims by
Asserting Claims Under Labor Law Section 740 ................................. 18

     B.    Section 75-b Does Not Apply to Individuals and Thus, Does Not
Apply to Meyers .................................................................................... 19

i

C.     Plaintiff Fails to Sufficiently Plead a Substantial and Specific Danger to Public Health and Safety.......................................................................20

D.     Section 740 Does Not Permit the Relief Plaintiff Seeks ......................................22

V.     PLAINTIFF FAILS TO STATE A CLAIM FOR *PRIMA FACIE* TORT .......................22

A.     Plaintiff Cannot Assert a Claim for *Prima Facie* Tort to Circumvent Her Lack of Tort Claim for Wrongful Discharge ...........................22

B.     Plaintiff Fails to Plead Facts Sufficient to Conclude that Meyers' Sole Motive Was "Disinterested Malevolence" ....................................................23

VI.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS ANY AMENDMENT WOULD BE FUTILE .....................................24

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alston v. Sebelius,*
No. 13-cv-4537 (SJF) (ARL), 2014 U.S. Dist. LEXIS 123613 (E.D.N.Y. July 31, 2014) ................................................................................................................16, 17

*Arista Records LLC v. Doe,*
604 F.3d 110 (2d Cir. 2010)......................................................................................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................................................5

*Austin v. Ford Models, Inc.,*
149 F.3d 148 (2d Cir. 1998) (abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)) ...........................................................................10

*Back v. Hastings on Hudson Union Free Sch. Dist.,*
365 F.3d 107 (2d Cir. 2004).....................................................................................10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................5, 15

*Burns v. City of Utica,*
590 Fed. Appx. 44 (2d Cir. 2014).............................................................................16

*Calabro v. Nassau Univ. Med. Ctr.,*
424 F. Supp. 2d 465 (E.D.N.Y. 2006) ......................................................................20

*Capogrosso v. Gelbstein,*
No. 18-cv-2710 (MKB) (LB), 2019 U.S. Dist. LEXIS 15867 (E.D.N.Y. Jan. 30, 2019) ..................................................................................................................10

*Conklin v. County of Suffolk,*
859 F. Supp. 2d 415 (E.D.N.Y. May 3, 2012) ..........................................................10

*Cortec Industries, Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991)..................................................................................10, 24

*Cotrone v. Consol Edison Co. of N.Y., Inc.,*
50 A.D.3d 354 (1st Dep't 2008) ...............................................................................21

*Cox v. Warwick Valley CSD,*
654 F.3d 267 (2d Cir. 2011).......................................................................................9

*Cullen v. City of New York*,
No. cv-07-3644 (CBS) (JMA), 2008 U.S. Dist. LEXIS 101699 (E.D.N.Y. July
8, 2008) ...................................................................................................................13

*Diaz v. Local 228 of the Retail, Wholesale, Dep't Store Union, United Food &
Commercial Workers*,
2015 U.S. Dist. LEXIS 86777 (E.D.N.Y. May 15, 2015) ......................................14

*Dibiase v. Barber*,
2008 U.S. Dist. LEXIS 75664 (E.D.N.Y. Sept. 30, 2008)......................................20

*DiPizio v. Empire State Dev. Corp.*,
745 Fed. Appx. 385 (2d Cir. 2018) ..........................................................................6

*Dougherty v. Memorial Sloan-Kettering Cancer Center*,
No. 00-cv-4083 (JGK), 2002 U.S. Dist. LEXIS 13216 (S.D.N.Y. 2002)...............20

*Easterson v. Long Island Jewish Med. Ctr.*,
156 A.D.2d 636 (2d Dept. 1989) ...........................................................................21

*Evans v. Excellus Health Plan, Inc.*,
No. 6:11-cv-1248, 2012 U.S. Dist. LEXIS 109849 (N.D.N.Y. Aug. 6, 2012) ............... 22-24

*Frank v. State of New York, Off. Of Mental Retardation & Dev. Disabilities*,
86 A.D.3d 183 (3d Dep't 2011) ...........................................................................18-19

*Fry v. McCall*,
945 F. Supp. 655 (S.D.N.Y. 1996) .........................................................................19

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)................................................................................................12

*Gaughan v. Nelson*,
94-cv-3859 (JFK), 1997 U.S. Dist. LEXIS 1942 (S.D.N.Y. Feb. 26, 1997) ...........19

*Gonzalez v. City of New York*,
377 F. Supp. 3d 273, 294-96 (S.D.N.Y. 2019) .......................................................12

*Grady v. Affiliated Central, Inc.*,
130 F.3d 553 (2d Cir. 1997).....................................................................................7

*Guity v. Uniondale Union Free Sch. Dist.*,
No. CV 15-5693 (SJF) (AKT), 2017 U.S. Dist. LEXIS 27542 (E.D.N.Y. Feb.
23, 2019) .............................................................................................................16, 17

*Harisch v. Goldberg*,
No. 14-cv-9503 (KBF), 2016 U.S. Dist. LEXIS 39494 (S.D.N.Y. Mar. 25,
2016) ...................................................................................................................13, 18

*Hyek v. Field Support Servs., Inc.*,
   702 F. Supp. 2d 84 (E.D.N.Y. 2010) ...............................................................7

*Jackson v. Wells Fargo Home Mortg.*,
   15-CV-5062 (PKC) (ST), 2018 U.S. Dist. LEXIS 136643 (E.D.N.Y. Aug. 10,
   2018) ...............................................................................................................25

*Kahn v. State Univ. of New York Heath Science Ctr. at Brooklyn*,
   288 A.D.2d 350 (2d Dep't 2001) ..................................................................20

*Kajoshaj v. N.Y. City Dep't of Educ.*,
   543 Fed. Appx. 11 (2d Cir. 2013) .................................................................15

*Kirwin v. New York State Office of Mental Health*,
   665 F. Supp. 1034 (E.D.N.Y. 1987) .............................................................19

*Kraus v. New Rochelle Hosp Med. Ctr.*,
   216 A.D.2d 360 (2d Dep't 1995) ..................................................................22

*Lambert v. General Elec. Co.*,
   244 A.D.2d 841 (3d Dept. 1997) ..................................................................20

*Leibowitz v. Bank Leumi Trust Co. of New York*,
   152 A.D.2d 169 (2d Dept. 1989) ..................................................................21

*Local 621, S.E.I.U. v. City of New York*,
   No. 99-cv-9023 (LAP), U.S. Dist. LEXIS 18079 (S.D.N.Y. Sept. 27 2002) ...........................12

*Marcella v. ARP Films, Inc.*,
   778 F.2d 112 (2d Cir. 1985)..........................................................................23

*Margrabe v. Sexter & Warmflash, P.C.*,
   353 Fed. Appx. 547 (2d Cir. 2009) ..............................................................24

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)........................................................................................6

*Mcgrane v. The Reader's Digest Ass'n, Inc.*,
   92-cv-8132 (VLB), 1993 U.S. Dist. LEXIS 17790 (S.D.N.Y. 1993), *aff'd*, 60
   F.3d 811 (2d Cir. 1995)................................................................................19

*Miles v. Branch College*,
   No. cv-07-1214 (CPS) (RLM), 2008 U.S. Dist. LEXIS 5534 (E.D.N.Y. Jan.
   24, 2008) ........................................................................................................13

*Nadkarni v. North Shore-Long Island Jewish Health Sys.*,
   21 A.D. 3d 354 (2d Dep't 2015)....................................................................20

*Pearson v. Callahan,*
    555 U.S. 223 (2009)........................................................................................14

*Ross v. Breslin,*
    693 F.3d 300 (2d Cir. 2012)..................................................................... 12-13

*Scaduto v. Restaurant Associates Industries, Inc.,*
    180 A.D.2d 458 (1st Dep't 1992) .................................................................22

*Singh v. City of New York,*
    524 F.3d 361 (2d Cir. 2008)..........................................................................12

*St. Mary's Honor Ctr. V. Hicks,*
    509 U.S. 502 (1993)........................................................................................6

*Texas Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248 (1981)..................................................................................... 6-7

*Tucker v. New York City,*
    No. 05-cv-2804 (GEL) (MHD), 2007 U.S. Dist. LEXIS 77879 (S.D.N.Y. Oct.
    15, 2007) ......................................................................................................21

*United States v. McKeon,*
    738 F.2d 26 (2d Cir. 1984)............................................................................11

*Vessa v. City of White Plains,*
    No. 12-cv-6989(ER), 2014 U.S. Dist. LEXIS 42458 (S.D.N.Y. Mar 27, 2014) .......................9

## STATUTES

42 U.S.C. § 1983 ....................................................................................... passim

Civil Service Law § 75-b ............................................................................ passim

General Municipal Law § 50(h)..........................................................................5

N.Y. Labor Law § 740 ................................................................................ passim

New York Civil Service Law § 75-b ............................................................ passim

## PRELIMINARY STATEMENT

Plaintiff Donna Schultz seeks to challenge the termination of her employment from her at-will position with the Suffolk County Police Department ("SCPD") in an action she styles as the assertion of her federal constitutional and other rights. In reality, her Amended Complaint is an exercise in retaliation by litigation. Lacking any viable claims, she takes the kitchen sink approach to pleading with a series of conclusory assertions interspersed with allegations "on information and belief," untethered to any plausible and relevant facts. Alerted during the Pre-Motion Conference process to the numerous deficiencies in the assortment of claims in her original Complaint, she chose to double-down. Rather than withdrawing patently defective claims, or patching them up with plausible and relevant facts, she has taken the unprecedented step of *removing* relevant facts that she feared would lead to dismissal. Ultimately, however, she cannot hide from the truth, which is that she has no viable claims against Justin Meyers.

To appreciate the vindictive and meritless nature of Plaintiff's claims against Meyers, the Court need look no further than her claim that Meyers terminated her employment because of her gender in violation of the Fourteenth Amendment and Section 1983. As discussed at the Pre-Motion Conference, *Meyers hired her*. Plaintiff offers absolutely no facts to overcome the strong presumption that he did not discriminate against her based on her gender. Her insistence on pursuing this claim without any attempt to address this defect is simply abusive.

Plaintiff's other claims fare no better. She goes to extraordinary lengths to avoid the inconvenient fact that Meyers was no longer working for the SCPD and not her supervisor at the time her employment was terminated. She offers no plausible factual basis to conclude that Meyers was involved in the decision to terminate her employment, undermining each of her

1

claims. She attempts to cover up this flaw with allegations on information and belief, a ploy that has been soundly rejected by the courts.

Also at the Pre-Motion Conference, Plaintiff was confronted with the likely dismissal of her First Amendment retaliation claim because she pleaded in her original Complaint that the speech in issue was nothing more than an attempt to determine whether she was required to take direction from Meyers after he left SCPD, which was clearly not a constitutionally protected matter of public concern. In response, Plaintiff too cleverly removed the operative language from her original Complaint. Plaintiff, however, cannot "unring this bell," as the language in the original pleading remains in the record and provides relevant context for this claim. Since she offers no other plausible facts suggesting that her report addressed matters of public concern, this claim fails. Indeed, Plaintiff does not even provide a factual basis to conclude that Meyers was even aware of her purported complaint about him, without which he could not have formed any retaliatory intent.

Plaintiff's conspiracy claim also fails. Plaintiff does not plausibly allege any overt act indicating that Meyers "conspired" against her to have her terminated. Regardless, the law does not recognize a claim for conspiracy among a group of managers acting on behalf of a single employer. Plaintiff's claims under Labor Law § 740 and Civil Service Law § 75-b are equally flawed and should have been withdrawn following the Pre-Motion Conference. Section 740 simply does not apply to public officials such as Meyers. While Section 75-b applies in the public sector, it does not apply to individual public officials. Both statutes require a showing that the complaint in issue involved a risk to public health or safety, a requirement that Plaintiff fails to meet. Section 740 also contains a waiver provision that invalidates the Section 75-b claim and any other claim arising out of the same operative facts.

Plaintiff's most egregious abuse of the leave to amend granted by the Court at the Pre-Motion Conference is her surprise decision to insert a frivolous claim for *prima facie* tort. It is well-settled that at-will employees such as Plaintiff cannot circumvent the absence of a claim for wrongful termination under New York law by alleging *prima facie* tort. Such a claim lies only in instances of disinterested malevolence, which is manifestly not present in this case.

While none of Plaintiff's claims against Defendant Meyers should survive this Motion, this may be an empty exercise if dismissal is not granted with prejudice. Plaintiff has amply demonstrated her proclivity for pleading futile claims. It is time now to terminate this process once and for all.

## STATEMENT OF FACTS[1]

Plaintiff was convicted of a criminal misdemeanor after pleading guilty to improperly accepting unemployment benefits in 2008. Am. Compl. ¶ 22. Notwithstanding this fact, years later Plaintiff was contacted by Meyers to discuss a position at SCPD as Director of Communications. *Id.* ¶ 17. Meyers subsequently introduced Plaintiff to District Attorney Timothy Sini who at the time was SCPD Commissioner. Sini offered Plaintiff a position and she began working as Director of Communications at SCPD on or about June 20, 2016. *Id.* ¶¶ 24, 26.

At the time of Plaintiff's hire, Meyers was the Assistant Deputy Police Commissioner for Strategic Communications and served as Plaintiff's supervisor. *Id.* ¶¶ 10, 18, 27. In November 2017, Sini was elected Suffolk County District Attorney. *Id.* ¶ 37. Following the election, Meyers resigned from his previous position to pursue a new position as District Attorney Sini's Chief of Staff commencing on or about January 1, 2018. *Id.* ¶ 43.

---

[1] For purposes of this motion only, Defendant Justin S. Meyers accepts the factual allegations set forth in the Amended Complaint as true. Meyers, however, emphatically denies all allegations of wrongful conduct alleged by Plaintiff.

Due to Plaintiff's role as Director of Communications for SCPD, which included managing social media platforms, Meyers texted Plaintiff on or about February 22, 2018 about a post on the SCPD social media platforms regarding an arrest warrant executed by SCPD. *Id.* ¶¶ 47-51. Shortly thereafter, Plaintiff met with two senior level SCPD police officers to discuss Meyers' conduct. *Id.* ¶ 52. During this meeting, she reported that Meyers was campaigning for former SCPD Commissioner Sini on SCPD time, using SCPD employees to run errands for him, and other matters of purported "fraud" related to Meyers' time keeping records. *Id.* ¶¶ 52, 54. Following this meeting, Plaintiff *believes* the substance of her report was relayed to the individual defendants, who met "regularly" together. *Id.* ¶¶ 59-63.

On March 15, 2018, Plaintiff met with Defendant Cohen, who provided her with an opportunity to resign because she had failed the background check for her new provisional position. *Id.* ¶¶ 64, 66. After refusing to resign, Plaintiff was provided a letter by Defendant Cameron terminating her employment. *Id.* ¶¶ 67-68.

Plaintiff does not assert any direct allegations against Meyers following the February 2018 text message. All allegations relating to Meyers from that point forward are asserted "on information and belief," without any indication as to the factual basis of Plaintiff's purported belief. Plaintiff does not allege that Meyers was ever apprised of the complaint that purportedly compelled him to terminate her employment, nor does she claim that Meyers ever discussed her termination with her at any time. Though she admits that Meyers was working in the office of the District Attorney at the time of her termination and she was working for the SCPD, the only allegation that she offers to connect Meyers to the decision to terminate her employment is that she regularly saw him in meetings with Defendant Cohen before her meeting with the two police officers. *Id.* ¶¶ 61.

On May 30, 2018, Plaintiff filed a Notice of Claim and subsequently appeared for an oral examination pursuant to General Municipal Law § 50(h). *Id.* ¶ 14. She subsequently filed the instant action. On May 30, 2019, the parties appeared for a Pre-Motion Conference before the Court to address the numerous defects in Plaintiff's Complaint. On June 13, 2019, Plaintiff filed an Amended Complaint, but she did not cure the defects addressed at the Pre-Motion Conference. (Dkt. 35). Meyers responds to the Amended Complaint by this instant motion.

## STANDARD OF REVIEW

Plaintiff's Amended Complaint should be dismissed for failure to state a claim. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is ***plausible*** on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a pleading "that offers only 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do," as it requires more than "threadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Therefore, a plaintiff must plead factual allegations that are sufficient to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "[I]t demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (internal quotations and citations omitted). In instances where the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [her] complaint ***must*** be dismissed." *Twombly*, 550 U.S. at 570 (emphasis added).

Plaintiff's claims against Meyers consist of a generous heaping of labels and conclusions sprinkled with a few harmless facts. Stripped of all extraneous material, her Amended Complaint fails to state a claim for relief of any kind on any theory against Meyers. On that basis and for the reasons set forth herein, all claims against Meyers should be dismissed with prejudice.

## ARGUMENT

## I.     PLAINTIFF FAILS TO STATE A CLAIM FOR GENDER DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT UNDER SECTION 1983

Section 1983 claims alleging gender discrimination in violation of the Fourteenth Amendment are analyzed under the balancing test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See DiPizio v. Empire State Dev. Corp.*, 745 Fed. Appx. 385, 388-89 (2d Cir. 2018) (affirming the district court's dismissal and explaining that, for an FRCP 12(b)(6) motion, section 1983 claims are analyzed under the same standards applicable to a Title VII claim). In order to survive a motion to dismiss, Plaintiff must establish: (1) she is within a protected group; (2) she was qualified for the position in question; (3) she suffered an adverse employment action, like termination; and, (4) the termination occurred under circumstances giving rise to an inference of discrimination. *Id.* Plaintiff cannot establish the fourth element of her *prima facie* case against Meyers, as she has not sufficiently alleged any *facts* linking Meyers to her termination—nor can she, because, as she admits, he was not employed by SCPD at the time of her termination.

Even if Plaintiff could establish a *prima facie* case of discrimination, that would merely shift the burden to Meyers to produce evidence "that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 507 (1993). The ultimate burden lies with Plaintiff to establish that Meyers intentionally discriminated against her based on her gender and that the legitimate, non-discriminatory reason

was only a pretext. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Plaintiff's claims against Meyers fail because she fails to plausibly allege facts sufficient to meet this burden.

A. **Plaintiff Fails to Allege Facts Sufficient to Raise an Inference of Gender Discrimination on the Part of Meyers.**

Plaintiff does not (and cannot) present evidence sufficient to raise an inference of gender discrimination by Meyers because Plaintiff admits that Meyers was instrumental in hiring her. *See* Am. Compl. ¶¶ 17-25. "When the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute . . . an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997). Plaintiff admits that Meyers initiated her hire. Am. Comp. ¶¶ 17, 24. As the individual responsible for hiring Plaintiff, Meyers is entitled to the "same actor" inference long adhered to by courts in the Second Circuit. *See, e.g., Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 101 (E.D.N.Y. 2010) ("The Second Circuit has explained that under the same actor doctrine there are certain factors that strongly suggest that invidious discrimination was unlikely. For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." (internal quotations and citations omitted)).

Plaintiff offers no plausible facts to overcome this compelling inference. The assertion that Meyers hired Plaintiff, a female, and later developed a discriminatory animus for her, and subsequently discharged her because she is a female, simply defies logic.[2]

---

[2] Of course, as Plaintiff admits, Meyers did not work at SCPD at the time of Plaintiff's discharge, and therefore had no authority to discharge her. *See infra* Point II(A); Am. Compl. ¶ 43.

**B.      Plaintiff Fails to Assert that Meyers Treated Male Employees More Favorably than He Treated Plaintiff.**

Although the "same actor" defense is more than sufficient to dispose of Plaintiff's gender discrimination claim against Meyers, this claim fails for several other reasons. First, Plaintiff has not sufficiently pled allegations linking Meyers to the termination decision—nor can she, because, as she admits, he was not her supervisor at the time of her termination. *See infra* Point II(A); Am. Compl. ¶ 43.

Second, the only motivation that Plaintiff attributes to Meyers for his purported decision to terminate her employment is his desire to retaliate for her alleged complaint. She offers no facts to plausibly suggest that Meyers was motivated in any way by her gender. Confronted by the Court at the Pre-Motion Conference over the absence of any allegations in her original complaint to support her gender discrimination claim, such as preferential treatment of similarly-situated male comparators, Plaintiff responded by inserting a list of male police officers who engaged in various purported criminal acts and allegedly were not discharged. *See* Am. Compl. ¶¶ 77-83. She combines this list with the general allegation that "[m]ale SCPD employees who were convicted of misdemeanor crimes did not lose their jobs with the SCPD despite their criminal convictions." Am. Compl. ¶ 76. Absent from her allegations is any factual basis as to how these males are similarly situated to Plaintiff (they are not) or that Meyers personally provided these men with preferential treatment over Plaintiff (he did not). Plaintiff does not even attempt to assert that Meyers himself (as opposed to the SCPD generally) treated male SCPD employees differently. She offers no basis to conclude that Meyers was aware of purported criminal conduct by male SCPD employees and was authorized to take adverse action and chose not to do so. Plaintiff's conclusory allegation that "males" who committed crimes were not terminated is insufficient.

Moreover, unionized police officers are not similarly-situated comparators. The process for terminating the employment of a unionized police officer in no way compares to the process for terminating Plaintiff from her non-union civilian position. They are entirely different jobs. Even if Plaintiff's allegations were true, police officers are not appropriate comparators, leaving Plaintiff with no plausible facts to support her gender discrimination claim against Meyers.

## II. PLAINTIFF FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM UNDER SECTION 1983

To state a claim for First Amendment retaliation under Section 1983, a plaintiff must plausibly allege that (1) she engaged in constitutionally protected speech because she spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and, (3) there was a causal connection between the adverse employment action and the protected speech. *See Cox v. Warwick Valley CSD*, 654 F.3d 267, 272 (2d Cir. 2011).

Plaintiff's claim that Meyers retaliated against her for engaging in activity protected by the First Amendment must be dismissed because she fails to plead Meyers' personal involvement in the decision to terminate her employment and because the alleged comments on which her claim is based were not matters of public concern.

### A. Plaintiff Fails to Plead Plausible Facts Sufficient to Conclude that Meyers Took an Adverse Employment Action Against Plaintiff.

"Case law is clear that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Vessa v. City of White Plains*, 2014 U.S. Dist. LEXIS 42458, at *11 (S.D.N.Y. Mar 27, 2014). Plaintiff's First Amendment claim is devoid of any allegation that Meyers had any *direct* involvement in the alleged constitutional violation. Vague allegations are insufficient to establish the requisite "personal involvement" necessary for Plaintiff to sustain her claims against Meyers.

Plaintiff fails to—and simply cannot—allege that Meyers was personally involved in any adverse employment action as to Plaintiff. A plaintiff must *plausibly* allege the personal involvement of a defendant in the alleged constitutional deprivation in order to state a claim for relief under 42 U.S.C. § 1983. *Capogrosso v. Gelbstein*, 2019 U.S. Dist. LEXIS 15867, at *17 (E.D.N.Y. Jan. 30, 2019). The general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required. *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415 (E.D.N.Y. May 3, 2012). Actual or potential involvement in discussions that led to a decision is not personal involvement in the decision under Section 1983. *Id.* at 70; *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (providing examples of evidence of personal involvement).

Meyers resigned from the SCPD on or about January 1, 2018 to work as District Attorney Sini's Chief of Staff. Am. Compl. ¶ 43. Plaintiff attempts to hide the indisputable fact that Meyers lacked authority to terminate her employment in order to attempt to survive this instant motion by omitting from the Amended Complaint her prior admission that in February 2018, Meyers *did not have authority* over Plaintiff or other SCPD employees. *See* Original Compl. ¶ 53, Wenger Aff. Exh. A; Dkt. No. 1 ("At this time Meyers had absolutely no authority to give these instructions to Schultz, or any other SCPD employee.").[3] Meyers was not an employee of the

---

[3] Following a Pre-Motion Conference, Plaintiff was granted permission to amend her Complaint to address her apparent failure to plead the necessary elements of her claims. Rather than amending her Complaint to supplement deficient claims, however, Plaintiff removed certain allegations in an effort to conceal inconvenient yet undisputed facts. "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) (affirming dismissal). Quoting FRCP Rule 10(c), the *Cortec* court explains: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." *Id.* at 47 (internal quotations and citations omitted). Put simply, Plaintiff cannot "erase" her prior admissions in her original complaint by omitting them from her Amended Complaint. *Austin v. Ford Models, Inc.*, 149 F.3d 148 (2d Cir. 1998) (abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)) (affirming the district court's decision to deny plaintiff leave to file a second amended complaint that omitted admissions). Nor can Plaintiff "advance one version of the facts in [her] pleadings, conclude that [her] interests would be better served by a different version, and amend [her]

SCPD at the time of Plaintiff's discharge. Therefore, he could not possibly have had any role in the decision to terminate Plaintiff. Indeed, nowhere does Plaintiff allege that Meyers was present for her termination, delivered the news regarding her termination, or had any contact with Plaintiff in any capacity regarding her termination. *See, e.g.*, Am. Compl. ¶¶ 66-67. It is certainly not plausible—in fact it is not possible—that Meyers personally took this action against her. *See* Original Compl. ¶ 53. Accordingly, Plaintiff cannot satisfy the third element of a *prima facie* claim of First Amendment retaliation against Meyers.

**B. Plaintiff's Amendment to Add Conclusory Allegations that Her Report "Was Not Ordinarily Within the Scope of Her Job Duties" Does Not Meet the Criteria for a First Amendment Retaliation Claim.**

Plaintiff cannot satisfy the first element of a *prima facie* claim of First Amendment retaliation because she fails to assert plausible facts indicating that she engaged in constitutionally protected speech. The speech in issue occurred during Plaintiff's meeting with two senior-level police officers following what Plaintiff perceived as a threatening text message from Meyers. Am. Comp. ¶ 51. In her original Complaint, Plaintiff explained that she sought this meeting "to discuss Meyer's conduct; she needed guidance on who [sic] she should be taking orders from." Original Comp. ¶ 59. She further described the topic of the meeting as "Meyer's abusive leadership, and his campaigning for the former SCPD Commissioner, Sini, on SCPD time." Original Comp. ¶ 60.

Through pre-motion correspondence, Plaintiff was alerted to the deficiencies in her claim because the subject of this meeting was not a matter of public concern. Her response was to eliminate inconvenient allegations from the original Complaint and add a few conclusory allegations to the Amended Complaint. This ploy is insufficient to salvage this flawed claim.

---

pleadings to incorporate that version. . . ." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984). As in *McKeon*, Plaintiff attempts to advance a more favorable version of events by omitting undisputed facts. Accordingly, Meyers respectfully requests that the Court take notice of Plaintiff's original Complaint while considering the instant motion.

In *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006), the Supreme Court held that in determining whether speech at issue is constitutionally protected, a court must first decide whether the plaintiff was speaking as a "citizen" rather than a public employee. The Court reasoned that "restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* The Court further explained that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421; *see also Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008) (speech does not rise to the level of a matter of public concern if it "cannot be fairly considered as relating to any matter of political, social, or other concern to the community"). Speech on a private matter, such as an employee's internal grievances or looking for guidance on a purported issue, does not rise to the level of speech made as a matter of public concern. *See Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 294-96 (S.D.N.Y. 2019); *Local 621, S.E.I.U. v. City of New York*, U.S. Dist. LEXIS 18079, at *45-48 (S.D.N.Y. Sept. 27 2002).

Plaintiff's claim is undermined by the fact that in her original Complaint, Plaintiff alleges that the purpose of the meeting with two senior level SCPD officers was to discuss Meyers' conduct, as "she needed guidance on who she should be taking orders from." Original Comp. ¶ 59. In order to determine whether an employee was acting pursuant to her "official duties," courts must examine "the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012). In *Ross*, the Court determined that statements regarding improper payments

and promotions were not protected because they were made as an employee grievance. The Court further held that even an employee grievance made outside the chain of command can be within the scope of one's duties. *Id.*

Despite Plaintiff's flawed attempt to manipulate the allegations in her Amended Complaint to divert attention from the facts, it is evident that Plaintiff herself believes the purpose of the meeting was to pursue her official duties. She was not speaking on a matter of public concern. *See Harisch v. Goldberg*, 2016 U.S. Dist. LEXIS 39494, at *16-18, 20-21 (S.D.N.Y. Mar. 25, 2016) (dismissing the claim where the plaintiff reported that another officer in charge of scheduling committed acts of misconduct, including misreporting time worked to accrue improper overtime pay). Plaintiff allegedly approached the officers in reaction to the text message she received from Meyers. He was no longer her supervisor and she wanted to discuss "who she should be taking orders from." This was manifestly not a matter of public concern.

Plaintiff further alleges that "[d]uring [her] **time working for Meyers** she also became aware of his use of SCPD employees to run personal errands for him on County time." Am. Compl. ¶ 42 (emphasis added). While Meyers denies this baseless allegation, this "discovery" allegedly occurred while Plaintiff was operating as an SCPD employee. *See* Am. Compl. ¶¶ 40-41 (discussing Plaintiff's work activities for Meyers "during the SCPD workday"). Plaintiff would not have "discovered" this information but for her position as SCPD Director of Communications and during the SCPD workday. Therefore, since Plaintiff discovered the purported misconduct "in the course of discharging her duties," her speech is not protected. *See Cullen v. City of New York*, 2008 U.S. Dist. LEXIS 101699 (E.D.N.Y. July 8, 2008) (this Court found that Plaintiff was obligated to report misconduct because of his position and therefore the speech was not protected); *Miles v. Branch College*, 2008 U.S. Dist. LEXIS 5534, at *20 (E.D.N.Y. Jan. 24, 2008).

Plaintiff also fails to allege a single fact illustrating that Meyers exhibited any retaliatory intent in connection with her discharge, other than her conclusory allegations. Significantly, she sets forth no plausible facts indicating that Meyers ever learned about her purported report. To the extent Plaintiff attempts to rely on temporal proximity to supply a causal connection between her alleged report about Meyers' conduct and her own termination, that allegation by itself is insufficient to show retaliatory animus. *Diaz v. Local 228 of the RWDSU, UFCW*, 2015 U.S. Dist. LEXIS 86777 at *53-53 (E.D.N.Y. May 15, 2015) ("viewing the facts in the light most favorable to Plaintiff, the Court is unable to discern any probative evidence, beyond mere temporal proximity, sufficient to raise an issue of fact as to retaliatory intent, thereby precluding Plaintiff from establishing a prima facie claim.").[4]

---

[4] Even if the Court finds that Meyers was involved in the decision to terminate Plaintiff (which he was not) or that Meyers learned of the report (which he did not), Meyers is entitled to qualified immunity, as none of Plaintiff's allegations support a plausible claim that Meyers was involved in any action that resulted in the deprivation of Plaintiff's constitutional rights. Further, it is objectively reasonable for Meyers to conclude he did not violate the law in any way, as he was not Plaintiff's supervisor at the time and was not aware of Plaintiff's purported internal report. The Supreme Court has analyzed whether an individual is entitled to qualified immunity as follows:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

> Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial. Indeed we have made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against governmental officials will be resolved prior to discovery. Accordingly, we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

*Pearson v. Callahan*, 555 U.S. 223, 231-32, 245 (2009) (internal quotations and citations omitted) ("Because the unlawfulness of the officers' conduct in this case was not clearly established, petitioners are entitled to qualified immunity."). Where, as here, Plaintiff does not plausibly allege a violation of a constitutional right, nor does she allege any facts at all to suggest any unreasonable conduct, Meyers is entitled to qualified immunity. *See id.*

Similarly, Plaintiff cannot sustain her claims by simply adding conclusory allegations to her Amended Complaint without any sufficient factual basis. *See* Am. Compl. ¶¶ 60-65. While plaintiffs are entitled to assert allegations "upon information and belief," such allegations cannot be used to supply the missing elements of a claim without any connection or factual basis. *See Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("Because the *Twombly* complaint's factual allegations described only actions that were parallel, and were doctrinally consistent with lawful conduct, the conclusory allegation on information and belief that the observed conduct was the product of an unlawful agreement was insufficient to make the claim plausible." (internal quotations and citations omitted)); *see also Kajoshaj v. N.Y. City Dep't of Educ.*, 543 Fed. Appx. 11, 16 (2d Cir. 2013) ("While [p]leading on the basis of information and belief is generally appropriate where information is particularly within [defendants'] knowledge and control, even such *pleadings must be grounded in a good-faith basis in fact for believing* that such comparators exist." (internal quotations and citations omitted) (emphasis added)). In *Kajoshaj*, the plaintiff failed to plead any good faith basis in fact for believing such allegations, leading the Second Circuit to determine that plaintiff's equal protection claim was properly dismissed by the district court. *Kajoshaj*, 543 Fed. Appx. at 16. Likewise, Plaintiff's Amended Complaint contains the same defects evaluated by the Court in *Kajoshaj*—it fails to plead a sufficient factual basis to "to render a claim plausible," and therefore cannot survive this motion.

## III.   PLAINTIFF FAILS TO STATE A CONSPIRACY CLAIM UNDER SECTION 1985

### A.   Plaintiff's Amended Complaint Lacks a Plausible Overt Act

In order to state a claim for conspiracy under Section 1985(3), a plaintiff must plausibly allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of laws; (3) an ***overt act*** in furtherance of the conspiracy; and (4) deprivation

of a right or privilege of a United States citizen. *Guity v. Uniondale Union Free Sch. Dist.*, 2017 U.S. Dist. LEXIS 27542, at *81 (E.D.N.Y. Feb. 23, 2019). To survive a motion to dismiss, Plaintiff must identify some predicate constitutional right that the purported conspiracy violates. As set forth above, Plaintiff fails to plausibly do so because she fails to allege a violation of the First or Fourteenth Amendments by Meyers.

Additionally, the pleading must contain ***specific*** factual allegations. A complaint consisting of nothing more than conclusory or vague allegations (such as this one) is insufficient to survive a motion to dismiss. The conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Alston v. Sebelius*, 2014 U.S. Dist. LEXIS 123613, at *18 (E.D.N.Y. July 31, 2014). The Amended Complaint sets forth only conclusory allegations that there was a "conspiracy" among the Defendants. Plaintiff states that she was terminated several weeks after Meyers purportedly "threatened" Plaintiff via text message. However, she references ***no overt act by Meyers***. Instead, Plaintiff merely asserts vague allegations "upon information and belief," several of which do not even reference Meyers. *See* Am. Comp. ¶¶ 102-13. While Plaintiff asserts that Defendant Cameron terminated Plaintiff and that Defendant Cohen approved the decision, *id.* ¶¶ 104, 107-11, she fails to point to any ***plausible overt act*** by Meyers in furtherance of any alleged conspiracy on any basis other than information and belief. Indeed, she has acknowledged that he lacked actual authority over the termination decision because he was not employed by SCPD at the time.

Plaintiff merely conclusorily states that her discharge occurred "weeks after Meyers threatened plaintiff with disciplinary action via text message." *Id.* ¶ 112. Such an allegation is insufficient to sustain her Section 1985 claim. *See, e.g., Burns v. City of Utica*, 590 Fed. Appx.

44, 50-51 (2d Cir. 2014) (affirming dismissal because plaintiff did not allege facts that plausibly suggest defendants engaged in conspiracy to violate her right to equal protection of laws).

**B.    Plaintiff's Section 1985 Claim Is Precluded by the Intra-Corporate Conspiracy Doctrine.**

Plaintiff's claim also fails under the well-established intra-corporate conspiracy doctrine, which precludes a finding of a conspiracy between Meyers and anyone within the same municipal entity. *See Guity*, 2017 U.S. Dist. LEXIS 27542, at *82-86 ("In any event, even if Plaintiff had pleaded sufficient facts to show a conspiracy existed and was entered into in order to discriminate against her . . . her claim would nevertheless fail based upon the intra-corporate conspiracy doctrine.").

Plaintiff alleges that all Defendants were responsible for her unlawful termination, implying that they acted as one municipal entity. Like the *Guity* case, Plaintiff's allegations here are "devoid of any substantive factual allegations stating that any of these individuals or subordinate entities . . . were acting as separate and distinct entities in carrying out a purported conspiracy to discriminate against Plaintiff." *Id.* at *87; *see also Alston v. Sebelius*, 2014 U.S. Dist. LEXIS 123613, at *42-43 (E.D.N.Y. July 31, 2014) ("Aside from alleging in a vague and disjointed fashion that defendants conspired with unnamed private actors in violation of 42 U.S.C. §§ 1983, 1985, and 1988 in failing to supervise and enforce federal mandates . . . , Alston fails to provide any substantive allegations that would support a conspiracy claim."). Plaintiff's Amended Complaint revolves around a single act, the termination of her employment by her employer. She cannot convert a simple unlawful termination claim into a conspiracy claim merely because more than one municipal official played a role in her discharge. Absent plausible facts indicating an actual conspiracy to deprive her of her constitutional rights, this claim must be dismissed.

## IV.   PLAINTIFF FAILS TO STATE A STATE LAW WHISTLEBLOWER CLAIM.

### A.   Plaintiff Waived Her Civil Service Law Section 75-b Claims by Asserting Claims Under Labor Law Section 740.

Plaintiff alleges that Meyers' purported involvement in her termination violated New York Civil Service Law Section 75-b(2)(a), which provides that a public employer shall not dismiss a public employee because the employee disclosed to a governmental body information: (1) regarding a violation of law, rule or regulation which creates and presents a substantial and specific danger to public health or safety; or (2) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. This claim is barred by New York Labor Law Section 740(7), which provides that "the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other . . . law, rule, or regulation." The Section 740 waiver provision is triggered at the filing of a claim and cannot be avoided even if the claim suffers a fatal flaw, nor can it be undone by amending one's complaint to omit the claim. *See Harisch v. Goldberg*, 2016 U.S. Dist. LEXIS 39494, at *33-34 (S.D.N.Y. Mar. 25, 2016). Accordingly, all claims made under Section 75-b are waived because Plaintiff invoked Section 740. *Id.*

Labor Law Section 740 and Civil Service Law Section 75-b are textually nearly identical because they are aimed at the same wrong. Other than the nature of the employer (*i.e.*, public versus private), the causes of action are the same, and as such all claims made under Section 75-b are waived when Labor Law Section 740 is invoked. *Harisch*, 2016 U.S. Dist. LEXIS 39494 at *37; *see also Frank v. State of New York, Off. Of Mental Retardation & Dev. Disabilities*, 86 A.D.3d 183, 185-86 (3d Dep't 2011). A Section 740 waiver of all other rights and remedies available under any other law is compulsory and irrevocable. Thus, even if Plaintiff now elects to withdraw her Section 740 claim, the waiver is not cancelled and Plaintiff is foreclosed from

asserting any other claims relating to her discipline and termination by Defendants. *See, e.g.,*
*Mcgrane v. The Reader's Digest Ass'n, Inc.*, 1993 U.S. Dist. LEXIS 17790, at *3-4 (S.D.N.Y.
1993) ("the election required by the Labor Law provision is not revocable under state law"), *aff'd*,
60 F.3d 811 (2d Cir. 1995); *Gaughan v. Nelson*, 1997 U.S. Dist. LEXIS 1942, at *5-6 (S.D.N.Y.
Feb. 26, 1997) (plaintiff cannot "erase" the waiver by filing an amended complaint omitting the
Section 740 claim). Accordingly, because the Amended Complaint asserts a claim under Labor
Law Section 740, the cause of action under Section 75-b (and the *prima facie* tort claim) is waived.

**B.**     **Section 75-b Does Not Apply to Individuals such as Meyers.**

Plaintiff's Section 75-b claim against Meyers must fail because Plaintiff cannot
maintain this type of claim against an individual defendant. N.Y. Civil Service Law § 75-b. "[O]n
its face, section 75-b only provides a cause of action against government entities, not individuals,
because it does not include individuals in its definition of public employer." *Fry v. McCall*, 945 F.
Supp. 655, 666 (S.D.N.Y. 1996) ("The only courts that have considered this question have found
that individual employees may not be sued under section 75-b. . . . Such claims against officials
in their individual capacities cannot be maintained under section 75-b and therefore are
dismissed."); *see also Kirwin v. New York State Office of Mental Health*, 665 F. Supp. 1034, 1039
(E.D.N.Y. 1987) ("Public employees in their individual capacities do not belong to the class of
defendant defined by the statute. A public employee, regardless of rank, is not the employer of a
fellow employee. Therefore, a public employee in his individual capacity may not be sued under
§ 75-b."); *Frank*, 86 A.D.3d 183, 188 (3d Dep't 2011) ("Consistent with the statutory language,
we have previously held that the statute does not apply separately to individual public employees
where the pertinent governmental entity is also sued." (citations omitted)).

**C.** **Plaintiff Fails to Sufficiently Plead a Substantial and Specific Danger to Public Health and Safety.**

Plaintiff's Section 740 claim must also be dismissed because it does not apply to public officials such as Meyers. *Dibiase v. Barber*, 2008 U.S. Dist. LEXIS 75664 *15 (E.D.N.Y. Sept. 30, 2008). Though the Court should look no further into Plaintiff's Section 740 claim, Plaintiff's claim would nonetheless fail because she does not sufficiently allege a violation of Labor Law Section 740 (or, as detailed above, under Civil Service Law Section 75-b). It is essential to the viability of a Section 740 claim that Plaintiff specify in her Amended Complaint the law, rule or regulation that actually has been violated by Defendant's behavior and describe how Defendant's activities endangered the health or safety of the public. If Plaintiff fails to satisfy one or both of these prerequisites, the Court must dismiss the cause of action. *See, e.g., Nadkarni v. North Shore-Long Island Jewish Health Sys.*, 21 A.D. 3d 354 (2d Dep't 2015) (affirming motion to dismiss and denying opportunity to replead because of speculative allegations).

Plaintiff fails to plead facts sufficient to establish either requirement. First, to establish a Section 740 claim, Plaintiff must show that there was an actual violation of a law, rule or regulation. *See e.g., Dougherty v. Memorial Sloan-Kettering Cancer Center*, 2002 U.S. Dist. LEXIS 13216 at *12-14 (S.D.N.Y. 2002). An employee's good faith, reasonable belief that a violation occurred is insufficient to satisfy this legal requirement. *Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d 465, 475 (E.D.N.Y. 2006); *see Kahn v. State Univ. of New York Heath Science Ctr. at Brooklyn*, 288 A.D.2d 350 (2d Dep't 2001) (Section 740 claims dismissed because plaintiff could not prove an actual violation of law, just a reasonable belief that a law had been violated); *Lambert v. General Elec. Co.*, 244 A.D.2d 841 (3d Dept. 1997).

Even assuming Plaintiff could demonstrate a violation of law, rule or regulation (which she cannot), Plaintiff's purported disclosures to senior level SCPD regarding Meyers'

purported timekeeping practices are not concerns that endanger the health or safety of the public. Section 740 is applicable only where a plaintiff establishes that she suffered retaliation because of a reported violation of law that "presents a substantial and specific danger to the public health and safety." *Easterson v. Long Island Jewish Med. Ctr.*, 156 A.D.2d 636 (2d Dept. 1989); *Leibowitz v. Bank Leumi Trust Co. of New York*, 152 A.D.2d 169 (2d Dept. 1989) (affirming motion to dismiss Section 740 claim because employee who alleged her employer engaged in fraud could not prove the violation presented a substantial and specific danger to public health or safety). Simply alleging in conclusory terms that a defendant's activities pose a danger to members of the public, as Plaintiff does in her Amended Compliant, is insufficient. Moreover, "complaints about very serious misconduct, even if that conduct amounts to regulatory or criminal violations, will not trigger statutory protection if the misconduct does not itself pose a direct threat to public health or safety." *Tucker v. New York City*, 2007 U.S. Dist. LEXIS 77879, at *9 (S.D.N.Y. Oct. 15, 2007).

Plaintiff did not complain about any violations of law, nor did her alleged report relate to a substantial and specific danger to the public at large. Plaintiff's speculative opinion that Meyers' alleged falsification of time records and use of SCPD employees for personal errands somehow threatens public health or safety cannot support a cause of action to recover damages under this section. *See Cotrone v. Consol Edison Co. of N.Y., Inc.*, 50 A.D.3d 354 (1st Dep't 2008) (finding plaintiff's claim that conduct created a substantial and specific danger to the public health and safety was "based on mere speculation," particularly where "these incidents led to no adverse consequences"). Nowhere in her Amended Complaint has Plaintiff identified any type of actual and substantial danger that posed any type of threat at all, let alone to the public at large.

### D.    Section 740 Does Not Permit the Relief Plaintiff Seeks.

Section 740 provides for only limited statutory remedies. *See* N.Y. Labor Law § 740(5). Plaintiff cannot recover compensatory damages under Section 740. The sole relief available is equitable in nature, *i.e.*, injunctive relief, reinstatement and backpay. *Id.*; *see also Kraus v. New Rochelle Hosp Med. Ctr.*, 216 A.D.2d 360 (2d Dep't 1995); *Scaduto v. Restaurant Associates Industries, Inc.*, 180 A.D.2d 458, 579 (1st Dep't 1992).

Similarly, it is well-settled that Section 740 restricts the ability to grant relief under the statute to the Courts rather than a jury. *See* N.Y. Labor Law § 740(5) ("In any action brought pursuant to . . . this section, the ***court*** may order relief as follows. . . ." (emphasis added)); *Scaduto*, 180 A.D.2d at 579 (1st Dep't 1992) (granting the motion to strike plaintiff's jury demand because the whistleblower statute specifically required a non-jury trial before the Court). Accordingly, the Court should strike Plaintiff's claim for compensatory damages and her jury demand as to this claim (and any other claim seeking equitable relief) if it is not otherwise dismissed.

## V.    PLAINTIFF FAILS TO STATE A CLAIM FOR *PRIMA FACIE* TORT.

### A.    Plaintiff Cannot Assert a Claim for *Prima Facie* Tort to Circumvent Her Lack of Tort Claim for Wrongful Discharge.

Plaintiff does not state a claim for *prima facie* tort. As a preliminary matter, Plaintiff did not mention such a cause of action during the Pre-Motion Conference with the Court and she was not granted leave to bring this claim. Had she properly sought leave, the parties might have avoided this unnecessary motion practice over this entirely baseless claim.

As New York courts and Courts in this Circuit have long recognized:

> A *prima facie* tort requires the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful. There must also be an allegation of special damages. Nonetheless, it is well established that, in New York, there is no tort claim for wrongful discharge . . .

> of an at-will employee. An at-will employee ***cannot use a prima
> facie tort claim as a bootstrap to circumvent the lack of a tort claim
> for wrongful discharge or deficient pleadings merely by alleging
> that the termination was motivated solely by a desire to harm the
> plaintiff.***

*Evans v. Excellus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 109849, at \*17-18 (N.D.N.Y. Aug. 6,

2012) (internal quotations and citations omitted) (emphasis added).

Plaintiff has not alleged that she was "employed pursuant to an enforceable

employment contract, and the facts do not suggest Plaintiff's employment was for a definite term."

*Id.* at \*18-19. As such, like the *Evans* court, this Court must presume from Plaintiff's allegations

that she was an at-will employee of SCPD. Accordingly, Plaintiff has no claim for *prima facie* tort.

**B.**      **Plaintiff Fails to Plead Facts Sufficient to Conclude that Meyers' Sole Motive
Was "Disinterested Malevolence."**

To sustain a claim for *prima facie* tort, a plaintiff must plead that a defendant's

"sole motive" for the actions challenged was "disinterested malevolence." *See Marcella v. ARP*

*Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("[T]he sole motivation for the damaging acts must

have been a malicious intention to injure the plaintiff. When there are other motives, such as [but

not limited to] profit, self-interest, or business advantage there is no recovery under the doctrine

of prima facie tort.").

In Plaintiff's Sixth Cause of Action in her Amended Complaint, she conclusorily

alleges that "defendants intentionally inflicted harm on plaintiff when they conspired to force her

resignation," and that "there was no excuse or justification for their actions, and the defendants'

sole motivation to inflict this harm on plaintiff was malevolence and malice," because "the means

by which they accomplished" Plaintiff's termination was not lawful. Am. Compl. ¶¶ 130, 132-33.

Aside from the fact that an alleged absence of an "excuse or justification" is not the

same as "disinterested malevolence," this claim must fail on the alleged facts. Though Meyers

denies the allegations, the Amended Complaint is replete with allegations that suggest a "self-interest" motivated his actions. *See, e.g.*, ¶¶ 62-63, 73, 106, 116, 133-23.

Taking these allegations as true solely for purposes of this motion, they undermine any showing of "disinterested malevolence." Since Plaintiff's Amended Complaint and her original Complaint proffer reasons other than disinterested malevolence, on its face, Plaintiff's claim for *prima facie* tort is insufficient and cannot be sustained.[5] *See Margrabe v. Sexter & Warmflash, P.C.*, 353 Fed. Appx. 547, 550 (2d Cir. 2009) (*prima facie* tort claim must be dismissed because the appellees were not motivated solely by "disinterested malevolence").

## VI.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS ANY AMENDMENT WOULD BE FUTILE.

Plaintiff's claims should be dismissed with prejudice as allowing Plaintiff to amend her Complaint yet again would be futile. Plaintiff filed a Notice of Claim and testified at a hearing pursuant to General Municipal Law Section 50-h. Plaintiff then filed her original Complaint, asserting essentially the same allegations that appear in the Amended Complaint. Confronted with the inadequacy of her previous pleading at the Pre-Motion Conference before this Court (Dkt. 34), Plaintiff opted to amend her complaint. Yet, Plaintiff failed to rectify the deficiencies sufficiently to sustain her claims.

Allowing Plaintiff to restyle or replead her allegations against Meyers for a *fourth* time would be futile as Plaintiff cannot allege with the required specificity that Meyers is liable for any of the alleged violations of law. "Obviously, where a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend." *Cortec*, 949 F.2d at 50 (citations

---

[5] Plaintiff also fails to plead any special damages against Meyers. Plaintiff simply pleads that "[t]his resulted in special damages in the amount not less than a loss of $119,000 in annual salary and benefits." Am. Compl. ¶ 131. This is insufficient, as "[a]ny pleading of special damages must be sufficiently specific to identify actual losses and be related causally to the alleged tortious acts." *Evans*, 2012 U.S. Dist. LEXIS 109849, at *24-25 ("This is not only conjectural but patently fails to relate Plaintiff's sought damages to the acts of each Individual Defendant.").

omitted). Accordingly, Meyers respectfully submits that dismissal with prejudice is warranted to deter any further abuses of judicial process. *Jackson v. Wells Fargo Home Mortg.*, 2018 U.S. Dist. LEXIS 136643, *38 (E.D.N.Y. Aug. 10, 2018) ("[L]eave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless." (citations omitted)).

## CONCLUSION

Meyers denies all allegations of wrongful conduct set forth in the Amended Complaint. Nonetheless, for all the foregoing reasons, Meyers respectfully requests that this Court grant this Motion to Dismiss Plaintiff's Amended Complaint, with prejudice, without leave to replead, as any such attempt would be futile.

Dated: Melville, New York
August 12, 2019

Respectfully submitted,

JACKSON LEWIS P.C.
*Attorneys for Defendant Justin S. Meyers*
58 S. Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

By: _____
MARC S. WENGER, ESQ.
FATIMA M. GUILLEN-WALSH, ESQ.

4832-9369-1293, v. 2