UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
DONNA SCHULTZ,                                        19 cv 00925 (JMA)(ARL)

                    Plaintiff,


          -against-


COUNTY OF SUFFOLK, JUSTIN S. MEYERS
IN HIS OFFICIAL AND PERSONAL
CAPACITY, DENNIS COHEN IN HIS
OFFICIAL AND PERSONAL CAPACITY, AND
STUART CAMERON IN HIS OFFICIAL AND
PERSONAL CAPACITY,

                    Defendant(s).
-------------------------------------------------------------------


PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT

BRENDAN CHAO
ATTORNEY AND COUNSELLOR AT LAW

Attorney for Plaintiff
50 Merrick Road, Suite 200
Rockville Centre, N.Y. 11570
(516) 466-2033

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................III

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ..................................................................................................1

ARGUMENT .......................................................................................................................4

    The Amended Complaint states plausible claims for retaliation and discrimination ...............4

    Point I ...............................................................................................................................5
        Plaintiff plausibly alleges a First Amendment retaliation claim ............................................5

    Point II ..............................................................................................................................19
        Plaintiff plausibly alleges a gender discrimination claim .................................................19

    Point III ............................................................................................................................22
        Plaintiff pleads a plausible claim against the County under CSL § 75-b ..........................22

    Point IV ............................................................................................................................24
        Plaintiff pleads a claim for *prima facie* tort ...................................................................24

Conclusion ...........................................................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ............... 5

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................... 5

*Austin v. Ford Models, Inc.*, 149 F.3d 148 (2d Cir. 1998) ...................................... 11

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) 15

*Barboza v. D'Agata*, 676 F. App'x 9, 12 n. 4 (2d Cir. 2017) ................................. 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 5

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ................................................. 19

*Brown v. Halpin*, 885 F.3d 111, 116 (2d Cir. 2018) ............................................. 13

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983) .......... 25

*Burns v. Cook*, 458 F. Supp. 2d 29, 44-45 (N.D.N.Y. 2006) ................................. 24

*Castro v. City of New York,* 141 A.D.3d 456 (1st Dept. 2016) .............................. 24

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .............................. 23

*City of San Diego v. Roe*, 543 U.S. 77 (2004) ......................................................... 8

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ..................................................... 16

*Connick v. Myers*, 461 U.S. 138 (1983) ................................................................. 7

*Cotarelo v. Vill. of Sleepy Hollow Police Dept.*, 460 F.3d 247 (2d Cir. 2006) ........ 9

*Dotson v. City of Syracuse*, 763 Fed. Appx. 39 (2d Cir. 2019) .............................. 21

*Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) ............................................... 17

*Garcetti v. Ceballos*, 547 U.S. 410 (2d Cir. 2006) .......................................... 7

*Graham v. Long Island R.R.,* 230 F.3d 34 (2d Cir. 2000) ............................... 20

*Hoyt v. Andreucci*, 433 F.3d 320 (2d Cir. 2006) ............................................. 7

*Huth v. Haslun*, 598 F.3d 70 (2d Cir. 2008) ................................................... 8

*Irrera v. Humphrys*, 859 F.3d 196 (2d Cir. 2017) ......................................... 6

*Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011) ............................................. 7

*Lane v. Franks*, 573 U.S. 228 (2014) ........................................................... 12

*Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001) .............................................. 19

*Mandell v. County of Suffolk,* 316 F.3d 368 (2d Cir. 2003) .......................... 20

*Marcella v. ARP Films, Inc.,* 778 F.2d 112 (2d Cir. 1985) .......................... 25

*Matthews v. City of New York*, 779 F.3d 167 (2d Cir. 2015) ....................... 13

*Montero v. City of Yonkers, New York*, 890 F.3d 386 (2d Cir. 2018) .......... 6

*Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ..................................... 15

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) ............................................... 17

*Nagle v. Marron*, 663 F.3d 100 (2d Cir. 2011) ............................................. 10

*Okin v. Village of Cornwall-on-Hudson Police Dept.*, 577 F.3d 415, 433 n. 11 (2d

    Cir. 2009) ..................................................................................................... 17

*Ricciuti v. Gyzenis*, 834 F.3d 162 (2d Cir. 2016) .......................................... 6

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) ........................... 9

*Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010). ... 5

*Skehan v. Vill. of Mamaroneck*, 465 F.3d 96 (2d Cir. 2006) ..................................... 7

*Sousa v. Roque*, 578 F.3d 164 (2d Cir. 2009) ........................................................ 10

*Tolan v. Cotton*, 572 U.S. 650 (2014) ................................................................... 17

*Twin Lab., Inc. v. Weider Health & Fitness,* 900 F.2d 566 (2d Cir. 1990) ............ 25

*U.S. v. McKeon*, 738 F.3d 26 (2d Cir. 1984)........................................................... 12

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)................. 20

*Zellner v. Summerlin,* 494 F.3d 344 (2d Cir. 2007) ................................................ 18

# PRELIMINARY STATEMENT

Plaintiff, Donna J. Schultz, files this Memorandum of Law in opposition to Defendants' Motions to Dismiss the Amended Complaint. Defendants repeatedly view the allegations in the light most favorable to their position. As further demonstrated below, Plaintiff sufficiently alleges that Defendants terminated her employment in retaliation for her protected speech, and that her termination also constituted gender discrimination.

Plaintiff is abandoning the following claims: Conspiracy in violation of 42 U.S.C. § 1985(3), the *Monell* claim against the County of Suffolk, and the private employee whistleblower claim under Labor Law § 740. Even so, Plaintiff still asserts otherwise viable claims against each Defendant.

# STATEMENT OF FACTS

On June 20, 2016, after working for a leading communications firm for five years, Plaintiff commenced employment with the Suffolk County Police Department ("SCPD") as Director of Communications. (Amended Compl. ¶¶ 19-20, 25). During the hiring process with SCPD, Plaintiff was open about her arrest record, having told Defendant Justin S. Meyers, Assistant Deputy Police Commissioner, that she had pleaded guilty to a misdemeanor eight years earlier for improperly accepting unemployment insurance benefits. *Id*. at ¶ 22. Despite Plaintiff's misdemeanor conviction, Timothy Sini, the Suffolk County Police Commissioner, offered her the position. *Id*. at ¶ 24. In this position, Plaintiff "managed all staff related to public information, social media, internal communications, and strategic communications" for the SCPD. *Id*. at ¶ 26.

A few weeks after Plaintiff began working for the Police Department, her supervisors continued to inquire about her misdemeanor conviction. Plaintiff explained why she had pleaded guilty to an offense that she did not commit: the arresting detectives had threatened Plaintiff with jail and the loss of custody of her children. *Id.* at ¶¶ 30-34. Ultimately, Plaintiff's supervisors were satisfied that Plaintiff's misdemeanor conviction was not a problem. Sini told Plaintiff, "There is no issue. It's almost ten years old, and no one is going to care anyway. Just keep doing the great work you're doing." *Id.* at ¶ 35. Sini also told Plaintiff "that he was happy to have her on board." *Id.* at ¶ 36.

Meanwhile, Sini was running for Suffolk County District Attorney. During the campaign, Plaintiff learned that Meyers was campaigning for Sini during the workday when he should have been handling County business. *Id.* at ¶¶ 38-39. On two separate occasions, Plaintiff saw that Meyers and other County officials were working on Sini's campaign during working hours at Meyers' house. *Id.* at ¶¶ 40-41. Plaintiff also discovered that Meyers was using County employees to run personal errands for him on County time. *Id.* at ¶ 42.

In November 2017, Sini was elected Suffolk County District Attorney. *Id.* at ¶ 37. In January 2018, Meyers resigned from the Police Department to work as Sini's Chief of Staff. *Id.* at ¶ 43. However, in January and February 2018, Meyers continued to direct Police Department employees, including Plaintiff, to perform work for him. *Id.* at ¶¶ 44-46. On February 22, 2018, Meyers directed Plaintiff to publicize an arrest warrant on the Police Department's social media platform. *Id.* at ¶¶ 47-48. This directive, however, ignored Police Department tradition to solely honor a fallen police officer on social media that day. *Id.* at ¶ 49. Meyers threatened Plaintiff in connection with this directive, and, a week later, Plaintiff met with two senior-level County police officers to discuss Meyers' conduct. *Id.* at ¶¶ 51-52.

During this meeting, Plaintiff "reported that Meyers was campaigning for the former SCPD Commissioner, Sini, on SCPD time, using SCPD employees to run errands for him, and she also reported other matters of fraud related to Meyers's time keeping records while employed by the SCPD. *Id.* at ¶ 54. This whistleblowing "had nothing to do with [Plaintiff's] role as Director of Communications for the SCPD, and was not ordinarily within the scope of her job duties." *Id.* at ¶ 56.

Defendant Stuart Cameron, Acting Commissioner of the Police Department, learned that Plaintiff had exposed Meyers' inappropriate campaigning and fraudulent time-keeping. *Id.* at ¶ 59. Cameron told Meyers and Defendant Dennis Cohen, Deputy Chief County Executive, what Plaintiff had said about Meyers. *Id.* at ¶ 60. At the time, while Meyers was now employed by the District Attorney's office, Meyers continued to meet with Cohen at the County Executive's offices, even after Plaintiff had spoken about his misconduct. *Id.* at ¶ 61. Meyers, Cohen and Cameron next decided to terminate Plaintiff's employment "under the pretext that she had failed a background check." *Id.* at ¶¶ 62-65. On March 15, 2018, Cohen told Plaintiff to resign her position "because she had failed a background check" in connection with her misdemeanor conviction. *Id.* at ¶ 66. This was the same conviction that Cohen "had previously assured her posed no obstacle to employment with the County and the SCPD." *Id.* at ¶ 66. That day, after Plaintiff refused to resign, Cohen, Meyers and Cameron decided that Cameron would terminate her employment, which he did by letter that afternoon. *Id.* at ¶¶ 67-69.

While Defendants claimed to fire Plaintiff because of her misdemeanor conviction, male police officers who were also convicted of misdemeanor crimes were not fired. *Id.* at ¶ 76. Bruce Blanco, pleaded guilty to attempted larceny, a misdemeanor *Id.* at ¶ 77. Philip Branigan, was convicted of falsely reporting an incident, a misdemeanor *Id.* at ¶ 78. Robert Dito pleaded

guilty to obstruction of law enforcement, a misdemeanor *Id.* at ¶ 79. Other officers committed

crimes but were not even charged. John E. Fenelius and Scott P. Guido, were not charged with a

crime after they falsely reported that the stolen property they had recovered had been returned to

its owner. *Id.* at ¶ 81. John Jeheber was not charged with a crime after he intentionally exposed

himself in a local thrift store. Jonelle Jones "used his position as a police officer to get into a

strip club and he brought an underage girl with him" before fighting with the bouncers. *Id.* at ¶

83. Defendant Meyers himself physically assaulted a female Newsday reporter at the

courthouse, "but Sini chose not to pursue charges against" him. *Id.* at ¶ 75.


## ARGUMENT

### The Amended Complaint states plausible claims for retaliation and discrimination

"'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.

Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense.' . . .

'While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations. When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Ruston*

*v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the plausibility test "asks for more than a

sheer possibility that a defendant has acted unlawfully" (*id.*), it "does not impose a probability

requirement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

4

The district court should not resolve competing factual inferences on a motion to dismiss. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. '[F]act-specific question[s] cannot be resolved on the pleadings.' A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible"); *Irrera v. Humphrys*, 859 F.3d 196, 198-99 (2d Cir. 2017) (applying "common experience" and drawing reasonable inferences in holding that plaintiff stated a plausible claim where his instructor's threat to deny him a reference led to plaintiff's inability to obtain a job interview).

## Point I

### Plaintiff plausibly alleges a First Amendment retaliation claim

"Where, as here, a plaintiff claims that he or she was retaliated against in violation of the First Amendment, he or she must plausibly allege that '(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero v. City of Yonkers, New York*, 890 F.3d 386, 394 (2d Cir. 2018).

### A. Plaintiff plausibly alleges that she spoke out as a citizen on a matter of public concern.

"[T]he First Amendment affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer if the employee's speech in question is 'on matters of public interest.'" *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir.

5

2016). However, "the Supreme Court has identified three circumstances in which public employee speech is not protected from retaliation: First, speech about personal matters, as opposed to 'matters of public concern,' is not protected from retaliation. Second, even speech on matters of public concern is not protected from retaliation unless the employee's First Amendment interests outweigh government employers' legitimate interests in efficient administration. Third, speech made by employees 'pursuant to . . . official duties' rather than 'as a private citizen' is not protected from retaliation." *Id.* at 168.

1. **Plaintiff spoke on a matter of public concern in reporting Meyers' misuse of government resources for Sini's political campaign.**

"First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly." *Connick v. Myers*, 461 U.S. 138, 146 (1983). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48.

"Exposure of official misconduct, especially within the police department, is generally of great consequence to the public." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (citing *inter alia Garcetti v. Ceballos*, 547 U.S. 410, 425 (2d Cir. 2006) ("governmental ... misconduct is a matter of considerable significance")); *see also Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) ("Plaintiffs' speech plainly concerned issues of public concern: misfeasance within the police department and allegations of an ongoing cover-up and an attempt to silence those who spoke out against it"); *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) ("We view

6

concerns raised to the government about the lawfulness of public officials' actions as implicating

a matter of public interest").

In *Connick*, the Court held the plaintiff addressed a matter of public concern in

circulating a questionnaire that asked employees of the District Attorney's office whether they

were pressured to work in political campaigns. 461 U.S. at 149. The Court reasoned:

> We have recently noted that official pressure upon employees to work for political
> candidates not of the worker's own choice constitutes a coercion of belief in
> violation of fundamental constitutional rights. In addition, there is a demonstrated
> interest in this country that government service should depend upon meritorious
> performance rather than political service. Given this history, we believe it
> apparent that the issue of whether assistant district attorneys are pressured to work
> in political campaigns is a matter of interest to the community upon which it is
> essential that public employees be able to speak out freely without fear of
> retaliatory dismissal.

*Id.* (citations omitted).

The reasoning in *Connick* demonstrates that Plaintiff spoke on a matter of public concern

in reporting that Meyers was campaigning for Sini on police department time and using

department employees to run errands for him. (Amended Compl. ¶ 54). The misuse of

governmental resources to support a political campaign would certainly concern the community.

*See City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) ("public concern is something that is a

subject of legitimate news interest"). As Defendants do not argue that it was legal or ethical for

Meyers to utilize governmental resources in campaigning for Sini, the Amended Complaint

plausibly asserts that Plaintiff spoke on a matter of public concern. Similarly, Plaintiff's other

whistleblowing, exposing "fraud related to Meyers's time keeping records while employed by

the SCPD" (Amended Compl. ¶ 54), also addressed a matter of public importance. *See Skehan*,

465 F.3d at 106 ("misfeasance within the police department" is a matter of public concern).

Cameron argues that Plaintiff did not speak on a matter of public concern because her

speech was "personal in nature and generally related to her own situation." (Cameron Br. at 11).

/

In support of this argument, Cameron cites *Huth v. Haslun*, 598 F.3d 70 (2d Cir. 2008), which held the plaintiff did not engage in protected speech because she did not want to debate issues of discrimination, her lawsuit did not seek relief against systemic misconduct and was not "part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention." *Id.* at 74-75. But this portion of the *Huth* ruling concerns whether the plaintiff's lawsuit constituted a matter of public concern; that analysis draws from a separate line of cases determining whether an initial federal lawsuit constitutes protected speech. In *Huth*, the lawsuit was not protected because her "original complaint . . . alleged only that defendants retaliated against her for specific statements she made to her supervisor and for the union activities of Archer. Much like other public employee speech that we have held not to be protected from retaliation by the First Amendment, Huth's lawsuit was "personal in nature and generally related to her own situation." *Id.* at 74 (contrasting Huth's suit with *Cotarelo v. Vill. of Sleepy Hollow Police Dept.*, 460 F.3d 247, 252 (2d Cir. 2006), which held the initial lawsuit constituted protected speech because it concerned "discrimination problems generally and were not limited to instances affecting only [plaintiff]"). For this reason, Cameron's reliance on *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008), is also misplaced. In that case, the plaintiff's lawsuit was not protected because the relief sought was limited to matters personal to him, *i.e.*, reinstatement and compensatory damages. Cohen makes the same argument. (Cohen Br. at 12). Unlike *Ruotolo*, Schultz is not claiming that a prior lawsuit constituted protected speech. Plaintiff is not aware of any cases holding the First Amendment does not protect workplace whistleblowing on matters of public concern solely because the complaint arising from the adverse action seeks damages personal to the plaintiff and not system-wide injunctive relief. Indeed, most -- if not all -- lawsuits premised on retaliation for protected speech seek damages and other relief that is unique to the plaintiff.

8

Cameron also argues that Plaintiff did not engage in protected speech because it "was based upon her history of personal conflicts with Meyers, some of which is detailed at length in the Amended Complaint." (Cameron Br. at 13) (citing Amended Cpt. ¶¶ 45-51). Cohen makes the same argument. (Cohen Br. at 12). This argument selectively reads the Amended Complaint. Plaintiff is not claiming she was fired because of the interpersonal conflicts. *See* Amended Cpt. ¶¶ 86-87 (alleging Plaintiff was fired for exposing Meyers' unlawful conduct). The allegations in ¶¶ 45-51 constitute background information that led to the meeting at which Plaintiff blew the whistle on Meyers, as set forth in ¶¶ 52-57. The fact that Plaintiff had personal conflicts with Meyers does not conclusively establish that she spoke out on personal issues.

Cameron further argues that Plaintiff did not engage in protected speech because her "alleged speech relates *solely* to Meyers' alleged misconduct in the workplace, such as his text messages, alleged misuse of SCPD staff for personal matters, and allegedly fraudulent timekeeping." (Cameron Br. at 12) (emphasis supplied). In support of this argument, Cameron cites *Huth* for the proposition that "relaying complaints to management about the inappropriate conduct of co-workers was not constitutionally protected speech under the First Amendment." *Id.* (citing *Huth*, 598 F.3d at 74). Defendant Cohen makes the same argument (Cohen Br. at 12). Defendants misread *Huth*. The language they point to relates to whether the plaintiff in *Huth* spoke pursuant to her official job duties, not whether she spoke on a matter of public concern. *See* 598 F.3d at 74. Whether plaintiff spoke *pursuant to her job duties* under the First Amendment is an entirely separate analysis from whether she spoke *on a matter of public concern*. Plaintiff is aware of no case that holds that whistleblowing about co-worker misconduct cannot constitute speech on a matter of public concern; rather, the cases are legion in which plaintiffs engaged in protected speech precisely on that basis. *See e.g. Nagle v. Marron*, 663 F.3d

9

100, 108 (2d Cir. 2011) (school teacher spoke on a matter of public concern in reporting that another teacher was abusive to students); *Jackler*, 658 F.3d at 240-42 (police officer spoke on a matter of public concern in refusing to falsify a police report that implicate a sergeant in police misconduct); *Sousa v. Roque*, 578 F.3d 164, 167 (2d Cir. 2009) (remanding claim for trial court to determine if plaintiff spoke on a matter of public concern in reporting that coworkers were engaging in "abusive behavior over time").

Cohen argues that Plaintiff did not engage in protected speech because, when she spoke with senior-level Police Department officers, she "was not on a mission to protect the public welfare. Rather her primary aim was to protect her own reputation an individual development." (Cohen Br. at 13) (citing *Ruotolo*, 514 F.3d at 190). This is not true. The Amended Complaint does not concede that personal concerns primarily drove Plaintiff to speak out against Meyers. Nothing in Plaintiff's allegations hint at such a motive (Amended Cpt. ¶¶ 53-54). Moreover, the Court of Appeals has "rejected a categorical approach that places all speech aimed at redressing personal grievances in the employment context beyond the scope of the First Amendment." *Huth*, 598 F.3d at 74 (citing *Sousa*, 578 F.3d at 175) ("while motive surely may be one factor in making this determination [whether the plaintiff spoke on a matter of public concern], it is not, standing alone, dispositive or conclusive").

Finally, Defendants attack Plaintiff for abandoning the allegation that she told the senior SCPD officers that "she needed guidance on who she should be taking orders from." (Complaint ¶ 59). Defendants deem it significant that Plaintiff removed that sentence from the Amended Complaint. *See e.g.* Cameron Br. at 13-14; Meyers Br. at 10-11 n. 2. But even the original Complaint asserts that Plaintiff told the senior officers about "Meyers' abusive leadership, and his campaigning for the former SCPD Commissioner, Sini, on SCPD time." (Complaint ¶ 60).

As Plaintiff asserts the same allegation in the Amended Complaint, there is no inconsistency. While Defendants cite *Austin v. Ford Models, Inc.*, 149 F.3d 148 (2d Cir. 1998), in claiming a party cannot "erase" admissions from a subsequent pleading, that is not the issue here, as Plaintiff is not trying to revive a claim that she abandoned in the Amended Complaint. Not only do both complaints assert the protected whistleblowing, but to the extent Defendants identify any inconsistency in these documents, they are free to raise them on cross examination. Defendants cite no case that the slight differences in these allegations mandate dismissal of Plaintiff's First Amendment retaliation claim. While they argue that *U.S. v. McKeon*, 738 F.3d 26 (2d Cir. 1984), holds that a plaintiff cannot advance a new version of events in her amended complaint (Meyers Br. at 10-11 n.2), they leave out the rest of the analysis: if a plaintiff does that, her adversary can use the revision to impeach her credibility at trial as a party opponent admission. *McKeon*, 738 F.3d at 31.

### 2. Plaintiff spoke out as a citizen and not pursuant to her official job duties.

In *Garcetti*, "[t]he Supreme Court stated that 'when public employees make statements pursuant to their official duties,' . . . 'the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.' Although the Court refrained from proffering a detailed definition of what constitutes one's 'official duties,' it noted that '[w]hen a public employee speaks pursuant to [his or her] employment responsibilities . . . there is no relevant analogue to speech by citizens who are not government employees." *Montero*, 890 F.3d at 395 (citing 547 U.S. at 421, 424).

The Supreme Court returned to this issue in *Lane v. Franks*, 573 U.S. 228 (2014). In that case, the director of a state program asserted he was demoted because he testified to a federal grand jury about issues relating to his department's payroll. *Id.* at 232-34. Although the Eleventh

Circuit held the plaintiff did not engage in citizen speech because his testimony concerned information learned in the course of his employment, the Supreme Court disagreed, noting "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. at 240. The Court further noted "[t]here is considerable value . . . in encouraging, rather than inhibiting, speech by public employees. For '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" *Id*. at 236.

As the Police Department's Director of Communications, Plaintiff managed all staff related to public information, social media, internal communications, and strategic communications" for the Department. (Amended Complaint ¶¶ 25-26). The Amended Complaint does not assert that Plaintiff was the Department's ethics officer, or that she was responsible for rooting out unethical or illegal behavior, and Defendants do not assert otherwise. Although Plaintiff handled the Department's communications and related strategies, she nonetheless spoke up against Meyers' unlawful use of public resources for Sini's political campaign, as well as his time-keeping fraud. *Id*. at ¶¶ 52-53. Plaintiff further alleges that her "reporting had nothing to do with her role as Director of Communications for the SCPD." *Id*. at ¶ 56. As the Amended Complaint plausibly asserts that Plaintiff's speech was not "ordinarily within the scope of an employee's duties," *Lane*, 573 U.S. at 240, she spoke as a citizen and not as an employee in exposing Meyers' misconduct. *Compare Brown v. Halpin*, 885 F.3d 111, 116, 118 (2d Cir. 2018) (a government lawyer who provided legal advice to the retirement commission may have spoken as a citizen and not pursuant to her official duties in speaking out against the state's failure to comply with rules governing disability benefits, as "the pleadings do not admit that Brown is under an employment obligation to report misconduct to the Auditors," and "Brown's written job

12

responsibilities are sufficiently ambiguous that we cannot resolve this dispute at this phase of the litigation"); *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015) (jury may find that police officer who spoke out against a precinct-side arrest quota policy did not speak pursuant to his official duties, as "[s]uch policy-oriented speech was neither part of his job description nor part of the practical reality of his everyday work").

Cameron argues that Plaintiff's claim is thwarted by language in *Garcetti* that, while "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance," public officers should "as a matter of good judgment" be "receptive to constructive criticism," and that state legislative enactments can provide relief to discharged employees. (Cameron Br. at 10). Cameron cites this language out of context. The Supreme Court said this to ensure litigants that even adverse actions resulting from official-duty speech may be redressed under state law. That language does not apply here, as Plaintiff spoke as a citizen. Nor can Cameron rely on *Huth*, where the First Amendment did not protect the plaintiff's speech about co-worker misconduct because it was her job to pass along this information in the course of daily meetings to discuss employees in her division. 598 F.3d at 74. The facts in *Huth* have nothing in common with Schultz's case.

Meyers argues Plaintiff spoke pursuant to her duties because she would not have discovered his misconduct "but for her position as SCPD Director of Communications and during the SCPD workday." (Meyers Br. at 13). But the Supreme Court has already rejected this argument:

> *Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment. The *Garcetti* Court made explicit that its holding did not turn on the fact that the memo at issue "concerned the subject matter of [the prosecutor's] employment," because "[t]he First Amendment protects some expressions related to the speaker's job." In other words, the mere fact that a citizen's speech concerns information acquired by

13

virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.

*Lane*, 573 U.S. at 239-240.

### 3. The Amended Complaint plausibly alleges the individual defendants were responsible for Plaintiff's termination.

First Amendment plaintiffs must show "a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." (*Id.*) The plaintiff must also establish the defendant was personally involved in the plaintiff's discharge. "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

Plaintiff alleges that Cameron learned she had blown the whistle on Meyers' misconduct. (Amended Cpt. ¶ 59). Cameron then spoke with Meyers and Cohen about Plaintiff's allegations. *Id.* at ¶ 60. These Defendants next made "a joint decision . . . to terminate Schultz's employment under the pretext that she had failed a background check." *Id.* at ¶ 62. After each Defendant agreed "they would offer Plaintiff the option to resign instead of being fired," Cameron asked her to meet with Cohen for that purpose. *Id.* at ¶ 64. While Cohen told Plaintiff she had to resign, Plaintiff refused to do so. *Id.* at ¶¶ 66-67. Cameron, Cohen and Meyers then "decided that Cameron would fire her, which he did by letter that afternoon." *Id.* at ¶ 68. These allegations are sufficiently detailed to link each individual defendant to Plaintiff's termination.

14

Cameron claims Plaintiff has not alleged he played any role in her termination because he "was not present when Cohen handed her the termination letter and was not privy" to Plaintiff's whistleblowing to the Police Department supervisors. (Cameron Br. at 14). But Plaintiff asserts that Cameron knew about her speech. (Amended Cpt. ¶ 59). While Cameron was not present when Plaintiff was fired, as "[p]ersonal involvement can be shown by evidence that . . . the defendant participated directly in the alleged constitutional violation," *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), Cameron is not entitled to Rule 12 relief.

Cohen also seeks dismissal on that basis that he had no involvement in Plaintiff's termination, implicitly blaming Cameron for this adverse action. *See* Cohen Br. at 15 ("Plaintiff has undeniably alleged an adverse employment action, in that she was terminated by Cameron"). While Cohen claims that Plaintiff does not allege that he personally terminated her (*id.*), he overlooks how the Amended Complaint places Cohen at the meetings where Defendants determined to fire Plaintiff, and how Cohen, after consulting with the other Defendants, told Plaintiff that she had to resign. (Amended Cpt. ¶¶ 62, 64, 66-68). While Cohen claims the Amended Complaint does not assert his unlawful motive to fire Plaintiff, and that he did not even mention Meyers in "offering to let Plaintiff resign" (Cohen Br. at 16), this argument fails to view the allegations in Plaintiff's favor. Cohen knew that Plaintiff had blown the whistle on Meyers, and, with that knowledge, he met with the other Defendants to plot her termination, "offering" her the resignation option before determining with his colleagues to fire Plaintiff when she refused to leave voluntarily. The issues surrounding Cohen's motivation must be litigated in discovery.

Meyers advances similar arguments, claiming that he lacked authority to fire Plaintiff (Meyers br. at 10), was not a Police Department employee when Plaintiff was fired, and was not

15

present at the time of her termination. *Id.* at 11. But, as demonstrated above, Meyers, Cameron and Cohen determined to fire Plaintiff, and the Amended Complaint therefore plausibly alleges that Meyers intended to quiet down Plaintiff in retaliation for exposing Meyers' illegal and unethical conduct. Accordingly, while Meyers claims Plaintiff fails to allege he had any retaliatory intent in terminating Plaintiff's employment (*id.* at 14), the inference is clear: it was Plaintiff's speech about Meyers that motivated him to push for her retaliatory termination.

## 4. Defendants are not entitled to qualified immunity on the First Amendment claim.

"Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015).

The Supreme Court frames the qualified immunity inquiry as a two-part test. Courts must first determine whether the defendant violated a constitutional right. If so, courts must then decide if that right was clearly-established at the time of the incident. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). The Supreme Court has never recognized that further analysis of qualified immunity is proper once the plaintiff shows that defendants violated a clearly-established right. *Okin v. Village of Cornwall-on-Hudson Police Dept.*, 577 F.3d 415, 433 n. 11 (2d Cir. 2009).

Seeking qualified immunity, Meyers claims (1) he had nothing to do with Plaintiff's termination, (2) he "was not aware of Plaintiff's purported internal report" and (3) "Plaintiff does not plausibly assert a violation of a constitutional right." (Meyers Br. at 14 n. 4). As an initial matter, this affirmative defense should await the summary judgment motion. *See Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) ("'[by] presenting [their] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendants] must accept the

16

more stringent standard applicable to this procedural route.' Briefly summarized, we accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, including both those that support the claim and 'those that defeat the immunity defense.' This standard represents a 'formidable hurdle'"). Contrary to Supreme Court authority, *see Tolan*, 572 U.S. at 656, Meyers further argues disputed facts in seeking immunity, as the Amended Complaint sufficiently alleges his involvement in the violation of a clear constitutional right, as demonstrated above. Meyers has not cited any case holding that Plaintiff's termination did not violate clearly-established law, a prerequisite for qualified immunity.

Cohen also seeks qualified immunity, arguing that Plaintiff fails to plead detailed facts demonstrating his involvement with Plaintiff's termination, and that Plaintiff's termination was objectively reasonable "as there were legitimate grounds [for it], namely that Plaintiff failed to pass the background check for the SCPD position that she assumed roughly two months earlier and admitted to improperly using SCPD computers for personal reasons." (Cohen Br. at 8-9). Cameron makes the same argument. (Cameron Br. at 8). First, as demonstrated above, the Amended Complaint places Cohen at the heart of the decision-making process resulting in Plaintiff's termination. As the Supreme Court stated in *Tolan*, qualified immunity cannot attach on the basis of disputed facts. *See also Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007) ("if there is no dispute as to the material historical facts, the matter of whether the [defendant's] conduct was objectively reasonable is an issue of law to be determined by the court. If there is such a dispute, however, the factual questions must be resolved by the factfinder").

The same holds true for Cohen's argument that Plaintiff was terminated for cause; the Amended Complaint demonstrates that the motive for Plaintiff's termination is disputed, as she plausibly asserts Defendants fired her in violation of the First Amendment. Moreover, contrary

17

to Cohen's argument, the "objective reasonableness" step of the qualified immunity inquiry focuses on whether defendant violated clearly-established law. *See Okin*, 577 F.3d at 433 n. 11; *Barboza v. D'Agata*, 676 F. App'x 9, 12 n. 4 (2d Cir. 2017) (summary order). Where the plaintiff asserts an intentional constitutional violation, the qualified immunity inquiry does not ask whether the defendant would have had an objective basis to terminate the plaintiff even without the constitutional violation. *See Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001) ("where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law").

### 5.   Plaintiff plausibly asserts facts on "information and belief."

Defendants claim that Plaintiff cannot avoid dismissal by pleading allegations "upon information and belief." (Meyers Br. at 15). This argument fails. "The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible. . . . The *Twombly* Court stated that '[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) ("even in the context of Federal Rule of Civil Procedure 9's more stringent pleading requirements for pleading 'special matters,' we have held that 'allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge'").

18

The evidence relating to the individual Defendants' liability is only within their possession, as they met among themselves to discuss Plaintiff's employment. But Plaintiff's allegations are plausible, as she was terminated shortly after she exposed Meyers' illegal conduct, and Defendants claimed she was fired over her arrest record, a pretext since Defendants had no problem with her record when Plaintiff was hired.

## Point II

### Plaintiff plausibly alleges a gender discrimination claim

"[P]ublic employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law. To state a claim under § 1983, a plaintiff must allege two elements: (1) 'the violation of a right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation was committed by a person acting under color of state law.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015).

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003). An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000).

Defendants claimed to fire Plaintiff because she plead to a misdemeanor even though they knew about her conviction when she commenced employment. (Amended Compl. ¶¶ 30-36). After Plaintiff exposed Meyers' misconduct, however, Defendants used Plaintiff's record as

19

a pretext to terminate her employment. If Plaintiff's record was no impediment to County employment when she was hired, the jury may find her termination for this reason was not made in good faith, and that Defendants must have been motivated by an unlawful reason instead. In proving unlawful motive, Plaintiff points to the differential treatment afforded male Police Department employees who were not fired despite comparable conduct. The comparators are set forth in the Amended Complaint at ¶¶ 77-83. As Cameron concedes, "an employee can infer discrimination through an employer's 'more favorable treatment of employees not in the protected group." (Cameron Br. at 16).

Defendants claim the male officers are not comparators because Plaintiff was an administrator with the Police Department, not a police officer. (Cameron Br. at 17). Meyers argues that Plaintiff has advanced "no factual basis as to how these males are similarly situated to Plaintiff . . . or that Meyers personally provided these men with preferential treatment over Plaintiff." Meyers also claims he was not "aware of the purported criminal conduct." (Meyers Br. at 8). Defendants further argue that some of the male comparators were not charged with misdemeanors, and that the Amended Complaint does not allege the dates of these officers' misconduct. (Cameron Br. at 17). Cohen makes similar arguments. (Cohen Br. at 18-20).

First, for purposes of making out Plaintiff's minimal *prima facie* case of gender discrimination, it does not matter that she is comparing herself to police officers. The standard is "whether they were subject to the same workplace standards and (2) whether the conduct for which [they were] discipline[d] was of comparable seriousness." *Graham*, 230 F.3d at 39. "Whether two employees are similarly situated *ordinarily presents a question of fact for the jury*." *Id*. at 40 (emphasis supplied).

20

While Defendants claim the male officers (and not Plaintiff) belong to a labor union (Meyers Br. at 9; County Br. at 9), the question is whether the male comparators were governed by the same rules of conduct. *Dotson v. City of Syracuse*, 763 Fed. Appx. 39, 43 (2d Cir. 2019) (summary order). We may draw the plausible inference that any police department employee is held to the same standard of lawful conduct, and that, if anything, police officers are held to a higher standard, since they are charged with actively enforcing the law. As set forth in the Amended Complaint, male officers with comparable criminal conduct were not fired, and Plaintiff was terminated, purportedly because of a misdemeanor conviction that supervisors were willing to overlook until she spoke on a matter of public concern. At this point, Plaintiff was singled out and treated more harshly than the male police officers.

While some of the officers were not arrested for their criminal conduct (Amended Compl. ¶¶ 80-83), that does not mean they are not comparable to Plaintiff, as they still engaged in similar misconduct without punishment. While Defendants further argue that Plaintiff has failed to detail the comparators' level of experience, education or job performance (Cameron Br. at 17), Plaintiff is not required plead that level of detail in making out her *prima facie* case. Instead, "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham*, 230 F.3d at 40.

Defendants also cite "facts" outside the four corners of the Amended Complaint in claiming the male officers were not comparable to Plaintiff because "their employment with SCPD ended before they were even convicted of a crime." *See* Cameron Br. at 17-18 & n. 4. This is improper. While this Court may consider materials outside the complaint in determining if the plaintiff pleads a viable claim, that only holds true when the complaint attaches a written

21

instrument as an exhibit "or any statements or documents incorporated in it by reference." In addition, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). While Defendants rely upon a Newsday article (Cameron Br. at 18 n. 4, County Br. at 10 n. 6), that hearsay cannot support their position, as Plaintiff does not invoke that article in her Amended Complaint. Any claim that the officers were not comparable to Plaintiff must be explored in discovery.

Defendants also argue that the Amended Complaint fails to allege they were motivated by gender in terminating Plaintiff's employment, or that they knew what offenses these men had committed. *See e.g.* Meyers Br. at 8. However, we may draw the reasonable inference that County officials, including those employed by the Police Department, knew exactly which male officers were either charged with comparable offenses or engaged in comparable misconduct for which they were never charged. The extent of Defendants' knowledge of the comparators' misconduct is a subject for discovery, not a motion to dismiss in which Plaintiff is not in a position to precisely allege what these supervisors knew about their subordinates' misconduct.

## Point III

### Plaintiff pleads a plausible claim against the County under CSL § 75-b

"A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: . . . (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. 'Improper governmental action' shall mean any action by a public employer or employee, or an agent of

22

such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation." Civ. Serv. Law § 75-b(2)(a).

The County argues that Plaintiff cannot proceed under this statute because she "does not allege that she reported to a government body information regarding alleged improper government action" and that, instead, she "alleges that she met with two nameless 'senior level SCPD officers to discuss Meyers' conduct.'" (County Br. at 13). Nor, the County claims, does Plaintiff allege she filed a "report." (*Id.*) The County further argues that plaintiff "does not allege what 'conduct' she discussed." (*Id.*) Plaintiff properly pleads this claim, and this Court should deny the County's motion to dismiss.

First, Plaintiff was not required to file a "report" in exposing Meyers' misconduct. The statute only requires that the employee "disclose to a governmental body." Civ. Serv. Law § 75-b(2)(a). *Compare Burns v. Cook*, 458 F. Supp. 2d 29, 44-45 (N.D.N.Y. 2006) (holding the plaintiff plead a public whistleblower claim by alleging "she informed either the Superintendent or the Board of Education that they violated her statutory and contractual rights"); *Castro v. City of New York,* 141 A.D.3d 456, 456 (1st Dept. 2016) (plaintiff sufficiently plead claim where he "advised" an immediate supervisor and an Assistant Commissioner of the alleged violations"). These cases do not emphasize that the plaintiffs had to place their concerns in writing.

Second, "[p]ursuant to section 75-b(1)(c)(i), the definition of '[g]overnmental body' includes 'an officer, employee, agency, department, division, bureau, board, commission, council, authority or other body of a public employer.' The use of the term 'a governmental body,' which includes 'a public employer,' rather than 'another' government body or 'another' public employer, suggests that an employee is protected if he reports internally and/or

23

externally." *Castro*, 141 A.D.3d at 460–61. There was no pleading deficiency in alleging that Plaintiff spoke to two unnamed "senior-level" officers. The statute does not require a plaintiff to specifically identify the governmental officers to whom they reported the misconduct. While the County further argues that Plaintiff "does not allege what 'conduct' she discussed" (County Br. at 13) (citing Amended Compl. ¶ 52). In the next two paragraphs, Plaintiff alleges the conduct was Meyers' improper use of public resources in campaigning for Sini and "other matters of fraud." (Amended Compl. ¶¶ 53-54).

## Point IV

### Plaintiff pleads a claim for *prima facie* tort

To plead a *prima facie* tort claim, the plaintiff must allege "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332 (1983). The plaintiff must also allege "disinterested malevolence." *Id.* at 333. In other words, "the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Lab., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 571 (2d Cir. 1990).

The County argues that Plaintiff cannot prevail on this claim because she only alleges that Defendants were only motivated by "personal gain" in terminating her employment. (County Br. at 14-15). However, Plaintiff accuses Defendants of conspiring to terminate her employment maliciously: as punishment for her legitimate whistleblowing. Courts have defined "personal gain" to relate only to business motivations, not political cover-ups. *See Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2d Cir. 1985) ("the sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff. When there are other motives, such as profit,

24

self-interest, or business advantage, there is no recovery under the doctrine of *prima facie* tort").

Moreover, while the County quotes from Plaintiffs § 1985(3) cause of action in claiming that the

asserted motive was Defendants' self-interest in Meyers' misconduct under wraps (County Br. at

14-15), in the *prima facie* tort portion of the Amended Complaint, Plaintiff pleads in the

alternative that "[t]here was no excuse or justification for their actions, and the defendants' sole

motivation to inflict this harm on plaintiff was malevolence and malice." (Amended Compl. ¶

132).

## Conclusion

The Amended Complaint asserts viable claims against all Defendants: as against the

individual Defendants, Plaintiff pleads First Amendment retaliation and gender discrimination

claims under the Equal Protection Clause. As against the County, Plaintiff pleads a public

employee whistleblower claim under the Civil Service Law.

Dated: September 20, 2019
       Rockville Centre, N.Y.

Respectfully submitted,

Brendan Chao

50 Merrick Road
Rockville Centre, N.Y. 11570
(516) 466-2033

Stephen Bergstein

Bergstein & Ullrich, LLP
5 Paradies Lane
New Paltz, N.Y. 12561
(845) 469-1277

Counsel for Plaintiff

25