UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DONNA SCHULTZ,

                              Plaintiff,                              **REPORT AND**
                                                                     **RECOMMENDATION**
                                                                     19-CV-0925 (JMA) (ARL)

              -against-


COUNTY OF SUFFOLK, JUSTIN S. MEYERS IN
HIS OFFICIAL AND PERSONAL CAPACITY,
DENNIS COHEN IN HIS OFFICIAL AND
PERSONAL CAPACITY, AND STUART
CAMERON IN HIS OFFICIAL AND PERSONAL
CAPACITY,

                              Defendants.
-------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

  Donna Schultz ("Plaintiff") brings this employment discrimination action against the County

of Suffolk (the "County"), Justin S. Meyers, in his official and personal capacity, Dennis Cohen

in his official and personal capacity, and Stuart Cameron in his official and personal capacity

(the "Individual Defendants" and together with the County, "Defendants").  Before the Court, on

referral from District Judge Azrack, are motions to dismiss filed by each of the named defendants.

For the reasons set forth below, the undersigned respectfully recommends that the motions be

granted in part, denied, in part.

**BACKGROUND**

**A.  Factual Background**

  The following facts are drawn from the Amended Complaint and are accepted as true for

purposes of the instant motion.  *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.

1993).  These facts, however, do not constitute findings of fact by the Court.  *See Colvin v. State*

*University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Plaintiff, a female, began work for the Suffolk County Police Department ("SCPD") on June 20, 2016 as the Director of Communications.[1] Am. Compl. ¶ 25. Defendant "Meyers was [Plaintiff's] direct supervisor." *Id*. at ¶ 27. On January 10, 2018, Plaintiff was appointed as a "provisional Special Projects Coordinator." *Id*. at ¶ 88. Plaintiff was required to take the Civil Service exam in order for the appointment to become permanent. *Id*. at ¶ 89. On March 15, 2018, she was terminated. *Id*. at ¶ 71.

Defendant, the County of Suffolk is a municipality of New York. *Id*. at ¶ 9. Defendant Justin S. Meyers was Assistant Deputy Police Commissioner from at least January 2016. *Id*. at ¶ 10. On January 1, 2018, Defendant Meyers resigned from the SCPD and took a position as Chief of Staff at the Suffolk County District Attorney's Office ("SCDAO"). *Id*. at ¶ 44. Defendant Cohen was at all relevant times Chief Deputy County Executive for the Suffolk County Executive Office (" SCEO"). *Id*. at ¶ 11. Defendant Stuart Cameron became acting SCPD Commissioner in January 2018. *Id*. at ¶ 12.

Beginning in January 2016, Plaintiff was recruited by Defendant Meyers for a position as Director of Communications for the SCPD, which she ultimately accepted in June of that year.

---

[1] Defendant Cohen argues that according to Plaintiff's original complaint Plaintiff alleged she was not an employee of the SCPD, but rather an employee of the SCEO on loan to the SCPD. Cohen Mem. ftnt. 1. However, "[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir.), cert. denied, 434 U.S. 1014, 98 S. Ct. 730, 54 L. Ed. 2d 758 (1977), *see also Laza v. Reish*, 84 F.3d 578, 581 (2d Cir. 1996) (quoting 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed. 1990)) ("'Once an amended pleading is interposed, the original pleading no longer performs any function in the case.'"); *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 706 n.2, 102 S. Ct. 3304, 3325 n.2, 73 L. Ed. 2d 1057 (1982) ("It is the complaint which defines the nature of an action, and once accepted, an amended complaint replaces the original."). Therefore, this Court's analysis for purposes of the motions to dismiss is limited to the allegations set forth in the Amended Complaint. Nevertheless, "[t]he amendment of a pleading does not make it any the less an admission of the party." *Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 707 (2d Cir. 1989).

*Id*. at ¶¶ 17, 25.  During this process, Plaintiff "advised Meyers that she had pleaded guilty to a misdemeanor eight years earlier for improperly accepting unemployment benefits." *Id*. at ¶ 22. "Meyers asked numerous questions about the misdemeanor, and several days later called to tell her the misdemeanor was not a problem with employment at the SCPD." *Id*. at ¶ 23.  She was offered the position.  *Id*. at ¶ 24.  Once she assumed the role of Director of Communications, Plaintiff "managed all staff related to public information, social media, internal communications, and strategic communications for the SCPD." *Id*. at ¶ 26.

In the Amended Complaint, Plaintiff contends that she continued to answer to Defendant Meyers despite his resignation from the SCPD on January 1, 2018.  Plaintiff alleges that Defendant Meyers continued to call the SCPD to direct its employees to do work for him throughout January and February 2018.  *Id*. at ¶ 44.  She alleges that she was directed by Defendant Meyers "not to hold any press conferences regarding arrests made by SCPD because he wanted those announcements to come out of the SCDAO's communication's office not the SCPD's communication's office." *Id*. at ¶ 45.  In addition, Plaintiff claims Defendant Meyers "gave explicit instructions to [Plaintiff] and other SCPD staff not to provide details of an alleged theft of District Attorney Sini's wallet from his county car." *Id*. at ¶ 46.  And, on February 22, 2018, Defendant Meyers instructed Plaintiff to address an arrest warrant executed by the SCPD. Plaintiff was unable to comply with this request because the SCPD was focused on a fallen police officer that day.  *Id*. at ¶¶ 48, 49.  Plaintiff alleges that, as a result, Defendant Meyers began sending her threatening text messages.  *Id*. at ¶¶ 50, 51.

Following the threatening text messages, Plaintiff met with two senior SCPD officers to discuss Defendant Meyers conduct and to report that prior to his departure from the SCPD Defendant Meyers had been campaigning for the former SCPD Commissioner on SCPD time,

using SCPD employees to run errands for him, and had committed fraud related to his time keeping records while employed by the SCPD.[2]  *Id*. at ¶¶ 53-54.  Plaintiff alleges, upon information and belief, that these two unidentified police officers reported her complaints about Defendant Meyers to Defendant Cameron.  *Id*. at ¶ 59.  Plaintiff also alleges upon information and belief that Defendant Cameron then relayed Plaintiff's complaints to Defendants Meyers and Cohen.  *Id*. at ¶ 60.

On March 15, 2018, Plaintiff alleges she was told to meet with Defendant Cohen.  *Id*. at ¶ 64.  At the meeting, Defendant Cohen asked for Plaintiff's resignation, which she refused to provide and she was terminated by Defendant Cameron by letter later that afternoon.  *Id*. at ¶ 68.  Plaintiff alleges, upon information and belief, that Defendant "Meyers instigated the termination of [Plaintiff's] employment following her reporting, Cameron was the messenger, and Cohen was the axe man."  *Id*. at ¶ 65.

Based upon the foregoing set of facts Plaintiff originally asserted six causes of action.  In Plaintiff's memorandum of law, Plaintiff withdrew (1) all claims against the County under Section 1983, (2) all claims for conspiracy pursuant to 42 U.S.C.§ 1985(3) (Third Cause of Action) and (3) all claims pursuant to New York Labor Law § 740 (Fifth Cause of Action).  Pl. Mem. at 1.  Plaintiff's remaining claims are: violation of the First Amendment by the Individual Defendants -- 42 U.S.C. § 1983 ("Retaliation Claim"); violation of the Fourteenth Amendment by the Individual Defendants based upon gender discrimination – 42 U.S.C. § 1983 ("Gender Discrimination Claim"); violation of New York Civil Service Law Section 75-b against all Defendants; and prima facie tort against all Defendants.

---

[2] Here, too, Plaintiff has changed her factual allegation from the original complaint, however, as discussed above the Court will limit its review to the allegations in the Amended Complaint.

**B. Procedural Background**

Plaintiff filed her complaint on February 15, 2019. ECF No. 1. Defendants filed letter requests to Judge Azrack requesting permission to file motions to dismiss Plaintiff's complaint setting forth the grounds for dismissal. ECF Nos. 28, 29, 31, 32. At the conference to discuss the motion, Judge Azrack set a briefing schedule on each of the Defendants' motions to dismiss and granted Plaintiff permission to file an amended complaint. Plaintiff filed the Amended Complaint on June 13, 2019. ECF No. 35. On October 11, 2019, each of the Defendants independently moved to dismiss Plaintiff's claims pursuant to Rule 12 (b)(6). Plaintiff opposes the motions in a single opposition and relies upon Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint ("Pl. Opp."). By Order dated May 27, 2020, these four motions were referred to the undersigned by Judge Azrack.

## DISCUSSION

**A. Standard of Review - Rule 12(b)(6)**

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint." *Id. (quoting Global Network*, 458 F.3d at 157)). In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

Here, each of the Individual Defendants have argued that the Court should consider

allegations made by Plaintiff in her original complaint for the truth of those allegation. *See, e.g.,* Cameron Mem. at 4; Cohen Mem. at 23; Meyers Mem. at 10. This Court can judicially notice the original complaint. *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp.2d 229, 244-45 (S.D.N.Y. 2011) (on a motion to dismiss the second amended complaint, taking judicial notice of the original complaint and first amended complaint). However, the Court's consideration of the original complaint is limited to the fact that it was filed and the Court cannot consider the truth of the matters asserted therein. *See B & R Supermarket, Inc. v. Mastercard Int'l, Inc.*, 2018 U.S. Dist. LEXIS 158979*30, 2018 WL 4445150 (E.D.N.Y. Sep. 18, 2018) (declining to judicially notice MDL pleadings, noting that "[i]f the court takes judicial notice of a document, it does so for its existence, 'but not for the truth of the matters asserted'") (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007))*; see also Liberty Mutual Insurance Co. v. Rotches Pork Packers. Inc.,* 969 F.2d 1384, 1388-89 (2d Cir. 1992). Thus, for purposes of the motions to dismiss the Court's review is limited to the allegations set forth in the Amended Complaint.

## B. Motion to Dismiss

### 1. Retaliation Claims (First Cause of Action)

Plaintiff's First Cause of Action alleges that the Individual Defendants retaliated against Plaintiff because she exercised her First Amendment rights to free speech in violation of Section 1983. According to Plaintiff, she reported alleged misconduct on behalf of Defendant Meyers to two unnamed senior police officers and was terminated nine days later on the pretext of a failed background check. Am. Compl. ¶¶ 86, 87, 90. A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech*." Cox v. Warwick Valley Cent.*

*School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). A plaintiff can establish the causal connection between the protected activity and the adverse action directly by evidence of retaliatory animus directed against the plaintiff or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Woods v. Enlarged City Sch. Dist.,* 473 F. Supp. 2d 498 (S.D.N.Y. 2007) (quoting *Raniola v. Police Commissioner William Bratton*, 243 F.3d 610, 626 (2d Cir. 2001)). The plaintiff may rely on the temporal proximity of the protected action and the adverse employment action. *See Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554-55 (2d Cir. 2001). Here, the Individual Defendants each argue that the complaint fails to allege the first two required elements.[3] The Court addresses each one separately below.

### a. Protected Speech

Each of the Individual Defendants have argued that Plaintiff's complaint to the two officers fails to qualify as protected speech. *See* Cameron Mem. at 9; Cohen Mem. at 10; Meyers Mem. at 11. Courts conduct a two-step inquiry to determine whether a public employee's speech is protected under the First Amendment. *See Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). First, Plaintiff must demonstrate that "the subject of the employee's speech was a matter of public concern." *Id.* Second, Plaintiff must show that she "spoke 'as a citizen' rather than solely as an employee." *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). If the answer to either question is no, Plaintiff's claim fails. *Id.*

### i. Matter of Public Concern

Whether a public employee's speech addresses a matter of public concern is a question of law that "must be determined by the content, form, and context of a given statement, as revealed

---

[3] Defendant Cameron and Defendant Cohen also argue that the official capacity claims against them must be dismissed because those claims are duplicative of claims against the County. Cameron Mem. at 76, Cohen Mem. at 6-7; Cohen Reply Mem. at 2. However, Plaintiff has dropped her claims for retaliation against the County and, therefore, the claims are not duplicative.

by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48, 148 n.7 (1983). A statement is a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146. On the other hand, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment," does not implicate the First Amendment. *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999). Thus, in assessing whether an employee's speech involves a matter of public concern, "[t]he heart of the [inquiry] is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis*, 165 F.3d at 163-64).

Here, Plaintiff's First Amendment retaliation claim is based upon her voicing her concerns that Defendant Meyers had been campaigning for the former SCPD Commissioner of SCPD time, using SCPD employees to run errands for him, and other matters of fraud related to Meyers's time keeping records while employed by the SCPD. Am. Compl. ¶¶ 53-54. The Second Circuit has consistently held that the lawfulness of public officials' actions—including, specifically, police misconduct—is a matter of public concern. *See, e.g., Jackler*, 658 F.3d at 236 ("Exposure of official misconduct, especially within the police department, is generally of great consequence to the public."); *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by *Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008) ("Plaintiffs' speech plainly concerned issues of public concern: misfeasance within the police department and allegations of an ongoing cover-up and an attempt to silence those who spoke out against it."). Thus, Plaintiff has plead facts allowing the Court to draw a reasonable inference that Plaintiff's speech relates to a matter of public concern.

## ii. Plaintiff Speaking as a Citizen or Employee

Defendant Meyers argues that Plaintiff was speaking as an employee rather than a citizen when meeting with the two senior police officers. Meyers Mem. at 11-12. Whether an employee spoke solely as an employee or as a citizen is "largely a question of law for the court." *Jackler*, 658 F.3d at 237. In *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. This is true "even when the subject of an employee's speech is a matter of public concern." *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012). Therefore, if, as a matter of law, Plaintiff was speaking pursuant to her official duties, Defendants' motion to dismiss should be granted. *Id.*

In *Garcetti*, the Court defined speech made "pursuant to" a public employee's job duties as "speech that owes its existence to a public employee's professional responsibilities." *Garcetti*, 547 U.S. at 421. The Court cautioned courts against construing a government employee's official duties too narrowly, underscoring that:

> Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Id.* at 424-25.

In light of *Garcetti*, the Second Circuit has held that "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010). Thus, speech that is "'part-and-parcel of [a public employee's]

concerns' about his ability to 'properly execute his duties'" is considered speech made "pursuant to" the employee's official job duties. *Id.* (quoting *Williams v. Dallas Independent Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)).

"The inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a brightline rule." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012). Rather, "[c]ourts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." *Id.* "Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." *Id.* In that regard, "[e]mployees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." *Garcetti*, 547 U.S. at 423. "When a public employee speaks pursuant to employment responsibilities, however, there is no relevant analogue to speech by citizens who are not government employees." *Id.* at 424. Although the lack of a citizen analogue is not dispositive, it does bear on the perspective of the speaker and whether the public employee is speaking as a citizen. *Weintraub*, 593 F.3d at 204.

Here, Plaintiff's complaint to the unnamed officers may not have fallen within her job description, which, as described by Plaintiff was to "manage[] all staff related to public information, social media, internal communications, and strategic communications for the SCPD." Plaintiff argues that "she spoke up against Meyers' unlawful use of public resources for Sini's political campaign, as well, as his time-keeping fraud" both of which were unrelated to her role as Director of Communications. Pl. Opp. at 12. Nevertheless, her complaints may have related to her role as Director of Communication, reporting to Defendant Meyers, which is

unclear from the complaint.[4]  "Navigating the shoals of the standard articulated by the Supreme

Court in *Garcetti*, . . ., has proven to be tricky business, and particularly so in the context of a

motion to dismiss, because the inquiry is so highly fact intensive and context specific." *Decotiis

v. Whittemore*, 635 F.3d 22, 26 (1st Cir. 2011).  The Second Circuit has cautioned against

granting a motion to dismiss when the scope of a plaintiff's official duties is at issue.  *See

Matthews v. City of New York*, 488 F. App'x 532, 533 (2d Cir. 2012).  "Other courts in this

Circuit have heeded this warning and declined to dismiss cases of this kind before discovery."

*Brant v. New York City Health & Hosps. Corp.,* 17 Civ. 3801 (AKH), 2018 U.S. Dist. LEXIS

5428 (S.D.N.Y. Jan. 10, 2018) (citing *Jeune v. Crew*, 2017 U.S. Dist. LEXIS 161739, 2017 WL

4357382, at *16 (E.D.N.Y. Sept. 29, 2017) (holding that without discovery, "the Court cannot

determine whether reporting to the [Department of Labor] was part of Fulcher's duties, and

therefore, cannot determine the nature of Fulcher's speech"); *Espinoza v. City of New York*, 2012

U.S. Dist. LEXIS 184520, 2012 WL 6851171, at *8 (E.D.N.Y. Dec. 10, 2012), report and

recommendation adopted, 2013 U.S. Dist. LEXIS 5324, 2013 WL 146036 (E.D.N.Y. Jan. 14,

2013) (holding "that there is a need to more fully develop the factual basis for plaintiff's

claims—specifically the nature of her duties and reporting responsibilities—and that analysis of

whether her speech is protected by the First Amendment is premature at this time"); *Taylor v.

N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 127810, 2012 WL 3890599, at *4-8 (S.D.N.Y.

Sept. 6, 2012) ("Absent a more detailed record of the content and circumstances of [the

plaintiff's] speech, the Court cannot say, as a matter of law, that her speech was as an employee

rather than a citizen and that Defendants are entitled to prevail as a matter of law on her First

---

[4] Moreover, without the benefit of discovery, the Court cannot determine whether these statements were "made through 'channels available to citizens generally.'" *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Jackler*, 658 F.3d at 238).

Amendment claim.").

Accordingly, the undersigned respectfully recommends that each of the Individual Defendants' motions to dismiss Plaintiff's retaliation claim on the basis of a lack of protected speech be denied.

### b. Adverse Employment Action

In addition to arguing that Plaintiff's complaint to the two police officers was not protected speech, the Individual Defendants each argue that they were not personally responsible for Plaintiff's termination and that Plaintiff has failed to adequately allege they were aware of the complaint she made. In the Amended Complaint, Plaintiff alleges, upon information and belief, that two unidentified police officers reported her complaints about Defendant Meyers to Defendant Cameron. Am. Compl. ¶ 59. Plaintiff also alleges upon information and belief that Defendant Cameron then relayed Plaintiff's complaints to Defendants Meyers and Cohen. *Id*. at ¶ 60. According to Plaintiff, these defendants next made a "joint decision . . . to terminate [Plaintiff's] employment under the pretext that she had failed a background check." *Id*. at ¶ 62. Finally, Plaintiff alleges, upon information and belief that Defendant "Meyers instigated the termination of [Plaintiff's] employment following her reporting, Cameron was the messenger, and Cohen was the axe man." *Id*. at ¶ 65. Though Plaintiff has alleged the crux of her claim upon information and belief (i.e., that the Individual Defendants were aware of her complaints to the two police officers and terminated her as a result of those complaints) a plaintiff may survive a motion to dismiss by "pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted). Accordingly, the undersigned respectfully recommends that the Individual Defendants' motion to dismiss on this

basis be denied.

### c. Qualified Immunity

The Individual Defendants also argue that they are shielded from liability in their individual capacities under the doctrine of qualified immunity. Under this doctrine, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The Court may address these elements in either order. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (holding that courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first). Although the applicability of a qualified immunity defense is often fact-intensive, "if, upon drawing every factual inference in favor of the plaintiff, the question is purely the state of the law at the time of a defendant's allegedly tortious conduct, so that the court can determine whether a reasonable state agent should have known that what he was doing violated the law, then a court can determine the availability of qualified immunity on a motion to dismiss under Rule 12(b)(6)." *Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016), aff'd, 675 F. App'x 43 (2d Cir. 2017).

The Court has already found that the first element is met as the facts, viewed in the light most favorable to the Plaintiff, allege a First Amendment violation. *See Plofsky v. Giuliano*, 375 F. App'x 151, 152-53 (2d Cir. 2010). With regard to the second prong, whether the constitutional right at issue "was clearly established at the time of the alleged violation," a "defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." *Golodnerv. Berliner*, 770 F.3d 196, 205

(2d Cir. 2014) (citations and internal quotation marks omitted). "In other words, government officials will be immune from liability if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time." *Demoret v. Zegarelli*, 451 F.3d 140, 148-49 (2d Cir. 2006).

"As an initial matter, 'the First Amendment right of public employees to be free from retaliation for speech on matters of public concern' is beyond debate." *Id.* at 206 (quoting *Reuland v. Hynes*, 460 F.3d 409, 419-20 (2d Cir. 2006)). Here, Defendants Cameron and Cohen argue that they acted reasonable because to the extent either was involved in the decision to terminate Plaintiff, their actions would still be objectively reasonable as there were legitimate grounds for Plaintiff's termination, namely that Plaintiff failed to pass the background check for the SCPD position that she assumed roughly two months earlier. Cameron Mem. at 8; Cohen Mem. at 9. Additionally, Defendant Cohen argues that although he warned Plaintiff she could be fired he did not actually fire her. Cohen Mem. at 8-9. Defendant Meyers argues that it was objectively reasonable for him to conclude that he did not violate the law because he was not Plaintiff's supervisor at the time and was not aware of Plaintiff's purported report. Meyers Mem. at 14. Plaintiff disputes these contentions. Each of the Individual Defendants' arguments necessarily rest on factual determinations. Accordingly, the Court respectfully recommends that Defendants' motion to dismiss on the grounds of qualified immunity be denied at this time. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.").

## 2. § 1983 Gender Discrimination (Second Cause of Action)

Plaintiff also alleges that the Individual Defendants discriminated against her on the basis

of gender. The Individual Defendants each move to dismiss this claim arguing that Plaintiff has failed to allege that gender was a motivating factor in her termination. *See, e.g.,* Cameron Mem. at 15-18; Cohen Mem. at 18-20; Meyers Mem. at 6-9.

"A plaintiff who claims sex discrimination in public employment in violation of the Fourteenth Amendment's Equal Protection Clause may bring suit pursuant to 42 U.S.C. § 1983." *Miranda v. S. Country Cent. Sch. Dist.,* No. 20-CV-0104, 2020 U.S. Dist. LEXIS 89788, 2020 WL 2563091, at *6 (E.D.N.Y. May 21, 2020) (citing *Naumovski v. Norris,* 934 F.3d 200, 212 (2d Cir. 2019)). The basic pleading elements of such claims under § 1983 are that a plaintiff claiming disparate treatment must plausibly allege that she suffered an "adverse employment action" taken "because of" her sex. *Id.* A §1983 claim can be brought only against an individual who is personally responsible for the discrimination and thus the statute does not permit vicarious liability. *Id.* (citing *Littlejohn v. City of New York,* 795 F.3d 297, 314 (2d Cir. 2015)).

### a. Pleading Standard for Discrimination Claims

"Under *Iqbal* and *Twombly*, . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86 (2d Cir. 2015). Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), "dismissal is nevertheless appropriate where the plaintiff 'failed to allege even the basic elements of a discriminatory action claim.'" *Maldonado v. George Weston Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011) (quoting *Patane v. Clark,* 508 F.3d 106, 112 n.3 (2d Cir. 2007) (per curiam)); *see also De La Pena v. Metropolitan Life Ins. Co.,* No. 13-2852-cv, 552 Fed. Appx. 98, 2014 U.S.

App. LEXIS 1760, 2014 WL 308005, at * 1 (2d Cir. Jan. 29, 2014) (holding that a dismissal of an employment discrimination claim "for failure to allege facts showing a plausible inference of discrimination is wholly consistent with Swierkiewicz"). "The sine qua non of a . . . discriminatory action claim . . . is that 'the discrimination must be because of'" gender. *Patane*, 508 F.3d at 112 (emphasis in original) (quoting *Leibovitz v. N.Y.C. Transit Auth*., 252 F.3d 179, 189 (2d Cir. 2001)); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016) ("[T]he sine qua non of a . . . discriminatory action claim under Title VII is that the discrimination must be because of the employee's protected characteristic.") (citation and internal quotation marks omitted).

"Therefore, to avoid dismissal, a plaintiff must allege facts supporting 'a facially plausible inference that the [d]efendants' actions were motivated by [discriminatory] animus.'" *Jones v. City of New York*, 14-CV-0826 (CBA) (RLM), 2015 U.S. Dist. LEXIS 13951, 2015 WL 502227 (E.D.N.Y. Feb. 5, 2015) (quoting *De La Peña v. Metro. Life Ins. Co.,* 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014)); *see also Idlisan v. N. Shore-Lone Island Jewish Health Sys., Inc.,* No. 13-cv-2345 (SJF) (GRB), 2014 U.S. Dist. LEXIS 71578, 2014 WL 2157540, at *6-7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claims because "the complaint fails to plead any facts linking defendant's [actions] to [plaintiff's] race [or] national origin"). "Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss." *Gaddy v. Waterfront Comm'n*, No. 13-cv-3322 (AT) (HBP), 2014 U.S. Dist. LEXIS 139007, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald assertions of discrimination . . .

unsupported by any comments, actions, or examples . . . from which we could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss."); *Yusuf v Vassar College*, 35 F. 3d 709, 713 (2d Cir. 1994) (naked assertions of racial motivation will not suffice).

Since direct evidence of discrimination is rare, "courts examine a variety of factors to evaluate whether there exists a permissible inference of discriminatory intent." *Tubo v. Orange Reg'l Med. Ctr.,* No. 13-CV-1495, 2015 U.S. Dist. LEXIS 139254, 2015 WL 5945853, at *7 (S.D.N.Y. Oct. 13, 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." *Blair v. Brooklyn Transportation Corp*., No. 17-CV-0383, 2018 U.S. Dist. LEXIS 54718, 2018 WL 1581974, at *5 (E.D.N.Y. Mar. 30, 2018) (quoting *Littlejohn*, 795 F.3d at 312). "Such circumstances can include 'actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus.'" *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015) (citing *LaSalle v. City of N.Y.*, 13-CV-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015)). Additionally, the Court may consider the totality of the relevant facts, including allegations of discrimination that do not rise to the level of adverse employment actions, to shed light on Defendant's motivation. *Vega*, 801 F.3d at 88 (citing *Washington v. Davis*, 426 U.S. 229, 242, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)).

### b. Disparate Treatment

In her Second Cause of Action, Plaintiff contends that the Individual Defendants

unlawfully discriminated against her because while they stated she was dismissed for a misdemeanor conviction, "there exist male SCPD employees who are convicted of misdemeanors" who have not been terminated. Am. Compl. ¶¶ 95-101. The Individual Defendants argue that these claims must be dismissed because Plaintiff has compared herself to police officers, who are not comparators and that some of the comparators were not convicted of misdemeanors. *See, e,g.,* Cameron Mem. at 16-17; Cohen Mem. at 19-20; Meyers Mem. at 8-9.

Although the question of whether an employee is similarly situated to the plaintiff is generally a question of fact for the jury to decide, courts in this Circuit have held that the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated. *See, e.g., Wolfinger v. Consol. Edison Co. N.Y., Inc.,* No. 17-CV-1710, 2018 U.S. Dist. LEXIS 128183, 2018 WL 3637964, *8 (E.D.N.Y. July 31, 2018) (granting motion to dismiss because "[w]ithout any information about Plaintiff's allegedly similarly situated comparator, the court is unable to find that Defendant engaged in a pattern of disparate treatment rising to the level of unlawful discrimination"); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 319 (S.D.N.Y. 2014) ("[A]lthough, [a]t the motion to dismiss stage, . . . evidence [of similarly situated comparators] is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.')(internal quotation omitted); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,* 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) ("At the motion to dismiss stage, such evidence is not necessary; however, a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.").

"An employee is similarly situated to co-employees if they were subject to the same performance evaluation and discipline standards and engaged in comparable conduct." *Neubecker v. N.Y. State, State Univ. of N.Y. Erie Cmty. Coll.*, No, 18-189V, 2018 U.S. Dist. LEXIS 136650, at * 5, 2018 WL 8120391(W.D.N.Y. Aug. 18, 2018). "Where . . . there is no suggestion that plaintiff and the comparators had similar job descriptions or responsibilities or were subject to the same performance evaluation or disciplinary standards, dismissal is appropriate." *Id.* The only specifics offered by Plaintiff in support of her discrimination claim is the identification of Plaintiff's background and work for the SCPD involved public relations, communications, and social media, an administrative role within the SCPD, Am. Compl. ¶¶ 19-20, 26, followed by a description of alleged comparators who were all law enforcement officers. *See id.* ¶¶ 77-83. Plaintiff has failed to allege that these comparators "had similar job descriptions or responsibilities or were subject to the same performance evaluation or disciplinary standards." *Neubecker,* 2018 U.S. Dist. LEXIS 136650, at *6. Because Plaintiff has failed to offer a single allegation directed to gender discrimination, other than her allegation that these purported comparators were treated differently, dismissal is appropriate.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the Individual Defendants for gender discrimination be dismissed pursuant to Rule 12(b)(6).

### 3. New York Civil Service Law § 75-b (Fourth Cause of Action)

Plaintiff alleges that the County and the Individual Defendants violated New York Civil Service Law § 75-b. Each of the Individual Defendants argue that this claim cannot be maintained against an individual. *See, e.g.,* Cameron Mem. at 20; Cohen Mem. at 23; Meyers Mem. at 19. Plaintiff does not respond to this argument and therefore this claim is deemed abandoned. *See Bilan v. Davis*, No. 11-CV-5509 (RJS) (JLC), 2013 U.S. Dist. LEXIS 107619,

2013 WL 3940562, at *7 (S.D.N.Y. July 31, 2013) (a district court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (quoting *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2005)).

The County also moves to dismiss Plaintiff's claims under Civil Service Law § 75-(b)(2)(a) because Plaintiff's Amended Complaint "does not allege that she reported to a government body information regarding alleged improper governmental action. Rather, Plaintiff alleges that she met with two nameless 'senior level SCPD officers to discuss Meyers's conduct.' She does not allege that she filed a report. She does not allege to whom she spoke. She does not allege what "conduct" she discussed." County Mem. at 13. Plaintiff's response is that, under the statute she was not required to file a report exposing Defendant Meyers' misconduct and that the statute does not require a plaintiff to "specifically identify the governmental officers to whom they reported the misconduct." Pl. Opp. at 23-24.[5]

"'To assert a claim under § 75-b, a plaintiff must allege: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [ ]he reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure

---

[5] In its reply brief the County argues that "[a] claim made under Section 75-b cannot be sustained where, as here, a public employer has a separate and independent basis for the action taken." County Reply Mem. at 3. "However, this argument is inconsistent with § 75-b's remedial purpose and contravenes § 75-b's federal counterparts . . ., the true motivation behind the Defendants' decision to terminate Plaintiff's employment is a genuine issue of material fact." *Jones v. Town of Whitehall*, No. 13-CV-806, 2015 U.S. Dist. LEXIS 99234, 2015 WL 4603511, at *5 (N.D.N.Y. July 30, 2015) (citing *In re Kowaleski*, 16 N.Y.3d 85, 942 N.E. 2d 291, 295, 917 N.Y.S.2d 82 (N.Y. 2010) ("In order to be effective, whistleblower protections like those embodied in Civil Service Law § 75-b must shield employees from being retaliated against by an employer's selective application of theoretically neutral rules. Thus, a separate determination regarding the employer's motivation in bringing the action is necessary if section 75-b is to truly 'establish[] a major right for employees—the right to speak out against dangerous or harmful employer practices.'") (quoting Governor's Approval Mem., Bill Jacket, L. 1984, ch. 660, at 5))); *see also Maher v. Town of Stony Point*, No. 16-CV-607(KMK), 2018 U.S. Dist. LEXIS 169722, 2018 WL 4759786, at *10 (S.D.N.Y. Sept. 29, 2018) (denying motion to dismiss where defendant argued that a separate basis for adverse action sufficient to defeat claim).

and the adverse personnel action.'" *Mulvaney v. City of Rochester*, 6:18-CV-06367 MAT, 2019 U.S. Dist. LEXIS 86498, 2019 WL 2250014 (W.D.N.Y. May 22, 2019) (quoting *Maher v. Town of Stony Point*, No. 16-CV-607(KMK), 2018 U.S. Dist. LEXIS 169722, 2018 WL 4759786, at *10 (S.D.N.Y. Sept. 29, 2018)).

Defendant County argues that "going to unnamed officers to have a discussion does not constitute disclosure under Section 75-b." County Reply Mem. at 4. "An internal complaint may be insufficient to satisfy the statute where the complaint is made only to the wrongdoer or where the report of wrongdoing was made within the plaintiff's own agency for the purpose of seeking 'informal advice' rather than corrective action." *Medina v. Department of Educ. of the City of N.Y.*, 35 Misc 3d 1201[A], 950 NYS2d 724, 2012 NY Slip Op 50529[U], *3 (Sup Ct, NY County 2012) (citing *Tipaldo v Lynn*, 48 AD3d 361, 851 N.Y.S.2d 564 (1st Dept 2008); *Hastie v State Univ. of New York,* 74 A.D.3d 1547, 902 N.Y.S.2d 239 (3rd Dept 2010); *Brohman v New York Convention Ctr. Operating Corp.,* 293 AD2d 299, 300, 740 N.Y.S.2d 312 (1st Dept 2002)). A complaint is not sufficient where the plaintiff reports the wrongful activity "to the very supervisor allegedly guilty of the mistreatment, or by reporting the mistreatment to the allegedly mistreated subordinates." *Bal v City of New York*, 266 AD2d 79, 79, 698 NYS2d 852 (App. Div. 1st Dept. 1999). Here, Plaintiff's assertion that she raised her concerns about the conduct of Defendant Meyers to two unnamed police officers is insufficient to allege reporting to a government body because there is no allegation that a report was made to individuals in a position to take corrective action. Accordingly, it is respectfully recommended that Plaintiff's claims pursuant to N.Y. Civ. Serv. Law Section 75-b(2)(a) against the Individual Defendants and the County be dismissed.

### 4. Prima Facie Tort (Sixth Cause of Action)

Finally, in her Sixth Cause of Action, Plaintiff asserts a claim for prima facie tort against all Defendants. To state a claim for prima fact tort under New York law, a plaintiff must plead: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) (citing *Restis v. Am. Coal Against Nuclear Iran, Inc.,* 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014)). "The first element requires 'disinterested malevolence,' which means that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Katz*, 241 F. Supp. 3d at 405 (quoting *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002)) (internal quotation marks and citations omitted). Moreover, special damages—"a critical element of the cause of action—are damages that are alleged with sufficient particularity to identify actual losses and [that are] related causally to the alleged tortious acts." *Barone v. United States*, 2016 U.S. Dist. LEXIS 59946, 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016). Each of the Defendants argue that Plaintiff has failed to state a claim for prima facie tort.

In New York, there is no tort of wrongful discharge. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). Thus, where a plaintiff brings a claim for prima facie (or other) tort seeking to challenge the termination of her employment, the claim must be dismissed. *See id*. (dismissing prime face tort claim as an attempt to bring a wrongful discharge claim); *see also Davis v. City of New York*, No. 00 Civ. 4309 (SAS), 2000 U.S. Dist. LEXIS 18520, 2000 WL 1877045 (S.D.N.Y. Dec. 27, 2000)("to the extent that plaintiff bases his cause of action on wrongful termination, it must be dismissed as there is no cause of action for the wrongful termination of an at-will employee based on prima facie tort"); *Jones v. Ecological Analysts, Inc.,* No. 84 Civ. 1226, 1986 U.S. Dist. LEXIS 25057,

1986 WL 6168, at *5 (S.D.N.Y. May 27, 1986) (dismissing plaintiff's claim for prima facie tort as an attempt to bootstrap a wrongful-discharge tort onto Title VII discrimination claims); *Shipper v. Avon Prods., Inc*., 605 F. Supp. 701, 706-07 (S.D.N.Y. 1985) ("[t]he Court finds that plaintiffs' claims sounding in fraud, prima facie tort, breach of contract and any state law claims with respect to pension rights that may be hidden in the pleadings are all variations on the tort of wrongful discharge" and must be dismissed); *Brooks v. Blue Cross of Ne. N.Y., Inc.,* 190 A.D.2d 894, 593 N.Y.S.2d 119, 120 (App. Div. 1993) (granting summary judgment where the allegations underlying plaintiff's prima facie tort claim, including that his discharge followed a "campaign of harassment" that included "unjustifiable criticism of his working ability" and "threats of firing," were too closely related to the unavailable cause of action of wrongful discharge).

In the Amended Complaint Plaintiff alleges that "defendants intentionally inflicted harm on plaintiff when they . . . fired her." Am. Compl. ¶ 130. Thus, Plaintiff's claims arise from what she claims to be her wrongful termination. "As such they are no more than inartful attempts to dodge the broad and explicit ruling of the New York Court of Appeals in *Murphy v. American Home Products Corp*., 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983)." *Shipper,* 605 F. Supp. at 706-07. Accordingly, the undersigned respectfully recommends that Plaintiff's claims for prima facie tort be dismissed, with prejudice, against all Defendants.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections

within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
September 4, 2020

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge