UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

DONNA J. SCHULTZ,                                    :
                                                     :    CIVIL CASE NO.:
                          Plaintiff,                 :    19-CV-00925 (JMA)(ARL)
                                                     :
            -against-                                :
                                                     :
                                                     :    SECOND AMENDED
COUNTY OF SUFFOLK, JUSTIN S. MEYERS IN               :    COMPLAINT
HIS OFFICIAL AND PERSONAL CAPACITY,                  :
DENNIS COHEN IN HIS OFFICIAL AND                     :    PLAINTIFF DEMANDS A
PERSONAL CAPACITY, AND STUART                        :    TRIAL BY JURY
CAMERON IN HIS OFFICIAL AND PERSONAL                 :
CAPACITY,                                            :
                                                     :
                          Defendants.                :
---------------------------------------------------------------------- X

Plaintiff, Donna J. Schultz, by her attorney, Brendan Chao, for her Second Amended

Complaint, allege as follows:

## THE NATURE OF THE ACTION

1.      This is a civil action brought pursuant to 42 U.S.C. §§1983 and 1988 for

deprivation of Plaintiff's federal constitutional rights, namely retaliation against Plaintiff for her

assertion of protected First Amendment speech, and/or, alternatively, for denial of equal protection

guaranteed by the Fourteenth Amendment; for damages and remedies against Defendants County of

Suffolk, Justin S. Meyers, Dennis Cohen, and Stuart Cameron in their official and personal capacity.

Additionally, and/or alternatively, for damages and remedies available under New York State's

Civil Service and Labor Law for retaliation and the wrongful termination of her employment.

2.      The protected speech engaged in by Plaintiff was her report that Defendant

Meyers was improperly electioneering and campaigning for Timothy Sini in Sini's bid to become

Suffolk County District Attorney while Meyers was working on Suffolk County time, improperly

using County Employees, and falsely submitting time sheets regarding his whereabouts throughout the workday.

3.     The Defendants retaliated against Plaintiff several days after her reporting, and terminated her employment on the pretext that she failed a background check. That is, she had a prior misdemeanor conviction that precluded employment with the Suffolk County Police Department ("SCPD") despite the fact that she had already been working in the identical position for approximately two years.

4.     The stated reason by Defendants for Plaintiff's termination of employment was made despite the fact that male employees of SCPD were convicted of misdemeanors and did not lose their jobs.

5.     In addition, numerous male SCPD police officers have committed acts that fit squarely with the description of crimes under the New York Penal Code yet the SCPD chose not to even charge them or arrest them.

6.     In this action, Plaintiff seeks declaratory and injunctive relief, and damages arising from the intentional actions of the Defendants.

7.     Plaintiff alleges that Defendants intentionally and knowingly sought to and did wrongfully deprive Plaintiff of, inter alia:[1] her rights secured under 42 U.S.C. §1983, [2] retaliated and conspired against her when she asserted her First Amendment protected speech in reporting Defendant Meyers's electioneering on County time for Candidate Sini, [3] her right to equal treatment, and [4] her rights to be free from employment discrimination based upon her gender.

## THE PARTIES

8.     Donna J. Schultz ("Plaintiff" or "Schultz") was and is a natural person and citizen of the United States, a domiciliary in the State of New York and County of Suffolk. Schultz

resides in Suffolk County, New York.

9.     Upon information and belief, Defendant Suffolk County (the "County") is a duly constituted municipal corporation of the State of New York. Upon information and belief, the County formed and has direct authority over several individual departments including the Suffolk County Executive's Office ("SCEO") and SCPD. The aforementioned department and/or employees, agents or representative of said department are directly involved in the violations that are at issue in this Complaint.

10.     Upon information and belief, Justin S. Meyers ("Meyers"), in his individual and official capacity, was Assistant Deputy Police Commissioner at the time of Schultz's hiring and was subsequently promoted to Assistant Commissioner for Strategic Communications until he resigned to be Timothy Sini's ("Sini") Chief of Staff at the Suffolk County District Attorney's Office following Sini's election as District Attorney. Meyers was, in part responsible for the hiring process of individuals seeking employment through the SCPD, and Meyers was part of the decision making unit that denied Schultz employment based upon her reporting Defendant Meyer's misconduct. Alternatively, and upon information and belief, he was one of the individual Defendants who conspired to deny Schultz employment because of her complaints of Defendant Meyers's misconduct, or, alternatively, because of her gender and misdemeanor conviction.

11.     Upon information and belief, Dennis Cohen ("Cohen"), in his individual and official capacity, was Chief Deputy County Executive for the SCEO. Cohen was, in part, responsible for the hiring process of individuals seeking employment through the County and the SCPD, and he was one of the individual Defendants who conspired to deny Schultz employment because of her complaints of Defendant Meyers's misconduct, or, alternatively, because of her gender and misdemeanor conviction.

12.     Upon Information and belief, Stuart Cameron ("Cameron"), in his individual capacity and official capacity, was Acting Commissioner for SCPD following Sini's election to

3

become Suffolk County District Attorney. Cameron was one of the individual Defendants who conspired to deny Schultz employment because of her complaints of Defendant Meyer's misconduct, or, alternatively, because of her gender and misdemeanor conviction.

## JURISDICTION AND VENUE

13. This court has jurisdiction over this action pursuant to 28 U.S.C. §1331, and principles of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

14. Prior to the commencement of this action, and on or about May 30, 2018, Plaintiff duly filed with the County a written verified Notice of Claim setting forth the time when, and the place where the incident occurred, which is the subject of the lawsuit, the nature and extent of the injuries and damages sustained, and the amount claimed.

15. More than thirty days have elapsed since the presentation of said claim, and Defendants have not adjusted the same, and have failed and neglected to make payment, and or remedy such claim and cause of action.

16. Venue is proper in this district under 28 U.S.C. §1391(b) because a substantial part of the events that give rise to Plaintiff's claims occurred within the Eastern District of New York.

## FACTS

17. In or about January 2016, Meyers began recruiting Schultz to work for the SCPD as its Director of Communications.

18. At that time, Meyers was Assistant Deputy Commissioner to the SCPD Commissioner Sini.

19. At that time, Schultz was employed by Zimmerman/Edelson Inc. ("Z/E

4

Inc."), and had worked there for approximately five years. Z/E Inc. is one of the leading public relations, marketing, and social media communications firms in the region. The Company represents private and public sector clients.

20.    Schultz was hired by Z/E inc. as an Account Manager in its Public Relations Division and within two years was promoted to be Z/E's first ever female Director of Public Relations. In this role she managed the entire Public Relations Division.

21.    Schultz knew Meyers during this time from several projects they worked on together.

22.    During the recruiting process Schultz advised Meyers that she had plead guilty to a misdemeanor eight years earlier for improperly accepting unemployment benefits.

23.    Meyers asked numerous questions about the misdemeanor, and several days later called to tell her the misdemeanor was not a problem with employment with SCPD.

24.    Meyers arranged for Schultz to meet with SCPD Commissioner Sini, and they met at a local Suffolk County Diner to discuss her qualifications for the position. Several hours after the meeting Sini called Schultz to offer her the job as SCPD's Director of Communications.

25.    On or about June 20, 2016, Schultz began working as the SCPD's Director of Communications.

26.    As the Director, Schultz managed all staff related to public information, social media, internal communications, and strategic communications for the SCPD.

27.    Meyers was Schultz's direct supervisor.

28.    A few weeks into her new job, Schultz met with Defendant Cohen, the County's Deputy Executive, to further discuss her misdemeanor conviction.

29.     Upon information and belief, Cohen's duties and responsibilities included, but were not limited to, authorizing all personnel decisions concerning the entire Suffolk County staff, including the hiring and firing of individuals such as Schultz.

30.     Cohen asked Schultz to provide additional documentation concerning her criminal conviction, i.e. a Certificate of Disposition, which she did.

31.     Cohen asked Schultz numerous questions about the arrest and conviction, which she answered truthfully. Cohen wanted to confirm that Schultz was not a convicted felon, which she was not; Schultz provided the documentation to prove the conviction was for a misdemeanor.

32.     Cohen went on to say that the misdemeanor was not an issue of concern, and the nature of the conviction did not pose a conflict to her duties and responsibilities as Director of Communications for the SCPD.

33.     After her meeting with Cohen, Schultz me in Sini's office with Meyers and Sini to further discuss her misdemeanor conviction. Sini asked about the arrest and conviction, which Schultz explained from the point of her arrest through to the final disposition of the case. Schultz further explained that she thought the entire episode was her mistake in applying to Department of Labor ("DOL") for unemployment benefits.

34.     Sini asked why she would plead guilty to something if it was a mistake, and Schultz explained that the arresting detectives told her they would jail her and take custody of her children if she did not sign a statement stating that she intentionally defrauded the DOL. Sini asked if she had ever been in trouble with the law on any other occasion and she said "No."

35.     Sini said he was going to check and he gave her a piece of paper to write her

6

name, and any other names she was known by, which she did. Sini went to his computer to look her up on a SCPD database. After several minutes he walked back over to her and said, "There's nothing else. That's good. There is no issue. It's almost ten years old, and no one is going to care anyway. Just keep doing the great work you're doing."

36.     The meeting ended with Sini telling Schultz that he was happy to have her on board.

37.     In or about November 2017, Sini was elected Suffolk County District Attorney.

38.     During Sini's District Attorney election campaign, Schultz had detailed knowledge of Meyers's whereabouts during his SCPD workday.

39.     This knowledge included knowing of Meyers's campaigning for Sini during his workday when he was supposed to be working on SCPD business.

40.     On one occasion, during a SCPD workday, Schultz brought paperwork to Meyers's house that needed to be signed by Meyers. In addition to Meyers, Jason Elan ("Elan"), County Executive Steve Bellone's ("Bellone") Communications Director, was present along with Derek Poppe ("Poppe"), who also worked with Elan in Bellone's Communications office. Plainly visible on their computer monitors were press releases regarding Sini's campaign for District Attorney.

41.     On another occasion, during a SCPD work day, Schultz went to Meyer's house. Bellone, Elan, and Poppe were all present along with Meyers. Again, they were working on materials for Sini's campaign for District Attorney.

42.     During Schultz's time working for Meyers she also became aware of his use

7

of SCPD employees to run personal errands for him on County time.

43. On or about January 1, 2018, Meyers resigned from the SCPD to work as Sini's Chief of Staff at the Suffolk County District Attorney's Office ("SCDAO").

44. Throughout January and February 2018, Meyers continued to call into the SCPD to direct its employees to do work for him, including calls to Schultz.

45. For example, Meyers gave explicit instructions to Schultz not to hold any press conferences regarding arrests made by SCPD because he wanted those announcements to come out of the SCDAO's communication's office not the SCPD's communication's office.

46. In another instance, Meyers gave explicit instructions to Schultz and other SCPD staff not to provide details of an alleged theft of District Attorney Sini's wallet from his county car.

47. On or about February 22, 2018, the SCDAO's office held a press conference concerning an arrest warrant executed by the ACPD.

48. Meyers wanted Schultz to have the SCPD's social media platforms address this arrest warrant.

49. This day, however, fell on a day when the SCPD was honoring one of its fallen police officers. The SCPD's tradition was that all SCPD social media would focus on the fallen police officer for the entire day.

50. Meyers began sending threatening and profane text messages to Schultz's cell phone.

51. Included in these threats was this threat from Meyers to Schultz "…it's not going to go very well for you. If you do not call me in the next 60 seconds you're going to get an

8

extremely uncomfortable phone call from the commissioner [Cameron]."

52.     A week after Meyers's threatening text message, Schultz met with two senior-level SCPD police officers to discuss Meyers's conduct.

53.     One of the officers, SCPD Lieutenant Michael Homan, was assigned to the Office of Chief of the Department. He was known as the "right hand" of acting Police Commissioner Cameron.

54.     The second officer, SCPD Deputy Inspector Thomas Kenneally, was assigned to the Office of the Police Commissioner. He had daily interaction with Police Commissioner Cameron, and, upon information and belief, was tasked with carrying out Cameron's orders, including the investigation of Meyers's threatening text message to Schultz.

55.     Upon information and belief, both Homan and Kenneally had the authority to take corrective action, or at the very least, had an obligation to report Meyers's misconduct to someone who did, e.g. Commissioner Cameron, which is why Schultz reported Meyers's conduct to them.

56.     During this meeting Schultz reported on a matter of public concern.

57.     Schultz reported that Meyers was campaigning for the former SCPD Commissioner, Sini, on SCPD time, using SCPD employees to run errands for him, and she also reported other matters of fraud related to Meyers's time keeping records while employed by the SCPD.

58.     Schultz's reporting was constitutionally protected speech.

59.     Schultz's reporting had nothing to do with her role as Director of Communications for the SCPD, and was not ordinarily with the scope of her job duties.

9

60.     Schultz spoke as a citizen on a matter of public concern, that is, it was to make the SCPD and the County aware that Meyers, among other misconduct, had been illegally campaigning for Commissioner Sini on County time, misusing SCPD employees, and submitting fraudulent time sheets.

61.     The two senior-level SCPD officers told Schultz they would look into it further, but she never heard from them again.

62.     Upon information and belief, the two-senior level SCPD officers who Schultz complained to spoke to Cameron about Schultz's complaints, including her statements regarding Meyers's campaigning for then SCPD Commissioner Sini on County time, Misusing SCPD employees, and other matters of fraud related to Meyers time keeping records while employed by the SCPD.

63.     Upon information and belief, Cameron then spoke to both Meyers and Cohen about Schultz's allegations regarding Meyers's misconduct.

64.     Before her reporting of Meyers, Schultz regularly saw him in meetings with Cohen in Hauppauge at the County Executive's offices. Upon information and belief, those meetings continued after her reporting of Meyers.

65.     Upon information and belief, a joint decision between Meyers, Cohen, and Cameron was made to terminate Schultz's employment under the pretext that she had failed a background check.

66.     Upon information and belief, this decision was made in the independent, personal conspiratorial purpose of each co-Defendant, i.e. to cover up illegal activities.

67.     Initially, upon information and belief, the individual Defendants agreed that

they would offer Schultz the option to resign instead of being fired, and so nine days later, on March 15, 2018, Cameron told Schultz to report Hauppauge to meet with Cohen, which indicated to Schultz that Cameron and Cohen had already discussed Schultz's fate.

68.     Upon information and belief, Meyers instigated the termination of Schultz's employment following her reporting, Cameron was the messenger, and Cohen was the axe man.

69.     Cohen told Schultz that she should resign her position with SCPD because she failed a background check, which he said was specifically caused by the misdemeanor conviction she previously told Cohen about, and which he had previously assured her posed no obstacle to employment with the County and SCPD.

70.     Schultz refused to resign; Cohen told her to take an hour and reconsider her decision.

71.     Upon information and belief, Cohen then told both Meyers and Cameron that Schultz refused to resign, and so they decided that Cameron would fire her, which he did by letter that afternoon.

72.     Upon information and belief, the three individual Defendants directly participated in the deprivation of Schultz's constitutionally protected rights.

73.     Upon information and belief, Defendants Cohen, Cameron and Meyers failed to remedy the wrongs that were brought to their attention after Schultz complained of Meyers's misconduct.

74.     In fact, upon information and belief, they chose to terminate her employment when she refused to resign.

75.     A casual connection exists between Schultz's protected speech and the

termination of her employment.

76.     Among other things, the temporal proximity of Schultz's reporting Meyers and the termination of her employment supports a casual connection between the two events, and was a substantial motivating factor in their decision to fire Schultz.

77.     Upon further information and belief, Meyers, whose angry outbursts were well known in the SCPD, became enraged that Schultz had outed him and his misconduct to the SCPD.

78.     Meyers angry outbursts continue to this day as Newsday reporter, Chau Lam learned when he physically assaulted her in a courthouse shortly after Sini became District Attorney. A complaint was made by Lam, but Sini chose not to pursue charges against his Chief of Staff.

79.     Upon information and belief, all SCPD employees, including police officers and non-police officers (including Plaintiff), are held to the same employment Code of Conduct and Code of Ethics.

80.     Upon information and belief, all SCPD employees, including police officers and non-police officers (including Plaintiff), were subject to the same or substantially similar performance evaluations and/or disciplinary standards.

81.     Upon information and belief, other male SCPD employees who were subject to the same or substantially similar performance evaluations and/or disciplinary standards were convicted of crimes, or committed criminal acts and were not charged, did not lose their jobs as a result.

82.     As the SCPD Director of Communications, Plaintiff was subject to the same

12

or substantially similar employment Code of Conduct and Code of Ethics as male SCPD employees – including police officers - and was subject to the same, or substantially similar, disciplinary standards regarding criminal conduct, including, but not limited to criminal convictions.

83.     Similarly situated male SCPD employees, who were convicted of misdemeanor crimes, or who committed criminal acts and were not charged, did not lose their jobs with the SCPD despite their criminal convictions.

84.     For example, Bruce Blanco, a SCPD police officer, was charged with extortion and accepting a bribe from a contractor. Blanco plead guilty to attempted larceny (a misdemeanor), did not serve any jail time, was not fired, and now collects an annual pension of $89,402.

85.     Philip Branigan, a SCPD highway patrol sergeant, was charged with falsely reporting an incident, an A misdemeanor, and upon information and belief was convicted of a misdemeanor. He subsequently retired, went to law school, and was hired by the SCDA as an Assistant District Attorney.

86.     Robert Dito, A SCPD police officer was arrested for charges of conspiracy to operate illegal gambling businesses, conspiracy to obstruct law enforcement, computer trespass and official misconduct to which he ultimately plead guilty to obstruction of law enforcement. He retired, and now collects a pension if $82,376.

87.     In addition, numerous male SCPD police officers have committed acts that fit squarely with the description of crimes under New York Penal Code yet the SCPD chose not to charge them or arrest them.

88.     For example, P.O.'s John E. Fenelius and Scott P. Guido, both recovered

13

stolen property and failed to properly invoice it thereby depriving the owner of his property. The two police officers then wrote up a false report stating that the property was returned to its owner when it was not. Neither officer was charged with a crime.

89.     In another instance, P.O. John Jeheber walked into a Babylon thrift store, dropped his shorts to his knees and rubbed "his crotch area in a suggestive manner." No charges were brought against him.

90.     P.O. Jonelle Jones used his position as a police officer to get into a strip club and he brought an underage girl with him. He then got into a fight with the bouncers, but he was neither arrested nor charged with a crime.

### FIRST CAUSE OF ACTION
(42 U.S.C. §1983 Violation –
First Amendment Retaliation)

91.     Plaintiff repeats, reiterates, and realleges each allegation contained in paragraphs 1 through 90 of this Complaint with the same force and effect as though fully set forth herein.

92.     The Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States. Specifically, the guarantees of the First Amendment of the Constitution.

93.     Plaintiff's verbal complaint to two senior-level SCPD officers was a matter of public concern, i.e. fraud and other misconduct by Defendant Meyers, and was constitutionally protected.

94.     Approximately nine days after her verbal complaint, Plaintiff's employment was terminated. There exists a temporal and casual connection between the complaint and the

14

adverse employment action, and the speech was a substantial motivating factor in the decision to terminate her employment.

95.     On or about January 10, 2018, the SCPD appointed Plaintiff as a "Provisional Special Projects Coordinator" effective January 1, 2018. The only condition precedent contained in the notice of appointment was that Plaintiff "take the Civil Service exam when it is given and be reachable to become permanent in this position."

96.     Upon information and belief, at the time of her appointment the SCPD had completed its background check of Plaintiff, and no other impediment to her employment existed – other than her taking the Civil Service exam.

97.     Defendants' stated reason for Plaintiff's termination of employment, a failed background check because of prior misdemeanor conviction, was a pretext for retaliation.

98.     Defendants were fully aware of Plaintiff's conviction during the almost two-year period she worked without issue as the SCPD's Director of Communications.

99.     Plaintiff was under no employment obligation to report Defendant Meyers's misconduct to Defendants, or any other County employee.

100.    Plaintiff's speech was ordinarily not within the scope of her duties, and she spoke out about Defendant Meyers's misconduct as a private citizen and not as a public employee.

101.    The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights were both willful and malicious.

### SECOND CAUSE OF ACTION
(42 U.S.C. §1983 Violation
14th Amendment Gender Discrimination)

102.    Plaintiff repeats, reiterates, and realleges each allegation contained in

paragraphs 1 though 101 of this Complaint with the same force and effect as though fully set forth herein.

103.     The Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges, and immunities secured by the Constitution and law of the United States. Specifically, the Equal Protection guarantees of the Fourteenth Amendment of the Constitution.

104.     Plaintiff was treated unfairly, unequally, and in discriminatory manner based upon her gender by all the Defendants, including the individual Defendants Meyers, Cohen, and Cameron, in their official and individual capacities.

105.     There exist male SCPD employees, including, but not limited to, male police officers and other non-police officer SCPD employees, who were convicted of misdemeanors. The SCPD did not terminate the employment of those male SCPD employees despite their misdemeanor convictions.

106.     In addition, there are numerous male SCPD employees who committed acts that clearly constituted crimes under the New York Penal Law, but in most instances they were neither charged nor arrested for their criminal behavior.

107.     Plaintiff was subject to the same or substantially similar employment Code of Conduct and Code of Ethics as male SCPD employees – including police officers - and was subject to the same, or substantially similar, disciplinary standards regarding criminal conduct, including, but not limited to criminal convictions.

108.     Defendants discriminated against Plaintiff by subjecting her to disparate treatment because of her gender.

16

109.    The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights were both willful and malicious.

### THIRD CAUSE OF ACTION
(Violation of New York Civil Service Law Section 75-b)

110.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 109 as if separately set forth herein.

111.    The SCPD, a public employer, dismissed Plaintiff, a public employee, from her employment because she disclosed to a governmental body information which she reasonably believed to be true and reasonably believed constituted improper governmental action.

112.    Plaintiff reported to several senior-level SCPD officers, as alleged in greater detail above, that Defendant Meyers, a Suffolk County officer and/or employee, was engaged in electioneering on behalf of then candidate Sini in his campaign run for Suffolk County District Attorney.

113.    That electioneering took place while Defendant Meyers was supposed to be working on SCPD projects.

114.    Plaintiff also observed Defendant Meyers at his home in the middle of a Suffolk County work day working on Sini's election campaign with several other individuals.

115.    In addition, Plaintiff reported the misrepresentation by Defendant Meyers of his time spent working for the County, i.e. submission of inaccurate timesheets.

116.    Plaintiff reported Meyers's conduct to Lt. Homan and Dep. Insp. Kenneally because she wanted corrective action taken, and believed they were capable of either taking corrective action themselves or ensuring that someone else would take corrective action.

117.    As a result of Defendants' actions, Plaintiff has suffered substantial

17

damages, including, but not limited to, mental distress and lost wages and benefits in an amount to be determined at trail.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a) First Count: reinstatement, lost wages and benefits, compensatory damages, including emotional distress damages, as well as punitive damages, costs and attorney's fees;

b) Second Count: reinstatement, lost wages and benefits, compensatory damages, including emotional distress damages, as well as punitive damages, costs and attorney's fees;

c) Third Count: reinstatement, lost wages and benefits as well as compensatory damage, costs and attorney's fees

d) Award attorney's fees and costs of this action to the Plaintiff pursuant to 42 U.S.C. §1988;

e) Declaratory Judgment that Defendants willfully violated Plaintiff's rights secured by federal and state law as alleged herein;

f) Injunctive relief, requiring Defendants to correct all past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

g) An Order declaring that Defendants grant Plaintiff employment for the position of Special Projects Coordinator;

h) Award such other and further relief as this Court may deem appropriate.

Dated: December 29, 2020
Rockville Centre, N.Y.

BRENDAN CHAO
Attorney & Counsellor at Law

By: _____
Brendan Chao (BC8811)

Attorney for Plaintiff
50 Merrick Road, Suite 200
Rockville Centre, N.Y. 11570
(516) 466-2033

TO:    All Attorneys of Record        VIA ECF

19

# DECLARATION

I, DONNA SCHULTZ, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the allegations made in the foregoing Second Amended Complaint are true and correct to the best of my knowledge.

Dated: December 29, 2020

DONNA SCHULTZ